# EXHIBIT "A"

SUMMONS

Attorney(s) _Merlin Law Group, P.A._____

Office Address _125 Half Mile Road, Suite 201___

Town, State, Zip Code _Red Bank, NJ 07701_____

_____

Telephone Number _(732) 704-4647_____

Attorney(s) for Plaintiff _____

_ESTATE OF CONCHETTA CONTI_____

_____

Plaintiff(s)

Vs.

_LEXINGTON INSURANCE COMPANY_____

_____

Defendant(s)

**Superior Court of New Jersey**

_CAPE MAY_____ COUNTY

_LAW_____ DIVISION

Docket No: _CPM-L-192-17_____

RECEIVED

MAY 18 2017

LEGAL DEPARTMENT

**CIVIL ACTION
SUMMONS**

*A TRUE COPY ATTEST
DAVID D. AYLES, PROCESS SERVER
AND DISINTERESTED PERSON*

From The State of New Jersey To The Defendant(s) Named Above:

The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (A directory of the addresses of each deputy clerk of the Superior Court is available in the Civil Division Management Office in the county listed above and online at http://www.judiciary.state.nj.us/pro se/10153_deptyclerklawref.pdf.) If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ 08625-0971. A filing fee payable to the Treasurer, State of New Jersey and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $135.00 and completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

If you cannot afford an attorney, you may call the Legal Services office in the county where you live or the Legal Services of New Jersey Statewide Hotline at 1-888-LSNJ-LAW (1-888-576-5529). If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A directory with contact information for local Legal Services Offices and Lawyer Referral Services is available in the Civil Division Management Office in the county listed above and online at http://www.judiciary.state.nj.us/prose/10153_deptyclerklawref.pdf.

/S/ _Michelle M. Smith_____

Clerk of the Superior Court

DATED: _05/17/2017_____

Name of Defendant to Be Served: _LEXINGTON INSURANCE COMPANY_____

Address of Defendant to Be Served: _99 High Street, Floor 23, Boston, MA 02110_____

Revised 09/04/2012, CN 10792-English (Appendix XII-A)

Attorney I.D. 025791999
Nicole F. Levine, Esq.
**MERLIN LAW GROUP**
125 Half Mile Road
Red Bank, New Jersey 07701
(732) 704-4647
Attorneys for Plaintiff

F I L E D
MAY 10 2017
CIVIL DIVISION
~~~~ COURT-CAPE MAY ~~~~

RECEIVED
MAY 15 2017

SCANNED
MAY 15 2017

ESTATE OF CONCHETTA CONTI,

    Plaintiff,

v.

LEXINGTON INSURANCE COMPANY,

    Defendant.

SUPERIOR COURT OF NEW JERSEY
CAPE MAY COUNTY
LAW DIVISION

Docket No. *CPM - L - 192 - 17*

**Civil Action**

**COMPLAINT WITH JURY TRIAL**

Plaintiff, ESTATE OF CONCHETTA CONTI, (hereinafter "Plaintiff"), by and

through its undersigned counsel, files this Civil Action Complaint against Defendant,

LEXINGTON INSURANCE COMPANY (hereinafter "Lexington" or "Defendant"),

and states as follows:

1.  This is an action by the Plaintiff against its insurance carrier, Lexington Insurance

    Company, for benefits owed under its policy which have not been fully paid, as a result

    of a homeowner's insurance claim for water damage following a pipe burst

2.  Plaintiff purchased an "all risk" insurance policy from Lexington, which covers all

    risks of direct physical loss unless excluded under the policy. ***See Policy attached as***

    ***"Exhibit A".***

3.  Lexington failed to pay the damages due and owing under the insurance policy, and

    further acted in violation of the implied duty of good faith and fair dealing contained

    in the insurance policy, further damaging the Plaintiff.

MERLIN LAW
GROUP, PA
125 Half Mile Road
Suite 200, Red Bank
New Jersey, 07701
www.merlinlawgroup.com

1

A
I
G

O
L
0
3
:
s
e
s
s

1

5
/
1
9
/
2
0
1
7

## PARTIES

4.    Plaintiff was and is a resident the State of New Jersey and the owner of the property at issue located at 216 43rd Street, Sea Isle City, Cape May County, New Jersey 08243.

5.    Upon information and belief, Defendant, Lexington is an insurance company authorized to do business in the State of New Jersey.

6.    The State of Incorporation of Defendant, Lexington, is Tennessee.

7.    The principal place of business and statutory home office of Defendant Lexington is Nashville, Tennessee.

## FACTS COMMON TO ALL COUNTS

8.    Plaintiff, at all relevant times, has been the owner of certain real property located at 216 43rd Street, Sea Isle City, Cape May County, New Jersey 08243.

9.    The aforementioned property is a residential property.

10.   Plaintiff purchased an insurance policy, Policy Number 97082638, effective June 18, 2016 to June 18, 2017 (the "Policy") from Lexington, which covered the property at issue in this matter.

11.   All premiums on the Policy were paid, and the Policy was in full force and effect at all relevant times herein.

12.   The Policy includes insurance coverage for, *inter alia*, the risk of direct physical loss to the dwelling, including water damage.

13.   The Policy includes insurance coverage for personal property for the risk of direct physical loss, including water damage, to the Plaintiff's personal property.

14.   The Policy includes insurance coverage for loss of use for the risk of direct physical loss, including water damage.

MERLIN LAW
GROUP, PA
125 Half Mile Road
Suite 200, Red Bank
New Jersey, 07701
www.Merlinlawgroup.com

2

A
I
G

O
L
0
3
:
s
e
s
s

1

5
/
1
9
/
2
0
1
7

15. On or about January 13, 2017, a pipe broke inside the Plaintiff's residence which caused significant water damage to Plaintiff's Property.

16. Water damage, is a covered risk under the Policy.

17. The Plaintiff's property sustained significant losses as a result of water damage.

18. Plaintiff promptly submitted an insurance claim to Lexington for the damage to the property caused by water damage.

19. Lexington assigned claim number 683-647750 to the Plaintiff's claim.

20. Lexington sent an adjuster to evaluate the damage to the Plaintiff's property associated with the water damage.

21. Defendant, Lexington denied the covered damages to the Plaintiff's home.

22. Plaintiff has cooperated with Lexington and has complied with all post-loss obligations listed in the Policy.

23. Lexington has failed and refused to promptly or properly adjust the Plaintiff's losses from the water damage.

24. The Plaintiff suffered damages from the water damage for which Lexington has failed to pay.

25. Plaintiff has demanded payment pursuant to the terms of the Policy.

26. Lexington has failed and refused to pay the insurance proceeds to Plaintiff as required under the Policy.

27. Lexington's failure and/or refusal to pay the insurance proceeds due and owing under the Policy constitutes a breach of the express terms of the insurance contract.

28. Plaintiff has done and performed all those matters and things properly and reasonably required and requested of it under the Policy.

MERLIN LAW
GROUP, PA
125 Half Mile Road
Suite 200, Red Bank
New Jersey, 07701
www.merlinlawgroup.com

3

A
I
G

O
L
0
3
:
S
e
s
s

1

5
/
1
9
/
2
0
1
7

29. As a direct result of Lexington's breach of the insurance contract, Plaintiff has suffered and continues to suffer financial damages.

30. As a direct result of Lexington's breach of the insurance contract, Plaintiff was required to become obligated for attorney's fees and costs in connection with the prosecution of this action.

### COUNT ONE – BREACH OF CONTRACT

31. Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 30 as if set forth in full herein.

32. Plaintiff and Lexington entered into an insurance contract whereby Lexington promised to pay for covered damages to Plaintiff's property.

33. Plaintiff's property sustained covered losses caused by pipe break taking place on or about January 13, 2017.

34. Plaintiff has demanded payment pursuant to the terms of the Policy.

35. Lexington has failed and refused to pay the insurance proceeds to Plaintiff as required under the Policy.

36. Lexington's failure to pay the insurance proceeds is a breach of the express terms of the contract.

37. As a result of Lexington's breach of the insurance contract, Plaintiff has suffered and continue to suffer damages.

**WHEREFORE**, Plaintiff, ESTATE OF CONCHETTA CONTI, demands judgment against Defendant, LEXINGTON INSURANCE COMPANY on Count One for:

    (a)   Compensatory damages;

    (b)   Consequential damages;

MERLIN LAW
GROUP, PA
125 Half Mile Road
Suite 200, Red Bank
New Jersey, 07701
www.MerlinlawGroup.com

4

(c)   Pre-judgment interest and post-judgment interest;

(d)   Costs of suit;

(e)   Attorneys' fees; and

(f)   For such other relief as the court may deem equitable and just.

## COUNT TWO – BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

38.   Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 37 as if set forth in full herein.

39.   Plaintiff and Lexington entered into an insurance contract whereby Lexington promised to pay for covered damages to Plaintiff' property.

40.   That contract includes an implied covenant of good faith and fair dealing. This covenant includes, but is not limited to duties to honestly, promptly, and fairly investigate facts of coverage, evaluate damages, adjust the loss, communicate and cooperate with the insured, and promptly pay the full amount of covered losses.

41.   Lexington failed to properly adjust Plaintiff's claim by engaging in activities that include, but are not limited to:

   a.   Failing to communicate or respond to Plaintiff in a timely fashion;

   b.   Failing to engage in good faith negotiations with the Plaintiff;

   c.   Failing to consider all facts in support of coverage;

   d.   Failing to acknowledge covered losses under the Policy;

MERLIN LAW
GROUP, PA
125 Half Mile Road
Suite 200, Red Bank
New Jersey, 07701
www.Merlinlawgroup.com

e. Failing to abide by the policy terms and cover all damages caused by water damage;

f. Failing to consider all facts that demonstrate that the Plaintiff suffered a covered cause of loss'

g. Failing to pay the full amount owed under the claim;

h. Failing to timely pay the claim;

i. In scheming to defraud its policyholder;

j. In acting in reckless disregard for its obligations under the policy; and

k. In accepting premiums without intention to pay monies owed for covered losses.

42. Lexington's actions, in failing to properly adjust Plaintiff's claim, is a breach of the implied covenant of good faith and fair dealing.

43. Lexington knowingly breached the implied covenant of good faith and fair dealing in an attempt to deprive Plaintiff of their rights and reasonable expectations under the insurance contract.

44. As a result of Lexington's breach of the implied covenant of good faith and fair dealing, Plaintiff has suffered and will continue to suffer damages.

**WHEREFORE**, Plaintiff, ESTATE OF CONCHETTA CONTI demands judgment against Defendant, LEXINGTON INSURANCE COMPANY on Count Two for:

(a) Compensatory damages;

(b) Consequential damages;

MERLIN LAW
GROUP, PA
125 Half Mile Road
Suite 200, Red Bank
New Jersey, 07701
www.MerlinLawgroup.com

6

(c)   Pre-judgment interest and post-judgment interest;

(d)   Costs of suit;

(e)   Attorneys' fees; and

(f)   For such other relief as the court may deem equitable and just.

                                        **MERLIN LAW GROUP, P.A.**

Date: May 9, 2017          By:   _Nicole F. Levine_
                                  **Nicole F. Levine, Esq.**
                                  **Attorney I.D. #025791999**
                                  nlevine@merlinlawgroup.com
                                  Attorneys for Plaintiff

MERLIN LAW
GROUP, PA
125 Half Mile Road
Suite 200, Red Bank
New Jersey, 07701
www.Merlinlawgroup.com

7

### CERTIFICATION PURSUANT TO R. 4:5-1

I hereby certify that the matter in controversy is not the subject of any other action pending in any Court, is not the subject of a pending arbitration proceeding, and is not the subject of any other contemplated action or arbitration proceeding.

### JURY DEMAND

Plaintiff hereby demands trial by jury as to all issues in the above matter.

### DESIGNATION OF TRIAL ATTORNEY

In accordance with R. 4:25-4, Nicole F. Levine, Esq., is hereby designated as trial counsel for the Plaintiff in the above matter.

MERLIN LAW GROUP, P.A.

Date: May 9, 2017

By: *Nicole F. Levine*
Nicole F. Levine, Esq.
Attorney I.D. #025791999
nlevine@merlinlawgroup.com
Attorneys for Plaintiff

MERLIN LAW
GROUP, PA
125 Half Mile Road
Suite 200, Red Bank
New Jersey, 07701
www.Merlinlawgroup.com

8

AIG OLO3:Sess 1 5/19/2017

# Exhibit A

**LEXINGTON INSURANCE COMPANY**

*LexElite*
PERSONAL LINES INSURANCE

*HO3 Homeowner Declaration Page*

Sub-Broker

NJ SLA# 00014-16-01581

This policy is written by a surplus lines insurer and is not subject to the filing or approval requirements of the New Jersey Department of Banking and Insurance. Such a policy may contain conditions, limitations, exclusions, and different terms than a policy issued by an insurer granted a Certificate of Authority by the New Jersey Department of Banking and Insurance. The insurer has been approved by the Department as an eligible surplus lines insurer, but the policy is not covered by the New Jersey Insurance Guaranty Fund, and only a policy of medical malpractice liability insurance as defined in N.J.S.A. 17:30D-3d or a policy of property insurance covering owner-occupied dwellings of less than four dwelling units are covered by the New Jersey Surplus Lines Guaranty Fund.

| Policy Number: 97082638 | Renewal of Policy Number: New |
|---|---|

| Name of Insured and Mailing Address:<br>Estate Of Conchetta Conti<br><br>216 43RD ST<br>SEA ISLE CITY, NJ 08243-1910 | Broker Name and Address:<br>Quaker Agency, Inc.<br>12 Christopher Way, Suite 201<br>Eatontown, NJ 07724<br>800-392-6837 |
|---|---|

| Policy Term: 06/18/2016 | Expiration: 06/18/2017 | 12:01 AM Standard Time at the Insured's residence premises. |
|---|---|---|

The residence premises covered by this policy is located at the above address, unless otherwise stated.

Insurance is provided only with respect to those special limits of liability applicable thereto.

| Coverage Part 1 - Homeowners | | Coverage Part 2 – Personal Umbrella | |
|---|---|---|---|
| - Coverage A: Dwelling | $401,880 | - Umbrella Limit | $ 0 |
| - Coverage B: Other Structures | $240,560 | - Self Insured Retention | $ 0 |
| - Coverage C: Contents | $90,000 | **Coverage Part 3 – Excess Flood** | |
| - Coverage D: Loss of Use | $30,000 | - Building | $ 0 |
| - Loss Assessment: | $1,000 | - Contents | $ 0 |
| - Ordinance or Law: | 10% | **Coverage Part 4 – Scheduled Property** | |
| - Coverage E: Personal Liability | $500,000 | - Total Scheduled Property | $ 0 |
| - Coverage F: Medical Payments to Others | $5,000 | | |

| | Annual Premium: | $3,214.00 |
|---|---|---|

| Homeowner Deductibles | | Policy Premium: | $3,214.00 |
|---|---|---|---|
| All Other Perils: | $1,000 | Inspection Fee: | 0 |
| Wind Hail: | 2% | SL Broker Fee: | $50.00 |
| Earthquake: | Excluded | Surplus Lines Taxes: | $160.70 |
| Special: None | $N/A | | |
| Special: None | $N/A | | |
| | | Total Due: | $3,424.70 |

| Minimum Earned Premium: $804 | Sub Broker Information | |
|---|---|---|
| **Homeowners Rating Information** | Name: | Anderson, Jackson, Metts |
| Territory: 55    Protection Class: 5 | Addr 1: | 1317 Route 73 Ste 101 |
| County: CAPE MAY-NJ    EQ Zone: NA | Addr 2: | |
| Construction: Frame    Yr Built: 1935 | City, State, Zip: | Mount Laurel, NJ 08054 |

| Forms and Endorsements made part of this policy at time of issuance: |
|---|
| This declaration page with policy provisions and endorsements, if any, issued to form a part, thereof, completes the above numbered homeowner's policy. |

| Countersignature Date: 06/20/2016 | Countersignature: |
|---|---|
| *LexElite 11/00* | Authorized Representative: |

Policy Number: 97082638

Insured: Estate Of Conchetta Conti

IN WITNESS WHEREOF, the Insurance Company identified on the Declarations has caused this policy to be signed by its President, Secretary and a duly authorized representative of the Insurance Company.

_____
PRESIDENT

_____
SECRETARY

| Mortgage 1 | Mortgage 2 |
|---|---|
|  |  |
| Mortgage 3 |  |
|  |  |

**Page 2 of 2**

A
I
G

O
L
0
3
:
S
e
s
s

1
5
/
1
9
/
2
0
1
7

POLICY NUMBER: 97082638
Effective Date:        06/18/2016                              Date Issued: 06/20/2016

## SCHEDULE OF FORMS AND ENDORSEMENTS

| | |
|---|---|
| Lex Elite 11/00 | Declaration Page & Authorization Clause |
| 78052 12 13 | AIG Property Casualty U.S. Privacy and Data Security Notice |
| NJ Notice | New Jersey Notice - A2 |
| HO 00 03 10 00 | Homeowner 3 Special Form |
| HO 04 35 10 00 | Loss Assessment Coverage |
| HO 04 40 10 00 | Structures Rented |
| HO 04 55 03 03 | Identity Fraud |
| HO 04 90 10 00 | Personal Property Replacement Cost |
| HO 04 96 10 00 | Home Day Care Exclusion |
| HO 05 80 10 00 | Property Remediation/Limited Liability for Escaped Fuels |
| HO 24 92 04 99 | Workers Compensation- Residence Premises - New Jersey |
| LEX 00 31 11 04 | Trampoline Exclusion |
| LEX 00 32 08 04 | Underground Storage Tank Exclusion |
| LEX 00 63 04 05 | Mechanical Breakdown |
| LEX 00 82 04 06 | Maximum Payable Amount If Other Insurance |
| LEX 00 144 04 14 | Farm Operations Exclusion |
| LEX 00 156 06 11 | Specified Additional Amount of Insurance for Coverage A - Dwelling |
| LEX 00 159 03 09 | Swimming Pool Under Coverage B Exclusion |
| LEX 00 168 09 09 | Specific Building Materials Exclusion |
| LEX 00 169 09 09 | Inflation Guard |
| LEX 00 177 03 11 | Incidental Business Coverage Endorsement |
| LEX 00 185 11 12 | New Jersey Important Flood Insurance Notice |
| LEX 00 190 09 13 | Mandatory Evacuation Coverage |
| LEX 00 195 04 14 | Section I & Section II Total Business Exclusion |
| LEX 00 196 06 14 | Cyber Safety Coverage |
| LEX 00 197 06 14 | Personal Injury Coverage |
| LEX 00 198 08 14 | Animal Exclusion Applicable to Tenants |
| LEX 01 29 02 15 | Lex Special Provisions New Jersey |
| LEX 03 14 07 07 | Windstorm or Hail Percentage Deductible |
| LEX 04 33 11 04 | Limited Mold Related Coverage |
| LEX 04 95 11 04 | Water Back Up and Sump Overflow |
| LEX 05 80 11 04 | Advisory Notice to Policyholders - Explanatory Memo |
| 89644 (6/13) | Economic Sanctions Endorsement |
| PRG 2023 (5-14) | Service of Suit Condition |
| Claims Notice to Policyholders | What to Do if You Suffer a Loss to Your Home and Property |

A I G

O L 0 3 : S e s 1 5 / 1 9 / 2 0 1 7

# LEXINGTON INSURANCE COMPANY
## HO3 Homeowner Declaration Page

**LEElite** PERSONAL LINES INSURANCE
Insured

NJ SLA# 00014-16-01581

This policy is written by a surplus lines insurer and is not subject to the filing or approval requirements of the New Jersey Department of Banking and Insurance. Such a policy may contain conditions, limitations, exclusions, and different terms than a policy issued by an insurer granted a Certificate of Authority by the New Jersey Department of Banking and Insurance. The insurer has been approved by the Department as an eligible surplus lines insurer, but the policy is not covered by the New Jersey Insurance Guaranty Fund, and only a policy of medical malpractice liability insurance as defined in N.J.S.A. 17:30D-3d or a policy of property insurance covering owner-occupied dwellings of less than four dwelling units are covered by the New Jersey Surplus Lines Guaranty Fund.

| Policy Number: 97082638 | Renewal of Policy Number: New |
|---|---|

| Name of Insured and Mailing Address: | Broker Name and Address: |
|---|---|
| Estate Of Conchetta Conti<br><br>216 43RD ST<br>SEA ISLE CITY, NJ 08243-1910 | Quaker Agency, Inc.<br>12 Christopher Way, Suite 201<br>Eatontown, NJ 07724<br>800-392-6837 |

| Policy Term: 06/18/2016 | Expiration: 06/18/2017 | 12:01 AM Standard Time at the insured's residence premises. |
|---|---|---|

The residence premises covered by this policy is located at the above address, unless otherwise stated.

Insurance is provided only with respect to those special limits of liability applicable thereto:

| Coverage Part 1 - Homeowners | | Coverage Part 2 -- Personal Umbrella | |
|---|---|---|---|
| - Coverage A: Dwelling | $401,880 | - Umbrella Limit | $ 0 |
| - Coverage B: Other Structures | $240,500 | - Self Insured Retention | $ 0 |
| - Coverage C: Contents | $90,000 | **Coverage Part 3 -- Excess Flood** | |
| - Coverage D: Loss of Use | $30,000 | - Building | $ 0 |
| - Loss Assessment: | $1,000 | - Contents | $ 0 |
| - Ordinance or Law: | 10% | **Coverage Part 4 -- Scheduled Property** | |
| - Coverage E: Personal Liability | $500,000 | - Total Scheduled Property | $ 0 |
| - Coverage F: Medical Payments to Others | $5,000 | | |

| | | Annual Premium: | $3,214.00 |
|---|---|---|---|
| **Homeowner Deductibles** | | Policy Premium: | $3,214.00 |
| All Other Perils: | $1,000 | Inspection Fee: | 0 |
| **Wind Hail:** | 2% | SL Broker Fee: | $50.00 |
| **Earthquake:** | Excluded | Surplus Lines Taxes: | $160.70 |
| **Special:** None | $N/A | | |
| **Special:** None | $N/A | | |
| | | Total Due: | $3,424.70 |

| Minimum Earned Premium: $804 | Sub Broker Information | |
|---|---|---|
| **Homeowners Rating Information** | Name: | Anderson, Jackson, Metts |
| Territory: 55    Protection Class: 5 | Addr 1: | 1317 Route 73 Ste 101 |
| County: CAPE MAY-NJ    EQ Zone: NA | Addr 2: | |
| Construction:Frame    Yr Built: 1935 | City, State, Zip: | Mount Laurel, NJ 08054 |

| Forms and Endorsements made part of this policy at time of issuance: |
|---|
| This declaration page with policy provisions and endorsements, if any, issued to form a part, thereof, completes the above numbered homeowner's policy. |

| Countersignature Date: 06/20/2016 | Countersignature: |
|---|---|
| *LexElite 11/00* | Authorized Representative: |

Policy Number: 97082638

**Insured:** Estate Of Conchetta Conti

IN WITNESS WHEREOF, the Insurance Company identified on the Declarations has caused this policy to be signed by its President, Secretary and a duly authorized representative of the Insurance Company.

_____
PRESIDENT

_____
SECRETARY

| Mortgage 1 | Mortgage 2 |
|---|---|
| | |
| Mortgage 3 | |
| | |

**Page 2 of 2**

A
I
G

O
L
0
3
:
S
e
s
s

1

5
/
1
9
/
2
0
1
7

POLICY NUMBER: 97082638
Effective Date:        06/18/2016                                    Date Issued: 06/20/2016

## SCHEDULE OF FORMS AND ENDORSEMENTS

| | |
|---|---|
| Lex Elite 11/00 | Declaration Page & Authorization Clause |
| 78052 12 13 | AIG Property Casualty U.S. Privacy and Data Security Notice |
| NJ Notice | New Jersey Notice - A2 |
| HO 00 03 10 00 | Homeowner 3 Special Form |
| HO 04 35 10 00 | Loss Assessment Coverage |
| HO 04 40 10 00 | Structures Rented |
| HO 04 55 03 03 | Identity Fraud |
| HO 04 90 10 00 | Personal Property Replacement Cost |
| HO 04 96 10 00 | Home Day Care Exclusion |
| HO 05 80 10 00 | Property Remediation/Limited Liability for Escaped Fuels |
| HO 24 92 04 99 | Workers Compensation- Residence Premises - New Jersey |
| LEX 00 31 11 04 | Trampoline Exclusion |
| LEX 00 32 08 04 | Underground Storage Tank Exclusion |
| LEX 00 63 04 05 | Mechanical Breakdown |
| LEX 00 82 04 06 | Maximum Payable Amount If Other Insurance |
| LEX 00 144 04 14 | Farm Operations Exclusion |
| LEX 00 156 06 11 | Specified Additional Amount of Insurance for Coverage A - Dwelling |
| LEX 00 159 03 09 | Swimming Pool Under Coverage B Exclusion |
| LEX 00 168 09 09 | Specific Building Materials Exclusion |
| LEX 00 169 09 09 | Inflation Guard |
| LEX 00 177 03 11 | Incidental Business Coverage Endorsement |
| LEX 00 185 11 12 | New Jersey Important Flood Insurance Notice |
| LEX 00 190 09 13 | Mandatory Evacuation Coverage |
| LEX 00 195 04 14 | Section I & Section II Total Business Exclusion |
| LEX 00 196 06 14 | Cyber Safety Coverage |
| LEX 00 197 06 14 | Personal Injury Coverage |
| LEX 00 198 08 14 | Animal Exclusion Applicable to Tenants |
| LEX 01 29 02 15 | Lex Special Provisions New Jersey |
| LEX 03 14 07 07 | Windstorm or Hail Percentage Deductible |
| LEX 04 33 11 04 | Limited Mold Related Coverage |
| LEX 04 95 11 04 | Water Back Up and Sump Overflow |
| LEX 05 80 11 04 | Advisory Notice to Policyholders - Explanatory Memo |
| 89644 (6/13) | Economic Sanctions Endorsement |
| PRG 2023 (5-14) | Service of Suit Condition |
| Claims Notice to Policyholders | What to Do if You Suffer a Loss to Your Home and Property |

## POLICYHOLDER NOTICE

Thank you for purchasing insurance from a member company of American International Group, Inc. (AIG). The AIG member companies generally pay compensation to brokers and independent agents, and may have paid compensation in connection with your policy. You can review and obtain information about the nature and range of compensation paid by AIG member companies to brokers and independent agents in the United States by visiting our website at www.aig.com/producercompensation or by calling 1-800-706-3102.

91222 (4/13)

A-2

NOTICE:

This policy is written by a surplus lines insurer and is not subject to the filing or approval requirements of the New Jersey Department of Banking and Insurance. Such a policy may contain conditions, limitations, exclusions and different terms than a policy issued by an insurer granted a Certificate of Authority by the New Jersey Department of Banking and Insurance. The insurer has been approved by the Department as an eligible surplus lines insurer, but the policy is not covered by the New Jersey Insurance Guaranty Fund, and only a policy of medical malpractice liability insurance as defined in N.J.S.A. 17:30D-3d or a policy of property insurance covering owner-occupied dwellings of less than four dwelling units are covered by the New Jersey Surplus Lines Guaranty Fund.

AIG OL03:Sess 15/19/2017

# AIG Property Casualty
# U.S. Privacy and Data Security Notice

### About This Notice

This Privacy and Data Security Notice applies only to your Personal Information (see definition below) obtained by one of the property-casualty insurance company subsidiaries or affiliates of American International Group, Inc. listed at the end of this notice (collectively, the "AIG Companies" or "we") in connection with the products or services one of those companies provided primarily for your personal, family, or household purposes in connection with which you are receiving this notice.

The AIG Companies have established practices, procedures and system protections that are designed to help protect the privacy and security of Personal Information that we collect in the course of conducting our business. This notice outlines how we collect, handle, and disclose Personal Information about you.

The term "Personal Information," as used in this Privacy and Data Security Notice, means information that identifies you personally. Examples of Personal Information include, but are not limited to, a first and last name, a home or other physical address, an email address, a financial account or credit card number, a driver's license number, and information on your physical condition or health status.

### I.   Information Privacy

We may collect Personal Information from applications, enrollment forms, in claims processing, or in your other interactions with us and with our Affiliates. We may also collect Personal Information from credit reporting agencies and other third parties in connection with the sale of our products to you.

We will collect Personal Information only in accordance with applicable laws or regulations, whether we collect it in response to your request for a product or service from us or otherwise.

### Information Sharing

We may share your Personal Information with Affiliates and Non-Affiliates as described below.

### With our Affiliates:

Our Affiliates may include other insurance companies, insurance holding companies, insurance agents and agencies, claims administrators, marketing companies, e-commerce service providers, and companies providing administrative services.

We may share your Personal Information, including Personal Information of a health nature, with our Affiliates that assist us in servicing your insurance policies. Examples are administration (billing and collections), risk management, underwriting, and claims handling. We may also share your Personal Information with our Affiliates for the purpose of detecting and preventing fraud, as directed or authorized by you, or as otherwise permitted or required by law.

### With Non-Affiliates:

We may share your Personal Information, including Personal Information of a health nature, with Non-Affiliates that assist us in servicing your insurance policies. Examples are administration (billing and collections), risk management, underwriting, and claims handling. We may also share your Personal Information with Non-Affiliates for the purpose of detecting and preventing fraud, as directed or authorized by you, or as otherwise permitted or required by law.

We may also enter into joint marketing agreements with Non-Affiliates to share your non-health Personal Information as permitted by law. These Non-Affiliates may include providers of financial products or services such as insurance companies, financial institutions, and securities firms.

Because we do not share Personal Information with either Affiliates or Non-Affiliates in any other way, there is no need for an opt-out process in our privacy procedures.

78052 (12/13)

AIG OL03:sess 15/19/2017

**For California and Vermont Residents:** If it becomes necessary to share your Personal Information with Non-Affiliates other than as specifically allowed by law, we will not do so without first obtaining your permission.

## II.  Data Security

To help prevent unwarranted disclosure of your Personal Information and secure it from theft, we utilize secure computer networks. Access is restricted to those persons who have a business need to use your Personal Information to provide products or services to you. We also maintain physical, electronic, and procedural safeguards designed to protect your Personal Information in compliance with federal and state privacy and information security laws. Non-Affiliates that assist us in servicing insurance policies or who enter into joint marketing agreements with us are required to take measures to maintain the security of your Personal Information in compliance with federal and state privacy and information security laws.

## III.  Maintaining Personal Information

We also maintain procedures to ensure that the Personal Information we collect is accurate, up-to-date, and as complete as possible. If you believe the information we have about you in our records or files is incomplete or inaccurate, you may request that we make additions or corrections, or if it is feasible, that we delete this information from our files. You may make this request in writing to (include your name, address and policy number):

<div align="center">

**Chief Privacy Officer**
**AIG Property Casualty**
**108 Malden Lane, 40<sup>th</sup> Floor| New York, NY 10038**
Fax: 212 458-7081
E-Mail: CIPrivacy@aig.com

</div>

**Special Notice:** You can obtain access to any non-public Personal Information we have about you if you properly identify yourself and submit a written request to the address above describing the information you want to review. We will also tell you the identity, if recorded, of persons to whom we have disclosed your non-public Personal Information within the preceding two years.

You may request that we correct, amend or delete information about you. If we do so, we will notify organizations that provided us with that information and, at your request, persons who received that information from us within the preceding two years. If we cannot grant your request to correct, amend or delete the information, you may give us a written statement of the reasons you disagree, which we will place in your file and give to the same parties who would have been notified of the requested change.

## Our Customers Can Depend on Us

We are committed to maintaining our trusted relationship with our Customers. We consider it our privilege to serve our Customers' insurance and financial needs and we value the trust they have placed in us. Our Customers' privacy is a top priority. We will continue to monitor our practices in order to protect that privacy and will comply with state privacy laws that require more restrictive practices than those set out in this notice.

## Important Information Concerning the Applicability and Future Changes to this Privacy and Data Security Notice

We may change this Privacy and Data Security Notice from time to time, and if particular changes are required by law to be communicated to you, we will do so.

The AIG Companies include: American Home Assurance Company; AIG Assurance Company; AIG Property Casualty Company; AIG Specialty Insurance Company; Commerce and Industry Insurance Company; Granite State Insurance Company; Illinois National Insurance Co.; Lexington Insurance Company; National Union Fire Insurance Company of Pittsburgh, Pa.; National Union Fire Insurance Company of Vermont; New Hampshire Insurance Company; The Insurance Company of the State of Pennsylvania; American International Life Assurance Company of New York; and American General Life Insurance Company of Delaware.

78052 (12/13)

**HOMEOWNERS**
HO 00 03 10 00

# HOMEOWNERS 3 – SPECIAL FORM

**AGREEMENT**

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy.

**DEFINITIONS**

A. In this policy, "you" and "your" refer to the "named insured" shown in the Declarations and the spouse if a resident of the same household. "We", "us" and "our" refer to the Company providing this insurance.

B. In addition, certain words and phrases are defined as follows:

1. "Aircraft Liability", "Hovercraft Liability", "Motor Vehicle Liability" and "Watercraft Liability", subject to the provisions in b. below, mean the following:

   a. Liability for "bodily injury" or "property damage" arising out of the:

      (1) Ownership of such vehicle or craft by an "insured";

      (2) Maintenance, occupancy, operation, use, loading or unloading of such vehicle or craft by any person;

      (3) Entrustment of such vehicle or craft by an "insured" to any person;

      (4) Failure to supervise or negligent supervision of any person involving such vehicle or craft by an "insured"; or

      (5) Vicarious liability, whether or not imposed by law, for the actions of a child or minor involving such vehicle or craft.

   b. For the purpose of this definition:

      (1) Aircraft means any contrivance used or designed for flight except model or hobby aircraft not used or designed to carry people or cargo;

      (2) Hovercraft means a self-propelled motorized ground effect vehicle and includes, but is not limited to, flarecraft and air cushion vehicles;

      (3) Watercraft means a craft principally designed to be propelled on or in water by wind, engine power or electric motor; and

      (4) Motor vehicle means a "motor vehicle" as defined in 7. below.

2. "Bodily injury" means bodily harm, sickness or disease, including required care, loss of services and death that results.

3. "Business" means:

   a. A trade, profession or occupation engaged in on a full-time, part-time or occasional basis; or

   b. Any other activity engaged in for money or other compensation, except the following:

      (1) One or more activities, not described in (2) through (4) below, for which no "insured" receives more than $2,000 in total compensation for the 12 months before the beginning of the policy period;

      (2) Volunteer activities for which no money is received other than payment for expenses incurred to perform the activity;

      (3) Providing home day care services for which no compensation is received, other than the mutual exchange of such services; or

      (4) The rendering of home day care services to a relative of an "insured".

4. "Employee" means an employee of an "insured", or an employee leased to an "insured" by a labor leasing firm under an agreement between an "insured" and the labor leasing firm, whose duties are other than those performed by a "residence employee".

5. "Insured" means:

   a. You and residents of your household who are:

      (1) Your relatives; or

      (2) Other persons under the age of 21 and in the care of any person named above;

   b. A student enrolled in school full time, as defined by the school, who was a resident of your household before moving out to attend school, provided the student is under the age of:

      (1) 24 and your relative; or

      (2) 21 and in your care or the care of a person described in a.(1) above; or

A
I
G

O
L
0
3
:
s
e
s
s

1
5
/
1
9
/
2
0
1
7

c. Under Section II:

(1) With respect to animals or watercraft to which this policy applies, any person or organization legally responsible for these animals or watercraft which are owned by you or any person included in **a.** or **b.** above. "Insured" does not mean a person or organization using or having custody of these animals or watercraft in the course of any "business" or without consent of the owner; or

(2) With respect to a "motor vehicle" to which this policy applies:

   (a) Persons while engaged in your employ or that of any person included in **a.** or **b.** above; or

   (b) Other persons using the vehicle on an "insured location" with your consent.

Under both Sections I and II, when the word an immediately precedes the word "insured", the words an "insured" together mean one or more "insureds".

6. "Insured location" means:

  **a.** The "residence premises";

  **b.** The part of other premises, other structures and grounds used by you as a residence; and

    (1) Which is shown in the Declarations; or

    (2) Which is acquired by you during the policy period for your use as a residence;

  **c.** Any premises used by you in connection with a premises described in **a.** and **b.** above;

  **d.** Any part of a premises:

    (1) Not owned by an "insured"; and

    (2) Where an "insured" is temporarily residing;

  **e.** Vacant land, other than farm land, owned by or rented to an "insured";

  **f.** Land owned by or rented to an "insured" on which a one, two, three or four family dwelling is being built as a residence for an "insured";

  **g.** Individual or family cemetery plots or burial vaults of an "insured"; or

**h.** Any part of a premises occasionally rented to an "insured" for other than "business" use.

7. "Motor vehicle" means:

  **a.** A self-propelled land or amphibious vehicle; or

  **b.** Any trailer or semitrailer which is being carried on, towed by or hitched for towing by a vehicle described in **a.** above.

8. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:

  **a.** "Bodily injury"; or

  **b.** "Property damage".

9. "Property damage" means physical injury to, destruction of, or loss of use of tangible property.

10. "Residence employee" means:

  **a.** An employee of an "insured", or an employee leased to an "insured" by a labor leasing firm, under an agreement between an "insured" and the labor leasing firm, whose duties are related to the maintenance or use of the "residence premises", including household or domestic services; or

  **b.** One who performs similar duties elsewhere not related to the "business" of an "insured".

A "residence employee" does not include a temporary employee who is furnished to an "insured" to substitute for a permanent "residence employee" on leave or to meet seasonal or short-term workload conditions.

11. "Residence premises" means:

  **a.** The one family dwelling where you reside;

  **b.** The two, three or four family dwelling where you reside in at least one of the family units; or

  **c.** That part of any other building where you reside;

and which is shown as the "residence premises" in the Declarations.

"Residence premises" also includes other structures and grounds at that location.

    Copyright, Insurance Services Office, Inc., 1999    HO 00 03 10 00

A
I
G

O
L
0
3
:
S
e
s
s

1
5
/
1
9
/
2
0
1
7

## DEDUCTIBLE

Unless otherwise noted in this policy, the following deductible provision applies:

Subject to the policy limits that apply, we will pay only that part of the total of all loss payable under Section I that exceeds the deductible amount shown in the Declarations.

## SECTION I — PROPERTY COVERAGES

### A. Coverage A – Dwelling

1. We cover:
   a. The dwelling on the "residence premises" shown in the Declarations, including structures attached to the dwelling; and
   b. Materials and supplies located on or next to the "residence premises" used to construct, alter or repair the dwelling or other structures on the "residence premises".

2. We do not cover land, including land on which the dwelling is located.

### B. Coverage B – Other Structures

1. We cover other structures on the "residence premises" set apart from the dwelling by clear space. This includes structures connected to the dwelling by only a fence, utility line, or similar connection.

2. We do not cover:
   a. Land, including land on which the other structures are located;
   b. Other structures rented or held for rental to any person not a tenant of the dwelling, unless used solely as a private garage;
   c. Other structures from which any "business" is conducted; or
   d. Other structures used to store "business" property. However, we do cover a structure that contains "business" property solely owned by an "insured" or a tenant of the dwelling provided that "business" property does not include gaseous or liquid fuel, other than fuel in a permanently installed fuel tank of a vehicle or craft parked or stored in the structure.

3. The limit of liability for this coverage will not be more than 10% of the limit of liability that applies to Coverage A. Use of this coverage does not reduce the Coverage A limit of liability.

### C. Coverage C – Personal Property

1. Covered Property

   We cover personal property owned or used by an "insured" while it is anywhere in the world. After a loss and at your request, we will cover personal property owned by:
   a. Others while the property is on the part of the "residence premises" occupied by an "insured"; or
   b. A guest or a "residence employee", while the property is in any residence occupied by an "insured".

2. Limit For Property At Other Residences

   Our limit of liability for personal property usually located at an "insured"s" residence, other than the "residence premises", is 10% of the limit of liability for Coverage C, or $1,000, whichever is greater. However, this limitation does not apply to personal property:
   a. Moved from the "residence premises" because it is being repaired, renovated or rebuilt and is not fit to live in or store property in; or
   b. In a newly acquired principal residence for 30 days from the time you begin to move the property there.

3. Special Limits Of Liability

   The special limit for each category shown below is the total limit for each loss for all property in that category. These special limits do not increase the Coverage C limit of liability.
   a. $200 on money, bank notes, bullion, gold other than goldware, silver other than silverware, platinum other than platinumware, coins, medals, scrip, stored value cards and smart cards.
   b. $1,500 on securities, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, personal records, passports, tickets and stamps. This dollar limit applies to these categories regardless of the medium (such as paper or computer software) on which the material exists.

   This limit includes the cost to research, replace or restore the information from the lost or damaged material.

c. $1,500 on watercraft of all types, including their trailers, furnishings, equipment and outboard engines or motors.

d. $1,500 on trailers or semitrailers not used with watercraft of all types.

e. $1,500 for loss by theft of jewelry, watches, furs, precious and semiprecious stones.

f. $2,500 for loss by theft of firearms and related equipment.

g. $2,500 for loss by theft of silverware, silver-plated ware, goldware, gold-plated ware, platinumware, platinum-plated ware and pewterware. This includes flatware, hollow-ware, tea sets, trays and trophies made of or including silver, gold or pewter.

h. $2,500 on property, on the "residence premises", used primarily for "business" purposes.

i. $500 on property, away from the "residence premises", used primarily for "business" purposes. However, this limit does not apply to loss to electronic apparatus and other property described in Categories j. and k. below.

j. $1,500 on electronic apparatus and accessories, while in or upon a "motor vehicle", but only if the apparatus is equipped to be operated by power from the "motor vehicle's" electrical system while still capable of being operated by other power sources.

   Accessories include antennas, tapes, wires, records, discs or other media that can be used with any apparatus described in this Category j.

k. $1,500 on electronic apparatus and accessories used primarily for "business" while away from the "residence premises" and not in or upon a "motor vehicle". The apparatus must be equipped to be operated by power from the "motor vehicle's" electrical system while still capable of being operated by other power sources.

   Accessories include antennas, tapes, wires, records, discs or other media that can be used with any apparatus described in this Category k.

4. **Property Not Covered**

   We do not cover:

   a. Articles separately described and specifically insured, regardless of the limit for which they are insured, in this or other insurance;

b. Animals, birds or fish;

c. "Motor vehicles":

   (1) This includes:

      (a) Their accessories, equipment and parts; or

      (b) Electronic apparatus and accessories designed to be operated solely by power from the electrical system of the "motor vehicle". Accessories include antennas, tapes, wires, records, discs or other media that can be used with any apparatus described above.

      The exclusion of property described in (a) and (b) above applies only while such property is in or upon the "motor vehicle".

   (2) We do cover "motor vehicles" not required to be registered for use on public roads or property which are:

      (a) Used solely to service an "insured's" residence; or

      (b) Designed to assist the handicapped;

d. Aircraft meaning any contrivance used or designed for flight including any parts whether or not attached to the aircraft.

   We do cover model or hobby aircraft not used or designed to carry people or cargo;

e. Hovercraft and parts. Hovercraft means a self-propelled motorized ground effect vehicle and includes, but is not limited to, flarecraft and air cushion vehicles;

f. Property of roomers, boarders and other tenants, except property of roomers and boarders related to an "insured";

g. Property in an apartment regularly rented or held for rental to others by an "insured", except as provided in E.10. Landlord's Furnishings under Section I – Property Coverages;

h. Property rented or held for rental to others off the "residence premises";

i. "Business" data, including such data stored in:

   (1) Books of account, drawings or other paper records; or

   (2) Computers and related equipment.

   We do cover the cost of blank recording or storage media, and of prerecorded computer programs available on the retail market;

Copyright, Insurance Services Office, Inc., 1999
HO 00 03 10 00

A
I
G

O
L
0
3
:
s
e
s
s

1
5
/
1
9
/
2
0
1
7

j. Credit cards, electronic fund transfer cards or access devices used solely for deposit, withdrawal or transfer of funds except as provided in **E.6.** Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money under Section **I** – Property Coverages; or

k. Water or steam.

### D. Coverage D – Loss Of Use

The limit of liability for Coverage **D** is the total limit for the coverages in **1.** Additional Living Expense, **2.** Fair Rental Value and **3.** Civil Authority Prohibits Use below.

#### 1. Additional Living Expense

If a loss covered under Section **I** makes that part of the "residence premises" where you reside not fit to live in, we cover any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living.

Payment will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere.

#### 2. Fair Rental Value

If a loss covered under Section **I** makes that part of the "residence premises" rented to others or held for rental by you not fit to live in, we cover the fair rental value of such premises less any expenses that do not continue while it is not fit to live in.

Payment will be for the shortest time required to repair or replace such premises.

#### 3. Civil Authority Prohibits Use

If a civil authority prohibits you from use of the "residence premises" as a result of direct damage to neighboring premises by a Peril Insured Against, we cover the loss as provided in **1.** Additional Living Expense and **2.** Fair Rental Value above for no more than two weeks.

#### 4. Loss Or Expense Not Covered

We do not cover loss or expense due to cancellation of a lease or agreement.

The periods of time under **1.** Additional Living Expense, **2.** Fair Rental Value and **3.** Civil Authority Prohibits Use above are not limited by expiration of this policy.

### E. Additional Coverages

#### 1. Debris Removal

a. We will pay your reasonable expense for the removal of:

(1) Debris of covered property if a Peril Insured Against that applies to the damaged property causes the loss; or

(2) Ash, dust or particles from a volcanic eruption that has caused direct loss to a building or property contained in a building.

This expense is included in the limit of liability that applies to the damaged property. If the amount to be paid for the actual damage to the property plus the debris removal expense is more than the limit of liability for the damaged property, an additional 5% of that limit is available for such expense.

b. We will also pay your reasonable expense, up to $1,000, for the removal from the "residence premises" of:

(1) Your tree(s) felled by the peril of Windstorm or Hail or Weight of Ice, Snow or Sleet; or

(2) A neighbor's tree(s) felled by a Peril Insured Against under Coverage **C;**

provided the tree(s):

(3) Damage(s) a covered structure; or

(4) Does not damage a covered structure, but:

(a) Block(s) a driveway on the "residence premises" which prevent(s) a "motor vehicle", that is registered for use on public roads or property, from entering or leaving the "residence premises"; or

(b) Block(s) a ramp or other fixture designed to assist a handicapped person to enter or leave the dwelling building.

The $1,000 limit is the most we will pay in any one loss regardless of the number of fallen trees. No more than $500 of this limit will be paid for the removal of any one tree.

This coverage is additional insurance.

#### 2. Reasonable Repairs

a. We will pay the reasonable cost incurred by you for the necessary measures taken solely to protect covered property that is damaged by a Peril Insured Against from further damage.

A
I
G

O
L
0
3
:
S
e
s
s

1

5
/
1
9
/
2
0
1
7

**b.** If the measures taken involve repair to other damaged property, we will only pay if that property is covered under this policy and the damage is caused by a Peril Insured Against. This coverage does not:

    **(1)** Increase the limit of liability that applies to the covered property; or

    **(2)** Relieve you of your duties, in case of a loss to covered property, described in **B.4.** under Section **I – Conditions**.

**3. Trees, Shrubs And Other Plants**

We cover trees, shrubs, plants or lawns, on the "residence premises", for loss caused by the following Perils Insured Against:

    **a.** Fire or Lightning;

    **b.** Explosion;

    **c.** Riot or Civil Commotion;

    **d.** Aircraft;

    **e.** Vehicles not owned or operated by a resident of the "residence premises";

    **f.** Vandalism or Malicious Mischief; or

    **g.** Theft.

We will pay up to 5% of the limit of liability that applies to the dwelling for all trees, shrubs, plants or lawns. No more than $500 of this limit will be paid for any one tree, shrub or plant. We do not cover property grown for "business" purposes.

This coverage is additional insurance.

**4. Fire Department Service Charge**

We will pay up to $500 for your liability assumed by contract or agreement for fire department charges incurred when the fire department is called to save or protect covered property from a Peril Insured Against. We do not cover fire department service charges if the property is located within the limits of the city, municipality or protection district furnishing the fire department response.

This coverage is additional insurance. No deductible applies to this coverage.

**5. Property Removed**

We insure covered property against direct loss from any cause while being removed from a premises endangered by a Peril Insured Against and for no more than 30 days while removed.

This coverage does not change the limit of liability that applies to the property being removed.

**6. Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money**

    **a.** We will pay up to $500 for:

        **(1)** The legal obligation of an "insured" to pay because of the theft or unauthorized use of credit cards issued to or registered in an "insured's" name;

        **(2)** Loss resulting from theft or unauthorized use of an electronic fund transfer card or access device used for deposit, withdrawal or transfer of funds, issued to or registered in an "insured's" name;

        **(3)** Loss to an "insured" caused by forgery or alteration of any check or negotiable instrument; and

        **(4)** Loss to an "insured" through acceptance in good faith of counterfeit United States or Canadian paper currency.

    All loss resulting from a series of acts committed by any one person or in which any one person is concerned or implicated is considered to be one loss.

    This coverage is additional insurance. No deductible applies to this coverage.

    **b.** We do not cover:

        **(1)** Use of a credit card, electronic fund transfer card or access device:

            **(a)** By a resident of your household;

            **(b)** By a person who has been entrusted with either type of card or access device; or

            **(c)** If an "insured" has not complied with all terms and conditions under which the cards are issued or the devices accessed; or

        **(2)** Loss arising out of "business" use or dishonesty of an "insured".

    **c.** If the coverage in **a.** above applies, the following defense provisions also apply:

        **(1)** We may investigate and settle any claim or suit that we decide is appropriate. Our duty to defend a claim or suit ends when the amount we pay for the loss equals our limit of liability.

        **(2)** If a suit is brought against an "insured" for liability under **a.(1)** or **(2)** above, we will provide a defense at our expense by counsel of our choice.

        **(3)** We have the option to defend at our expense an "insured" or an "insured's" bank against any suit for the enforcement of payment under **a.(3)** above.

Copyright, Insurance Services Office, Inc., 1999
HO 00 03 10 00

7. **Loss Assessment**

   a. We will pay up to $1,000 for your share of loss assessment charged during the policy period against you, as owner or tenant of the "residence premises", by a corporation or association of property owners. The assessment must be made as a result of direct loss to property, owned by all members collectively, of the type that would be covered by this policy if owned by you, caused by a Peril Insured Against under Coverage **A**, other than:

      (1) Earthquake; or

      (2) Land shock waves or tremors before, during or after a volcanic eruption.

      The limit of $1,000 is the most we will pay with respect to any one loss, regardless of the number of assessments. We will only apply one deductible, per unit, to the total amount of any one loss to the property described above, regardless of the number of assessments.

   b. We do not cover assessments charged against you or a corporation or association of property owners by any governmental body.

   c. Paragraph **P.** Policy Period under Section I – Conditions does not apply to this coverage.

   This coverage is additional insurance.

8. **Collapse**

   a. With respect to this Additional Coverage:

      (1) Collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its current intended purpose.

      (2) A building or any part of a building that is in danger of falling down or caving in is not considered to be in a state of collapse.

      (3) A part of a building that is standing is not considered to be in a state of collapse even if it has separated from another part of the building.

      (4) A building or any part of a building that is standing is not considered to be in a state of collapse even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

   b. We insure for direct physical loss to covered property involving collapse of a building or any part of a building if the collapse was caused by one or more of the following:

      (1) The Perils Insured Against named under Coverage **C**;

      (2) Decay that is hidden from view, unless the presence of such decay is known to an "insured" prior to collapse;

      (3) Insect or vermin damage that is hidden from view, unless the presence of such damage is known to an "insured" prior to collapse;

      (4) Weight of contents, equipment, animals or people;

      (5) Weight of rain which collects on a roof; or

      (6) Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

   c. Loss to an awning, fence, patio, deck, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under **b.(2)** through **(6)** above, unless the loss is a direct result of the collapse of a building or any part of a building.

   d. This coverage does not increase the limit of liability that applies to the damaged covered property.

9. **Glass Or Safety Glazing Material**

   a. We cover:

      (1) The breakage of glass or safety glazing material which is part of a covered building, storm door or storm window;

      (2) The breakage of glass or safety glazing material which is part of a covered building, storm door or storm window when caused directly by earth movement; and

      (3) The direct physical loss to covered property caused solely by the pieces, fragments or splinters of broken glass or safety glazing material which is part of a building, storm door or storm window.

A
I
G

O
L
0
3
:
S
e
s
s

1
5
/
1
9
/
2
0
1
7

b. This coverage does not include loss:

(1) To covered property which results because the glass or safety glazing material has been broken, except as provided in a.(3) above; or

(2) On the "residence premises" if the dwelling has been vacant for more than 60 consecutive days immediately before the loss, except when the breakage results directly from earth movement as provided in a.(2) above. A dwelling being constructed is not considered vacant.

c. This coverage does not increase the limit of liability that applies to the damaged property.

**10. Landlord's Furnishings**

We will pay up to $2,500 for your appliances, carpeting and other household furnishings, in each apartment on the "residence premises" regularly rented or held for rental to others by an "insured", for loss caused by a Peril Insured Against in Coverage **C**, other than Theft.

This limit is the most we will pay in any one loss regardless of the number of appliances, carpeting or other household furnishings involved in the loss.

This coverage does not increase the limit of liability applying to the damaged property.

**11. Ordinance Or Law**

a. You may use up to 10% of the limit of liability that applies to Coverage **A** for the increased costs you incur due to the enforcement of any ordinance or law which requires or regulates:

(1) The construction, demolition, remodeling, renovation or repair of that part of a covered building or other structure damaged by a Peril Insured Against;

(2) The demolition and reconstruction of the undamaged part of a covered building or other structure, when that building or other structure must be totally demolished because of damage by a Peril Insured Against to another part of that covered building or other structure; or

(3) The remodeling, removal or replacement of the portion of the undamaged part of a covered building or other structure necessary to complete the remodeling, repair or replacement of that part of the covered building or other structure damaged by a Peril Insured Against.

b. You may use all or part of this ordinance or law coverage to pay for the increased costs you incur to remove debris resulting from the construction, demolition, remodeling, renovation, repair or replacement of property as stated in a. above.

c. We do not cover:

(1) The loss in value to any covered building or other structure due to the requirements of any ordinance or law; or

(2) The costs to comply with any ordinance or law which requires any "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants in or on any covered building or other structure.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

This coverage is additional insurance.

**12. Grave Markers**

We will pay up to $5,000 for grave markers, including mausoleums, on or away from the "residence premises" for loss caused by a Peril Insured Against under Coverage **C**.

This coverage does not increase the limits of liability that apply to the damaged covered property.

**SECTION I – PERILS INSURED AGAINST**

**A. Coverage A – Dwelling And Coverage B – Other Structures**

1. We insure against risk of direct physical loss to property described in Coverages **A** and **B**.

2. We do not insure, however, for loss:

a. Excluded under Section I – Exclusions;

b. Involving collapse, except as provided in E.8. Collapse under Section I – Property Coverages; or

c. Caused by:

(1) Freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing. This provision does not apply if you have used reasonable care to:

(a) Maintain heat in the building; or

Copyright, Insurance Services Office, Inc., 1999
HO 00 03 10 00

A
I
G

O
L
0
3
:
S
e
s
s

1
5
/
1
9
/
2
0
1
7

(b) Shut off the water supply and drain all systems and appliances of water.

However, if the building is protected by an automatic fire protective sprinkler system, you must use reasonable care to continue the water supply and maintain heat in the building for coverage to apply.

For purposes of this provision a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment;

(2) Freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a:

(a) Fence, pavement, patio or swimming pool;

(b) Footing, foundation, bulkhead, wall, or any other structure or device that supports all or part of a building, or other structure;

(c) Retaining wall or bulkhead that does not support all or part of a building or other structure; or

(d) Pier, wharf or dock;

(3) Theft in or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied;

(4) Vandalism and malicious mischief, and any ensuing loss caused by any intentional and wrongful act committed in the course of the vandalism or malicious mischief, if the dwelling has been vacant for more than 60 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant;

(5) Mold, fungus or wet rot. However, we do insure for loss caused by mold, fungus or wet rot that is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure if such loss results from the accidental discharge or overflow of water or steam from within:

(a) A plumbing, heating, air conditioning or automatic fire protective sprinkler system, or a household appliance, on the "residence premises"; or

(b) A storm drain, or water, steam or sewer pipes, off the "residence premises".

For purposes of this provision, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment; or

(6) Any of the following:

(a) Wear and tear, marring, deterioration;

(b) Mechanical breakdown, latent defect, inherent vice, or any quality in property that causes it to damage or destroy itself;

(c) Smog, rust or other corrosion, or dry rot;

(d) Smoke from agricultural smudging or industrial operations;

(e) Discharge, dispersal, seepage, migration, release or escape of pollutants unless the discharge, dispersal, seepage, migration, release or escape is itself caused by a Peril Insured Against named under Coverage C.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed;

(f) Settling, shrinking, bulging or expansion, including resultant cracking, of bulkheads, pavements, patios, footings, foundations, walls, floors, roofs or ceilings;

(g) Birds, vermin, rodents, or insects; or

(h) Animals owned or kept by an "insured".

**Exception To c.(6)**

Unless the loss is otherwise excluded, we cover loss to property covered under Coverage **A** or **B** resulting from an accidental discharge or overflow of water or steam from within a:

(i) Storm drain, or water, steam or sewer pipe, off the "residence premises"; or

(ii) Plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance on the "residence premises". This includes the cost to tear out and replace any part of a building, or other structure, on the "residence premises", but only when necessary to repair the system or appliance. However, such tear out and replacement coverage only applies to other structures if the water or steam causes actual damage to a building on the "residence premises".

We do not cover loss to the system or appliance from which this water or steam escaped.

For purposes of this provision, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, down spout or similar fixtures or equipment.

Section I – Exclusion A.3. Water Damage, Paragraphs a. and c. that apply to surface water and water below the surface of the ground do not apply to loss by water covered under c.(5) and (6) above.

Under 2.b. and c. above, any ensuing loss to property described in Coverages A and B not precluded by any other provision in this policy is covered.

**B. Coverage C – Personal Property**

We insure for direct physical loss to the property described in Coverage **C** caused by any of the following perils unless the loss is excluded in Section I – Exclusions.

1. **Fire Or Lightning**

2. **Windstorm Or Hail**

   This peril includes loss to watercraft of all types and their trailers, furnishings, equipment, and outboard engines or motors, only while inside a fully enclosed building.

   This peril does not include loss to the property contained in a building caused by rain, snow, sleet, sand or dust unless the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.

3. **Explosion**

4. **Riot Or Civil Commotion**

5. **Aircraft**

   This peril includes self-propelled missiles and spacecraft.

6. **Vehicles**

7. **Smoke**

   This peril means sudden and accidental damage from smoke, including the emission or puffback of smoke, soot, fumes or vapors from a boiler, furnace or related equipment.

   This peril does not include loss caused by smoke from agricultural smudging or industrial operations.

8. **Vandalism Or Malicious Mischief**

9. **Theft**

   a. This peril includes attempted theft and loss of property from a known place when it is likely that the property has been stolen.

   b. This peril does not include loss caused by theft:

      (1) Committed by an "insured";

      (2) In or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied;

      (3) From that part of a "residence premises" rented by an "insured" to someone other than another "insured"; or

      (4) That occurs off the "residence premises" of:

         (a) Trailers, semitrailers and campers;

         (b) Watercraft of all types, and their furnishings, equipment and outboard engines or motors; or

         (c) Property while at any other residence owned by, rented to, or occupied by an "insured", except while an "insured" is temporarily living there. Property of an "insured" who is a student is covered while at the residence the student occupies to attend school as long as the student has been there at any time during the 60 days immediately before the loss.

10. **Falling Objects**

    This peril does not include loss to property contained in a building unless the roof or an outside wall of the building is first damaged by a falling object. Damage to the falling object itself is not included.

11. **Weight Of Ice, Snow Or Sleet**

    This peril means weight of ice, snow or sleet which causes damage to property contained in a building.

      Copyright, Insurance Services Office, Inc., 1999      HO 00 03 10 00

12. **Accidental Discharge Or Overflow Of Water Or Steam**

   a. This peril means accidental discharge or overflow of water or steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance.

   b. This peril does not include loss:

      (1) To the system or appliance from which the water or steam escaped;

      (2) Caused by or resulting from freezing except as provided in Peril Insured Against 14. Freezing;

      (3) On the "residence premises" caused by accidental discharge or overflow which occurs off the "residence premises"; or

      (4) Caused by mold, fungus or wet rot unless hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure.

   c. In this peril, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment.

   d. Section I – Exclusion A.3. Water Damage, Paragraphs a. and c. that apply to surface water and water below the surface of the ground do not apply to loss by water covered under this peril.

13. **Sudden And Accidental Tearing Apart, Cracking, Burning Or Bulging**

   This peril means sudden and accidental tearing apart, cracking, burning or bulging of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.

   We do not cover loss caused by or resulting from freezing under this peril.

14. **Freezing**

   a. This peril means freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance but only if you have used reasonable care to:

      (1) Maintain heat in the building; or

      (2) Shut off the water supply and drain all systems and appliances of water.

      However, if the building is protected by an automatic fire protective sprinkler system, you must use reasonable care to continue the water supply and maintain heat in the building for coverage to apply.

   b. In this peril, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment.

15. **Sudden And Accidental Damage From Artificially Generated Electrical Current**

   This peril does not include loss to tubes, transistors, electronic components or circuitry that are a part of appliances, fixtures, computers, home entertainment units or other types of electronic apparatus.

16. **Volcanic Eruption**

   This peril does not include loss caused by earthquake, land shock waves or tremors.

## SECTION I – EXCLUSIONS

A. We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

   1. **Ordinance Or Law**

      Ordinance Or Law means any ordinance or law:

      a. Requiring or regulating the construction, demolition, remodeling, renovation or repair of property, including removal of any resulting debris. This Exclusion **A.1.a.** does not apply to the amount of coverage that may be provided for in **E.11.** Ordinance Or Law under Section I – Property Coverages;

      b. The requirements of which result in a loss in value to property; or

      c. Requiring any "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants.

      Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

      This Exclusion **A.1.** applies whether or not the property has been physically damaged.

   2. **Earth Movement**

      Earth Movement means:

      a. Earthquake, including land shock waves or tremors before, during or after a volcanic eruption;

A
I
G

O
L
0
3
:
S
e
s

1

5
/
1
9
/
2
0
1
7

b. Landslide, mudslide or mudflow;

c. Subsidence or sinkhole; or

d. Any other earth movement including earth sinking, rising or shifting;

caused by or resulting from human or animal forces or any act of nature unless direct loss by fire or explosion ensues and then we will pay only for the ensuing loss.

This Exclusion **A.2.** does not apply to loss by theft.

3. **Water Damage**

Water Damage means:

a. Flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind;

b. Water or water-borne material which backs up through sewers or drains or which overflows or is discharged from a sump, sump pump or related equipment; or

c. Water or water-borne material below the surface of the ground, including water which exerts pressure on or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure;

caused by or resulting from human or animal forces or any act of nature.

Direct loss by fire, explosion or theft resulting from water damage is covered.

4. **Power Failure**

Power Failure means the failure of power or other utility service if the failure takes place off the "residence premises". But if the failure results in a loss, from a Peril Insured Against on the "residence premises", we will pay for the loss caused by that peril.

5. **Neglect**

Neglect means neglect of an "insured" to use all reasonable means to save and preserve property at and after the time of a loss.

6. **War**

War includes the following and any consequence of any of the following:

a. Undeclared war, civil war, insurrection, rebellion or revolution;

b. Warlike act by a military force or military personnel; or

c. Destruction, seizure or use for a military purpose.

Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

7. **Nuclear Hazard**

This Exclusion **A.7.** pertains to Nuclear Hazard to the extent set forth in M. Nuclear Hazard Clause under Section I – Conditions.

8. **Intentional Loss**

Intentional Loss means any loss arising out of any act an "insured" commits or conspires to commit with the intent to cause a loss.

In the event of such loss, no "insured" is entitled to coverage, even "insureds" who did not commit or conspire to commit the act causing the loss.

9. **Governmental Action**

Governmental Action means the destruction, confiscation or seizure of property described in Coverage **A**, **B** or **C** by order of any governmental or public authority.

This exclusion does not apply to such acts ordered by any governmental or public authority that are taken at the time of a fire to prevent its spread, if the loss caused by fire would be covered under this policy.

B. We do not insure for loss to property described in Coverages **A** and **B** caused by any of the following. However, any ensuing loss to property described in Coverages **A** and **B** not precluded by any other provision in this policy is covered.

1. Weather conditions. However, this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in **A.** above to produce the loss.

2. Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

3. Faulty, inadequate or defective:

a. Planning, zoning, development, surveying, siting;

b. Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

c. Materials used in repair, construction, renovation or remodeling; or

d. Maintenance;

of part or all of any property whether on or off the "residence premises".

Copyright, Insurance Services Office, Inc., 1999      HO 00 03 10 00

A
I
G

O
L
0
3
:
s
e
s
s

1
5
/
1
9
/
2
0
1
7

# SECTION I – CONDITIONS

## A. Insurable Interest And Limit Of Liability

Even if more than one person has an insurable interest in the property covered, we will not be liable in any one loss:

1. To an "insured" for more than the amount of such "insured's" interest at the time of loss; or

2. For more than the applicable limit of liability.

## B. Duties After Loss

In case of a loss to covered property, we have no duty to provide coverage under this policy if the failure to comply with the following duties is prejudicial to us. These duties must be performed either by you, an "insured" seeking coverage, or a representative of either:

1. Give prompt notice to us or our agent;

2. Notify the police in case of loss by theft;

3. Notify the credit card or electronic fund transfer card or access device company in case of loss as provided for in E.6. Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money under Section I – Property Coverages;

4. Protect the property from further damage. If repairs to the property are required, you must:

   a. Make reasonable and necessary repairs to protect the property; and

   b. Keep an accurate record of repair expenses;

5. Cooperate with us in the investigation of a claim;

6. Prepare an inventory of damaged personal property showing the quantity, description, actual cash value and amount of loss. Attach all bills, receipts and related documents that justify the figures in the inventory;

7. As often as we reasonably require:

   a. Show the damaged property;

   b. Provide us with records and documents we request and permit us to make copies; and

   c. Submit to examination under oath, while not in the presence of another "insured", and sign the same;

8. Send to us, within 60 days after our request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

   a. The time and cause of loss;

   b. The interests of all "insureds" and all others in the property involved and all liens on the property;

   c. Other insurance which may cover the loss;

   d. Changes in title or occupancy of the property during the term of the policy;

   e. Specifications of damaged buildings and detailed repair estimates;

   f. The inventory of damaged personal property described in 6. above;

   g. Receipts for additional living expenses incurred and records that support the fair rental value loss; and

   h. Evidence or affidavit that supports a claim under E.6. Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money under Section I – Property Coverages, stating the amount and cause of loss.

## C. Loss Settlement

In this Condition C., the terms "cost to repair or replace" and "replacement cost" do not include the increased costs incurred to comply with the enforcement of any ordinance or law, except to the extent that coverage for these increased costs is provided in E.11. Ordinance Or Law under Section I – Property Coverages. Covered property losses are settled as follows:

1. Property of the following types:

   a. Personal property;

   b. Awnings, carpeting, household appliances, outdoor antennas and outdoor equipment, whether or not attached to buildings;

   c. Structures that are not buildings; and

   d. Grave markers, including mausoleums;

   at actual cash value at the time of loss but not more than the amount required to repair or replace.

2. Buildings covered under Coverage A or B at replacement cost without deduction for depreciation, subject to the following:

   a. If, at the time of loss, the amount of insurance in this policy on the damaged building is 80% or more of the full replacement cost of the building immediately before the loss, we will pay the cost to repair or replace, after application of any deductible and without deduction for depreciation, but not more than the least of the following amounts:

      (1) The limit of liability under this policy that applies to the building;

      (2) The replacement cost of that part of the building damaged with material of like kind and quality and for like use; or

      (3) The necessary amount actually spent to repair or replace the damaged building.

A
I
G

O
L
0
3
:
S
e
s
s

1

5
/
1
9
/
2
0
1
7

If the building is rebuilt at a new premises, the cost described in (2) above is limited to the cost which would have been incurred if the building had been built at the original premises.

b. If, at the time of loss, the amount of insurance in this policy on the damaged building is less than 80% of the full replacement cost of the building immediately before the loss, we will pay the greater of the following amounts, but not more than the limit of liability under this policy that applies to the building:

(1) The actual cash value of that part of the building damaged; or

(2) That proportion of the cost to repair or replace, after application of any deductible and without deduction for depreciation, that part of the building damaged, which the total amount of insurance in this policy on the damaged building bears to 80% of the replacement cost of the building.

c. To determine the amount of insurance required to equal 80% of the full replacement cost of the building immediately before the loss, do not include the value of:

(1) Excavations, footings, foundations, piers, or any other structures or devices that support all or part of the building, which are below the undersurface of the lowest basement floor;

(2) Those supports described in (1) above which are below the surface of the ground inside the foundation walls, if there is no basement; and

(3) Underground flues, pipes, wiring and drains.

d. We will pay no more than the actual cash value of the damage until actual repair or replacement is complete. Once actual repair or replacement is complete, we will settle the loss as noted in 2.a. and b. above.

However, if the cost to repair or replace the damage is both:

(1) Less than 5% of the amount of insurance in this policy on the building; and

(2) Less than $2,500;

we will settle the loss as noted in 2.a. and b. above whether or not actual repair or replacement is complete.

e. You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss to buildings on an actual cash value basis. You may then make claim for any additional liability according to the provisions of this Condition C. Loss Settlement, provided you notify us of your intent to do so within 180 days after the date of loss.

### D. Loss To A Pair Or Set

In case of loss to a pair or set we may elect to:

1. Repair or replace any part to restore the pair or set to its value before the loss; or

2. Pay the difference between actual cash value of the property before and after the loss.

### E. Appraisal

If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.

Each party will:

1. Pay its own appraiser; and

2. Bear the other expenses of the appraisal and umpire equally.

### F. Other Insurance And Service Agreement

If a loss covered by this policy is also covered by:

1. Other insurance, we will pay only the proportion of the loss that the limit of liability that applies under this policy bears to the total amount of insurance covering the loss; or

2. A service agreement, this insurance is excess over any amounts payable under any such agreement. Service agreement means a service plan, property restoration plan, home warranty or other similar service warranty agreement, even if it is characterized as insurance.

### G. Suit Against Us

No action can be brought against us unless there has been full compliance with all of the terms under Section I of this policy and the action is started within two years after the date of loss.

Copyright, Insurance Services Office, Inc., 1999

HO 00 03 10 00

A
I
G

O
L
0
3
:
S
e
s
s

1

5
/
1
9
/
2
0
1
7

## H. Our Option

If we give you written notice within 30 days after we receive your signed, sworn proof of loss, we may repair or replace any part of the damaged property with material or property of like kind and quality.

## I. Loss Payment

We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss and:

1. Reach an agreement with you;

2. There is an entry of a final judgment; or

3. There is a filing of an appraisal award with us.

## J. Abandonment Of Property

We need not accept any property abandoned by an "insured".

## K. Mortgage Clause

1. If a mortgagee is named in this policy, any loss payable under Coverage A or B will be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment will be the same as the order of precedence of the mortgages.

2. If we deny your claim, that denial will not apply to a valid claim of the mortgagee, if the mortgagee:

   a. Notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;

   b. Pays any premium due under this policy on demand if you have neglected to pay the premium; and

   c. Submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so. Paragraphs E. Appraisal, G. Suit Against Us and I. Loss Payment under Section I – Conditions also apply to the mortgagee.

3. If we decide to cancel or not to renew this policy, the mortgagee will be notified at least 10 days before the date cancellation or nonrenewal takes effect.

4. If we pay the mortgagee for any loss and deny payment to you:

   a. We are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

   b. At our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we will receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

5. Subrogation will not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

## L. No Benefit To Bailee

We will not recognize any assignment or grant any coverage that benefits a person or organization holding, storing or moving property for a fee regardless of any other provision of this policy.

## M. Nuclear Hazard Clause

1. "Nuclear Hazard" means any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these.

2. Loss caused by the nuclear hazard will not be considered loss caused by fire, explosion, or smoke, whether these perils are specifically named in or otherwise included within the Perils Insured Against.

3. This policy does not apply under Section I to loss caused directly or indirectly by nuclear hazard, except that direct loss by fire resulting from the nuclear hazard is covered.

## N. Recovered Property

If you or we recover any property for which we have made payment under this policy, you or we will notify the other of the recovery. At your option, the property will be returned to or retained by you or it will become our property. If the recovered property is returned to or retained by you, the loss payment will be adjusted based on the amount you received for the recovered property.

## O. Volcanic Eruption Period

One or more volcanic eruptions that occur within a 72 hour period will be considered as one volcanic eruption.

## P. Policy Period

This policy applies only to loss which occurs during the policy period.

## Q. Concealment Or Fraud

We provide coverage to no "insureds" under this policy if, whether before or after a loss, an "insured" has:

1. Intentionally concealed or misrepresented any material fact or circumstance;

2. Engaged in fraudulent conduct; or

3. Made false statements;

relating to this insurance.

R. **Loss Payable Clause**

If the Declarations show a loss payee for certain listed insured personal property, the definition of "insured" is changed to include that loss payee with respect to that property.

If we decide to cancel or not renew this policy, that loss payee will be notified in writing.

## SECTION II – LIABILITY COVERAGES

A. **Coverage E – Personal Liability**

If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies, we will:

1. Pay up to our limit of liability for the damages for which an "insured" is legally liable. Damages include prejudgment interest awarded against an "insured"; and

2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when our limit of liability for the "occurrence" has been exhausted by payment of a judgment or settlement.

B. **Coverage F – Medical Payments To Others**

We will pay the necessary medical expenses that are incurred or medically ascertained within three years from the date of an accident causing "bodily injury". Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services. This coverage does not apply to you or regular residents of your household except "residence employees". As to others, this coverage applies only:

1. To a person on the "insured location" with the permission of an "insured"; or

2. To a person off the "insured location", if the "bodily injury":

a. Arises out of a condition on the "insured location" or the ways immediately adjoining;

b. Is caused by the activities of an "insured";

c. Is caused by a "residence employee" in the course of the "residence employee's" employment by an "insured"; or

d. Is caused by an animal owned by or in the care of an "insured".

## SECTION II – EXCLUSIONS

A. **"Motor Vehicle Liability"**

1. Coverages E and F do not apply to any "motor vehicle liability" if, at the time and place of an "occurrence", the involved "motor vehicle":

a. Is registered for use on public roads or property;

b. Is not registered for use on public roads or property, but such registration is required by a law, or regulation issued by a government agency, for it to be used at the place of the "occurrence"; or

c. Is being:

(1) Operated in, or practicing for, any prearranged or organized race, speed contest or other competition;

(2) Rented to others;

(3) Used to carry persons or cargo for a charge; or

(4) Used for any "business" purpose except for a motorized golf cart while on a golfing facility.

2. If Exclusion A.1. does not apply, there is still no coverage for "motor vehicle liability" unless the "motor vehicle" is:

a. In dead storage on an "insured location";

b. Used solely to service an "insured's" residence;

c. Designed to assist the handicapped and, at the time of an "occurrence", it is:

(1) Being used to assist a handicapped person; or

(2) Parked on an "insured location";

d. Designed for recreational use off public roads and:

(1) Not owned by an "insured"; or

(2) Owned by an "insured" provided the "occurrence" takes place on an "insured location" as defined in Definitions B. 6.a., b., d., e. or h.; or

e. A motorized golf cart that is owned by an "insured", designed to carry up to 4 persons, not built or modified after manufacture to exceed a speed of 25 miles per hour on level ground and, at the time of an "occurrence", is within the legal boundaries of:

(1) A golfing facility and is parked or stored there, or being used by an "insured" to:

(a) Play the game of golf or for other recreational or leisure activity allowed by the facility;

Copyright, Insurance Services Office, Inc., 1999                HO 00 03 10 00

A I G

O L 0 3 : s e s

1 5 / 1 9 / 2 0 1 7

A
I
G

O
L
0
3
:
S
e
s
s

1
5
/
1
9
/
2
0
1
7

(b) Travel to or from an area where "motor vehicles" or golf carts are parked or stored; or

(c) Cross public roads at designated points to access other parts of the golfing facility; or

(2) A private residential community, including its public roads upon which a motorized golf cart can legally travel, which is subject to the authority of a property owners association and contains an "insured's" residence.

B. "Watercraft Liability"

1. Coverages E and F do not apply to any "watercraft liability" if, at the time of an "occurrence", the involved watercraft is being:

    a. Operated in, or practicing for, any prearranged or organized race, speed contest or other competition. This exclusion does not apply to a sailing vessel or a predicted log cruise;

    b. Rented to others;

    c. Used to carry persons or cargo for a charge; or

    d. Used for any "business" purpose.

2. If Exclusion B.1. does not apply, there is still no coverage for "watercraft liability" unless, at the time of the "occurrence", the watercraft:

    a. Is stored;

    b. Is a sailing vessel, with or without auxiliary power, that is:

        (1) Less than 26 feet in overall length; or

        (2) 26 feet or more in overall length and not owned by or rented to an "insured"; or

    c. Is not a sailing vessel and is powered by:

        (1) An inboard or inboard-outdrive engine or motor, including those that power a water jet pump, of:

            (a) 50 horsepower or less and not owned by an "insured"; or

            (b) More than 50 horsepower and not owned by or rented to an "insured"; or

        (2) One or more outboard engines or motors with:

            (a) 25 total horsepower or less;

            (b) More than 25 horsepower if the outboard engine or motor is not owned by an "insured";

            (c) More than 25 horsepower if the outboard engine or motor is owned by an "insured" who acquired it during the policy period; or

(d) More than 25 horsepower if the outboard engine or motor is owned by an "insured" who acquired it before the policy period, but only if:

    (i) You declare them at policy inception; or

    (ii) Your intent to insure them is reported to us in writing within 45 days after you acquire them.

The coverages in (c) and (d) above apply for the policy period.

Horsepower means the maximum power rating assigned to the engine or motor by the manufacturer.

C. "Aircraft Liability"

This policy does not cover "aircraft liability".

D. "Hovercraft Liability"

This policy does not cover "hovercraft liability".

E. Coverage E – Personal Liability And Coverage F – Medical Payments To Others

Coverages E and F do not apply to the following:

1. Expected Or Intended Injury

"Bodily injury" or "property damage" which is expected or intended by an "insured" even if the resulting "bodily injury" or "property damage":

    a. Is of a different kind, quality or degree than initially expected or intended; or

    b. Is sustained by a different person, entity, real or personal property, than initially expected or intended.

However, this Exclusion E.1. does not apply to "bodily injury" resulting from the use of reasonable force by an "insured" to protect persons or property;

2. "Business"

    a. "Bodily injury" or "property damage" arising out of or in connection with a "business" conducted from an "insured location" or engaged in by an "insured", whether or not the "business" is owned or operated by an "insured" or employs an "insured".

    This Exclusion E.2. applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the "business".

    b. This Exclusion E.2. does not apply to:

        (1) The rental or holding for rental of an "insured location";

A
I
G

O
L
0
3
:
S
e
s
s

1
5
/
1
9
/
2
0
1
7

(a) On an occasional basis if used only as a residence;

(b) In part for use only as a residence, unless a single family unit is intended for use by the occupying family to lodge more than two roomers or boarders; or

(c) In part, as an office, school, studio or private garage; and

(2) An "insured" under the age of 21 years involved in a part-time or occasional, self-employed "business" with no employees;

3. **Professional Services**

"Bodily injury" or "property damage" arising out of the rendering of or failure to render professional services;

4. **"Insured's" Premises Not An "Insured Location"**

"Bodily injury" or "property damage" arising out of a premises:

a. Owned by an "insured";

b. Rented to an "insured"; or

c. Rented to others by an "insured";

that is not an "insured location";

5. **War**

"Bodily injury" or "property damage" caused directly or indirectly by war, including the following and any consequence of any of the following:

a. Undeclared war, civil war, insurrection, rebellion or revolution;

b. Warlike act by a military force or military personnel; or

c. Destruction, seizure or use for a military purpose.

Discharge of a nuclear weapon will be deemed a warlike act even if accidental;

6. **Communicable Disease**

"Bodily injury" or "property damage" which arises out of the transmission of a communicable disease by an "insured";

7. **Sexual Molestation, Corporal Punishment Or Physical Or Mental Abuse**

"Bodily injury" or "property damage" arising out of sexual molestation, corporal punishment or physical or mental abuse; or

8. **Controlled Substance**

"Bodily injury" or "property damage" arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a Controlled Substance as defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812. Controlled Substances include but are not limited to cocaine, LSD, marijuana and all narcotic drugs. However, this exclusion does not apply to the legitimate use of prescription drugs by a person following the orders of a licensed physician.

Exclusions A. "Motor Vehicle Liability", B. "Watercraft Liability", C. "Aircraft Liability", D. "Hovercraft Liability" and E.4. "Insured's" Premises Not An "Insured Location" do not apply to "bodily injury" to a "residence employee" arising out of and in the course of the "residence employee's" employment by an "insured".

F. **Coverage E – Personal Liability**

Coverage E does not apply to:

1. Liability:

a. For any loss assessment charged against you as a member of an association, corporation or community of property owners, except as provided in D. Loss Assessment under Section II – Additional Coverages;

b. Under any contract or agreement entered into by an "insured". However, this exclusion does not apply to written contracts:

(1) That directly relate to the ownership, maintenance or use of an "insured location"; or

(2) Where the liability of others is assumed by you prior to an "occurrence";

unless excluded in a. above or elsewhere in this policy;

2. "Property damage" to property owned by an "insured". This includes costs or expenses incurred by an "insured" or others to repair, replace, enhance, restore or maintain such property to prevent injury to a person or damage to property of others, whether on or away from an "insured location";

3. "Property damage" to property rented to, occupied or used by or in the care of an "insured". This exclusion does not apply to "property damage" caused by fire, smoke or explosion;

4. "Bodily injury" to any person eligible to receive any benefits voluntarily provided or required to be provided by an "insured" under any:

a. Workers' compensation law;

Copyright, Insurance Services Office, Inc., 1999

HO 00 03 10 00

A
I
G

O
L
0
3
:
S
e
s
s

1

5
/
1
9
/
2
0
1
7

    b.  Non-occupational disability law; or

    c.  Occupational disease law;

5.  "Bodily injury" or "property damage" for which an "insured" under this policy:

    a.  Is also an insured under a nuclear energy liability policy issued by the:

       (1)  Nuclear Energy Liability Insurance Association;

       (2)  Mutual Atomic Energy Liability Underwriters;

       (3)  Nuclear Insurance Association of Canada;

      or any of their successors; or

    b.  Would be an insured under such a policy but for the exhaustion of its limit of liability; or

6.  "Bodily injury" to you or an "insured" as defined under Definitions 5.a. or b.

    This exclusion also applies to any claim made or suit brought against you or an "insured":

    a.  To repay; or

    b.  Share damages with;

    another person who may be obligated to pay damages because of "bodily injury" to an "insured".

## G. Coverage F – Medical Payments To Others

Coverage F does not apply to "bodily injury":

1.  To a "residence employee" if the "bodily injury":

    a.  Occurs off the "insured location"; and

    b.  Does not arise out of or in the course of the "residence employee's" employment by an "insured";

2.  To any person eligible to receive benefits voluntarily provided or required to be provided under any:

    a.  Workers' compensation law;

    b.  Non-occupational disability law; or

    c.  Occupational disease law;

3.  From any:

    a.  Nuclear reaction;

    b.  Nuclear radiation; or

    c.  Radioactive contamination;

    all whether controlled or uncontrolled or however caused; or

    d.  Any consequence of any of these; or

4.  To any person, other than a "residence employee" of an "insured", regularly residing on any part of the "insured location".

## SECTION II – ADDITIONAL COVERAGES

We cover the following in addition to the limits of liability:

### A. Claim Expenses

We pay:

1.  Expenses we incur and costs taxed against an "insured" in any suit we defend;

2.  Premiums on bonds required in a suit we defend, but not for bond amounts more than the Coverage E limit of liability. We need not apply for or furnish any bond;

3.  Reasonable expenses incurred by an "insured" at our request, including actual loss of earnings (but not loss of other income) up to $250 per day, for assisting us in the investigation or defense of a claim or suit; and

4.  Interest on the entire judgment which accrues after entry of the judgment and before we pay or tender, or deposit in court that part of the judgment which does not exceed the limit of liability that applies.

### B. First Aid Expenses

We will pay expenses for first aid to others incurred by an "insured" for "bodily injury" covered under this policy. We will not pay for first aid to an "insured".

### C. Damage To Property Of Others

1.  We will pay, at replacement cost, up to $1,000 per "occurrence" for "property damage" to property of others caused by an "insured".

2.  We will not pay for "property damage":

    a.  To the extent of any amount recoverable under Section I;

    b.  Caused intentionally by an "insured" who is 13 years of age or older;

    c.  To property owned by an "insured";

    d.  To property owned by or rented to a tenant of an "insured" or a resident in your household; or

    e.  Arising out of:

       (1)  A "business" engaged in by an "insured";

       (2)  Any act or omission in connection with a premises owned, rented or controlled by an "insured", other than the "insured location"; or

       (3)  The ownership, maintenance, occupancy, operation, use, loading or unloading of aircraft, hovercraft, watercraft or "motor vehicles".

A
I
G

O
L
0
3
:
S
e
s
s

1
5
/
1
9
/
2
0
1
7

This exclusion e.(3) does not apply to a "motor vehicle" that:

   (a) Is designed for recreational use off public roads;

   (b) Is not owned by an "insured"; and

   (c) At the time of the "occurrence", is not required by law, or regulation issued by a government agency, to have been registered for it to be used on public roads or property.

**D. Loss Assessment**

1. We will pay up to $1,000 for your share of loss assessment charged against you, as owner or tenant of the "residence premises", during the policy period by a corporation or association of property owners, when the assessment is made as a result of:

   a. "Bodily injury" or "property damage" not excluded from coverage under Section II – Exclusions; or

   b. Liability for an act of a director, officer or trustee in the capacity as a director, officer or trustee, provided such person:

     (1) Is elected by the members of a corporation or association of property owners; and

     (2) Serves without deriving any income from the exercise of duties which are solely on behalf of a corporation or association of property owners.

2. Paragraph I. Policy Period under Section II – Conditions does not apply to this Loss Assessment Coverage.

3. Regardless of the number of assessments, the limit of $1,000 is the most we will pay for loss arising out of:

   a. One accident, including continuous or repeated exposure to substantially the same general harmful condition; or

   b. A covered act of a director, officer or trustee. An act involving more than one director, officer or trustee is considered to be a single act.

4. We do not cover assessments charged against you or a corporation or association of property owners by any governmental body.

**SECTION II – CONDITIONS**

**A. Limit Of Liability**

Our total liability under Coverage E for all damages resulting from any one "occurrence" will not be more than the Coverage E limit of liability shown in the Declarations. This limit is the same regardless of the number of "insureds", claims made or persons injured. All "bodily injury" and "property damage" resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions shall be considered to be the result of one "occurrence".

Our total liability under Coverage F for all medical expense payable for "bodily injury" to one person as the result of one accident will not be more than the Coverage F limit of liability shown in the Declarations.

**B. Severability Of Insurance**

This insurance applies separately to each "insured". This condition will not increase our limit of liability for any one "occurrence".

**C. Duties After "Occurrence"**

In case of an "occurrence", you or another "insured" will perform the following duties that apply. We have no duty to provide coverage under this policy if your failure to comply with the following duties is prejudicial to us. You will help us by seeing that these duties are performed:

1. Give written notice to us or our agent as soon as is practical, which sets forth:

   a. The identity of the policy and the "named insured" shown in the Declarations;

   b. Reasonably available information on the time, place and circumstances of the "occurrence"; and

   c. Names and addresses of any claimants and witnesses;

2. Cooperate with us in the investigation, settlement or defense of any claim or suit;

3. Promptly forward to us every notice, demand, summons or other process relating to the "occurrence";

4. At our request, help us:

   a. To make settlement;

   b. To enforce any right of contribution or indemnity against any person or organization who may be liable to an "insured";

Copyright, Insurance Services Office, Inc., 1999

HO 00 03 10 00

c. With the conduct of suits and attend hearings and trials; and

d. To secure and give evidence and obtain the attendance of witnesses;

5. With respect to **C.** Damage To Property Of Others under Section II – Additional Coverages, submit to us within 60 days after the loss, a sworn statement of loss and show the damaged property, if in an "insured's" control;

6. No "insured" shall, except at such "insured's" own cost, voluntarily make payment, assume obligation or incur expense other than for first aid to others at the time of the "bodily injury".

**D.** Duties Of An Injured Person – Coverage F – Medical Payments To Others

1. The injured person or someone acting for the injured person will:

a. Give us written proof of claim, under oath if required, as soon as is practical; and

b. Authorize us to obtain copies of medical reports and records.

2. The injured person will submit to a physical exam by a doctor of our choice when and as often as we reasonably require.

**E. Payment Of Claim – Coverage F – Medical Payments To Others**

Payment under this coverage is not an admission of liability by an "insured" or us.

**F. Suit Against Us**

1. No action can be brought against us unless there has been full compliance with all of the terms under this Section II.

2. No one will have the right to join us as a party to any action against an "insured".

3. Also, no action with respect to Coverage **E** can be brought against us until the obligation of such "insured" has been determined by final judgment or agreement signed by us.

**G. Bankruptcy Of An "Insured"**

Bankruptcy or insolvency of an "insured" will not relieve us of our obligations under this policy.

**H. Other Insurance**

This insurance is excess over other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

**I. Policy Period**

This policy applies only to "bodily injury" or "property damage" which occurs during the policy period.

**J. Concealment Or Fraud**

We do not provide coverage to an "insured" who, whether before or after a loss, has:

1. Intentionally concealed or misrepresented any material fact or circumstance;

2. Engaged in fraudulent conduct; or

3. Made false statements;

relating to this insurance.

## SECTIONS I AND II – CONDITIONS

**A. Liberalization Clause**

If we make a change which broadens coverage under this edition of our policy without additional premium charge, that change will automatically apply to your insurance as of the date we implement the change in your state, provided that this implementation date falls within 60 days prior to or during the policy period stated in the Declarations.

This Liberalization Clause does not apply to changes implemented with a general program revision that includes both broadenings and restrictions in coverage, whether that general program revision is implemented through introduction of:

1. A subsequent edition of this policy; or

2. An amendatory endorsement.

**B. Waiver Or Change Of Policy Provisions**

A waiver or change of a provision of this policy must be in writing by us to be valid. Our request for an appraisal or examination will not waive any of our rights.

**C. Cancellation**

1. You may cancel this policy at any time by returning it to us or by letting us know in writing of the date cancellation is to take effect.

2. We may cancel this policy only for the reasons stated below by letting you know in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the Declarations. Proof of mailing will be sufficient proof of notice.

a. When you have not paid the premium, we may cancel at any time by letting you know at least 10 days before the date cancellation takes effect.

b. When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by letting you know at least 10 days before the date cancellation takes effect.

A
I
G

O
L
0
3
:
s
e
s
s

1
5
/
1
9
/
2
0
1
7

c. When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel:

(1) If there has been a material misrepresentation of fact which if known to us would have caused us not to issue the policy; or

(2) If the risk has changed substantially since the policy was issued.

This can be done by letting you know at least 30 days before the date cancellation takes effect.

d. When this policy is written for a period of more than one year, we may cancel for any reason at anniversary by letting you know at least 30 days before the date cancellation takes effect.

3. When this policy is canceled, the premium for the period from the date of cancellation to the expiration date will be refunded pro rata.

4. If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will refund it within a reasonable time after the date cancellation takes effect.

D. Nonrenewal

We may elect not to renew this policy. We may do so by delivering to you, or mailing to you at your mailing address shown in the Declarations, written notice at least 30 days before the expiration date of this policy. Proof of mailing will be sufficient proof of notice.

E. Assignment

Assignment of this policy will not be valid unless we give our written consent.

F. Subrogation

An "insured" may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

If an assignment is sought, an "insured" must sign and deliver all related papers and cooperate with us.

Subrogation does not apply to Coverage F or Paragraph C. Damage To Property Of Others under Section II – Additional Coverages.

G. Death

If any person named in the Declarations or the spouse, if a resident of the same household, dies, the following apply:

1. We insure the legal representative of the deceased but only with respect to the premises and property of the deceased covered under the policy at the time of death; and

2. "Insured" includes:

a. An "insured" who is a member of your household at the time of your death, but only while a resident of the "residence premises"; and

b. With respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

Copyright, Insurance Services Office, Inc., 1999

A
I
G

O
L
0
3
:
s
e
s

1
5
/
1
9
/
2
0
1
7

HOMEOWNERS
HO 01 29 11 03

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# SPECIAL PROVISIONS – NEW JERSEY

### SECTION I – EXCLUSIONS

Paragraph **8. Intentional Loss** is deleted and replaced by the following:

**8. Intentional Loss**

Intentional Loss means any loss arising out of any act an "insured" commits or conspires to commit with the intent to cause a loss.

In the event of such loss, no "insured" is entitled to coverage, even "insureds" who did not commit or conspire to commit the act causing the loss.

However, this exclusion will not apply to deny payment to a co-"insured" who did not cooperate in or contribute to the creation of the loss if the loss arose out of domestic violence.

If we pay a claim pursuant to Paragraph **8.,** our payment to the "insured" is limited to that "insured's" insurable interest in the property. In no event will we pay more than the Limit of Liability.

### SECTION I – CONDITIONS

**I. Loss Payment** is deleted and replaced by the following:

**I. Loss Payment**

We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment.

Loss is payable within 10 working days after:

1. We reach an agreement with you and you have satisfied any and all conditions of the agreement; or

2. There is an entry of a final judgment; or

3. There is a filing of an appraisal award with us.

**K. Mortgage Clause**

Paragraph **3.** is deleted and replaced by the following:

3. If we decide to cancel or not to renew this policy, the mortgagee will be notified at least 30 days before the date cancellation or nonrenewal takes effect.

### SECTION II – LIABILITY COVERAGES

**A. Coverage E – Personal Liability**

Paragraph **1.** is deleted and replaced by the following in all Forms and Endorsements **HO 24 73** and **HO 24 82:**

1. Pay up to our limit of liability for damages for which an "insured" is legally liable; and

### SECTION II – EXCLUSIONS

**E. Coverage E – Personal Liability And Coverage F – Medical Payments To Others**

Paragraph **1. Expected Or Intended Injury** is deleted in all forms and Endorsement **HO 24 73** and replaced by the following:

**1. Expected Or Intended Injury**

"Bodily injury" or "property damage", with respect to all "insureds", which is expected or intended by an "insured" even if the "bodily injury" or "property damage";

a. Is of a different kind, quality or degree than initially expected or intended; or

b. Is sustained by a different person, entity, real or personal property than initially expected or intended.

However, this Exclusion E.1. does not apply to "bodily injury" resulting from the use of reasonable force by an "insured" to protect persons or property.

This Exclusion **E.1.** applies to all "insureds", notwithstanding the provision in Section **II – Conditions** Paragraph **B. Severability Of Insurance.**

Paragraph **8. Controlled Substances** is deleted and replaced by the following in all Forms:

**8. Controlled Substance**

"Bodily injury" or "property damage" arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a controlled substance(s) as defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812. Controlled Substances include, but are not limited to, cocaine, LSD, marijuana and all narcotic drugs.

However, this exclusion does not apply to:

A
I
G

O
L
0
3
:
s
e
s
s

1

5
/
1
9
/
2
0
1
7

a. The legitimate use of prescription drugs by a person following the order of a licensed physician; or

© ISO Properties, Inc., 2003

HO 01 29 11 03

A I G

O L 0 3 : S e s s

1 / 1 9 / 2 0 1 7

b. The "insured(s)" who have no knowledge of the involvement with a controlled substance(s). An "insured's" knowledge of such involvement must be shown by us by competent evidence of such knowledge.

(This is Paragraph 9. in Endorsement HO 24 73).

## SECTION II – ADDITIONAL COVERAGES

### A. Claims Expenses

The following paragraph is added:

5. Prejudgment interest awarded against the "insured" on that part of the judgment we pay.

## SECTION II – CONDITIONS

**A. Limit Of Liability** is deleted and replaced by the following:

**A. Limit Of Liability**

1. Our total liability under Coverage **E** for all damages resulting from any one "occurrence" will not be more than the limit of liability for Coverage **E** as shown in the Declarations. All "bodily injury" and "property damage" resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions shall be considered to be the result of one "occurrence".

2. Subject to Paragraph **1.** above, our total liability under Coverage **E** for damages for which an "insured" is legally liable because of vicarious liability, whether or not statutorily imposed, for the actions of a child or minor, if such vicarious liability is not otherwise excluded is $10,000. The sub-limit is within, but does not increase the Coverage **E** limit of liability.

3. The limit of liability in **1.** above and sub-limit in **2.** above apply regardless of the number of "insureds", claims made or persons injured.

4. Our total liability under Coverage **F** for all medical expense payable for "bodily injury" to one person as a result of one accident will not be more than the limit of liability for Coverage **F** as shown in the Declarations.

However, this condition does not apply to losses that are covered under the Home Business Endorsement HO 07 01.

This Condition does not apply with respect to damages arising out of "fungi", wet or dry rot, or bacteria when Endorsements HO 04 26, HO 04 27 or HO 04 28 are attached.

## SECTIONS I AND II – CONDITIONS

**C. Cancellation** is deleted and replaced by the following:

**C. Cancellation**

1. You may cancel this policy at any time by returning it to us or by letting us know in writing of the date cancellation takes effect.

2. We may cancel this policy only for the reasons stated below by letting you know in writing of the date cancellation takes effect. This cancellation notice, stating the reasons for cancellation, may be delivered to you or mailed to you at your mailing address shown in the Declarations by certified mail, or first class mail if we have obtained, from the U.S. Post Office, a date stamped proof of mailing showing your name and address. Written notice of cancellation will also be mailed to any person or organization entitled to notice under the policy.

a. When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel by letting you know at least:

(1) 10 days before the date cancellation takes effect, if we cancel for either: non-payment of premium; or the existence of a moral hazard, which is defined in N.J.A.C. 11:1-20.2(f) as follows:

(a) The risk, danger or probability that the "insured" will destroy, or permit to be destroyed, the insured property for the purpose of collecting the insurance proceeds. Any change in the circumstances of an "insured" that will increase the probability of such a destruction may be considered a moral hazard; and

(b) The substantial risk, danger or probability that the character, circumstances or personal habits of the "insured" may increase the possibility of loss or liability for which we will be held responsible. Any change in character or circumstances of an individual, corporate, partnership or other "insured" that will increase the probability of such a loss or liability may be considered a moral hazard.

(2) 30 days before the date cancellation takes effect if we cancel for any other reason.

HO 01 29 11 03                    © ISO Properties, Inc., 2003                    Page 3 of 5

**b.** When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel only for one or more of the following reasons:

(1) Nonpayment of premium;

(2) Existence of a moral hazard, as defined in N.J.A.C. 11:1-20.2(f) and stated in **C.2.a.(1)(a)** and **C.2.a.(1)(b)** above;

(3) Material misrepresentation or nondisclosure to us of a material fact at the time of acceptance of the risk;

(4) Increased hazard or material change in the risk assumed which we could not have reasonably contemplated at the time of assumption of the risk;

(5) Substantial breaches of contractual duties, conditions or warranties that materially affect the nature and/or insurability of the risk;

(6) Lack of cooperation from the "insured" on loss control matters materially affecting insurability of the risk;

(7) Fraudulent acts against us by the "insured" or the "insured's" representative that materially affect the nature of the risk insured;

(8) Loss of or reduction in available insurance capacity;

(9) Material increase in exposure arising out of changes in statutory or case law subsequent to the issuance of the insurance contract or any subsequent renewal;

(10) Loss of or substantial changes in applicable reinsurance;

(11) Failure by the "insured" to comply with any Federal, State or local fire, health, safety, building or construction regulation, law or ordinance with respect to an insured risk which substantially increases any hazard insured against within 60 days of written notification of a violation of any such law, regulation or ordinance;

(12) Failure by the "insured" to provide reasonable and necessary underwriting information to us upon written request therefore and a reasonable opportunity to respond;

(13) Agency termination, provided:

(a) We document that replacement coverage at comparable rates and terms has been provided to you, and we have informed you, in writing, of your right to continue coverage with us; or

(b) We have informed you, in writing, of your right to continue coverage with us and you have agreed, in writing, to the cancellation based on the termination of your appointed agent; or

(14) Any other reason in accordance with our underwriting guidelines for cancellation of Homeowners insurance.

**c.** If we cancel this policy based on Paragraph **C.2.b.(1)** or **C.2.b.(2)** above, we may do so by letting you know at least 10 days before the date cancellation takes effect. For cancellation due to nonpayment of premium, the notice will state the effect of nonpayment by the due date. Cancellation for nonpayment of premium will not be effective if payment of the amount due is made before the effective date of cancellation set forth in the notice. If we cancel this policy for any other reason listed in **C.2.b.** above, we may cancel by letting you know not more than 120 days nor less than 30 days before the date cancellation takes effect.

**d.** We need not send notice of cancellation if you have:

(1) Replaced coverage elsewhere; or

(2) Specifically requested termination.

**3.** When this policy is cancelled, the premium for the period from the date of cancellation to the expiration date will be refunded pro rata.

**4.** If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will refund it within a reasonable time after the date cancellation takes effect.

© ISO Properties, Inc., 2003

HO 01 29 11 03

D. Nonrenewal is deleted and replaced by the following:

D. Nonrenewal

1. We may elect not to renew this policy for any reason permitted to cancel this policy. If we elect not to renew this policy, we will deliver or mail a notice of nonrenewal, stating the reasons for nonrenewal, to you at least 30 days but not more than 120 days before the expiration date of this policy. If this policy does not have a fixed expiration date, it will be deemed to expire annually on the anniversary of its inception.

2. This nonrenewal notice may be delivered to you or mailed to you at your mailing address shown in the Declarations by:

   a. Certified mail; or

   b. First class mail if we have obtained, from the U.S. Post Office, a date stamped proof of mailing showing your name and address.

3. We need not mail or deliver this nonrenewal notice if you have:

   a. Replaced coverage elsewhere; or

   b. Specifically requested termination.

F. Subrogation

The following is added:

If we pay an "insured", who is a victim of domestic violence, for a loss caused by an act of domestic violence, the rights of that "insured" to recover damages from the perpetrator of the domestic violence are transferred to us to the extent of our payment. That "insured" may not waive such rights to recover against the perpetrator of the domestic violence.

The following Conditions are added:

**INSURANCE DEPARTMENT REQUIREMENT – CANCELLATION AND NONRENEWAL**

Pursuant to New Jersey law, this policy cannot be cancelled or nonrenewed for any underwriting reason or guideline which is arbitrary, capricious or unfairly discriminatory or without adequate prior notice to the "insured". The underwriting reasons or guidelines that an insurer can use to cancel or nonrenew this policy are maintained by the insurer in writing and will be furnished to the "insured" and/or the "insured's" lawful representative upon written request.

This provision shall not apply to any policy which has been in effect for less than 60 days at the time notice of cancellation is mailed or delivered, unless the policy is a renewal policy.

**INSURANCE DEPARTMENT REQUIREMENT – STANDARD FIRE INSURANCE POLICY**

This policy provides coverage to the "insured" on an equivalent or more favorable basis than that provided by the statutory provisions cited in N.J.S.A. 17:36-5.20.

All other provisions of this policy apply.

POLICY NUMBER: 97082638

**HOMEOWNERS**
HO 04 35 10 00

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# LOSS ASSESSMENT COVERAGE

### SCHEDULE*

| |
|---|
| **A.** "Residence Premises" – Additional Amount Of Insurance: $1,000 |
| **B.** Additional Locations<br>  Location Of Unit And Limit Of Liability |

*Entries may be left blank if shown elsewhere in this policy for this coverage.

**1. Additional Insurance – Residence Premises**

We will pay, up to the additional amount of insurance shown in **A.** in the Schedule above, for one or more assessments arising out of a single loss covered under:

a. Section I Additional Coverage **E.7.** Loss Assessment (This is Additional Coverage **C.7.** in Form **HO 00 04** and **D.7.** in Form **HO 00 06.**);

b. Section II – Additional Coverage **D.** Loss Assessment; or

c. Both Section I and Section II.

**2. Additional Locations**

We will pay, up to the limit of liability shown in **B.** in the Schedule, your share of covered loss assessments as described in Section I Additional Coverage **E.7.** and Section II – Additional Coverage **D.** of the policy, arising out of the premises listed above. This is the most we will pay for one or more assessments arising out of a single loss covered under:

a. Either Section I Additional Coverage **E.7.** Loss Assessment or Section II – Additional Coverage **D.** Loss Assessment; or

b. Both Section I and Section II.

**3. Special Limit**

We will not pay more than $1,000 of your assessment per unit that results from a deductible in the policy of insurance purchased by a corporation or association of property owners.

**4. Section II – Exclusion**

Section II – Exclusion **F.1.a.** does not apply to this coverage.

All other provisions of this policy apply.

A
I
G

O
L
0
3
:
s
e
s

1

5
/
1
9
/
2
0
1
7

POLICY NUMBER: 97082638

**HOMEOWNERS**
HO 04 40 10 00

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# STRUCTURES RENTED TO OTHERS
### RESIDENCE PREMISES

### SCHEDULE*

| Description Of Structures And Limit Of Liability | $175,000 |
|---|---|
| Back Location- 216 43rd Street, Sea Isle City, NJ 08243 | |

*Entries may be left blank if shown elsewhere in this policy for this coverage.

**DEFINITIONS**

Definition **6.** which defines an "insured location" is extended to include the structures shown in the Schedule above.

**SECTION I – PROPERTY COVERAGES**

We cover the structures described in the Schedule above which are:

1. On the "residence premises";
2. Rented or held for rental to any person not a tenant of the dwelling; and
3. Used as a private residence.

We insure for direct physical loss to these structures caused by a Peril Insured Against for the limit of liability shown in the Schedule that applies to the structure sustaining the loss.

**SECTION II – EXCLUSIONS**

E. **Coverage E – Personal Liability and Coverage F – Medical Payments to Others**

2. **"Business"**

This exclusion does not apply to the structures shown in the Schedule.

All other provisions of this policy apply.

HO 04 40 10 00                Copyright, Insurance Services Office, Inc., 1999                Page 1 of 1

A
I
G

O
L
0
3
:
S
e
s
s
1
5
/
1
9
/
2
0
1
7

**HOMEOWNERS**
**HO 04 55 03 03**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# IDENTITY FRAUD EXPENSE COVERAGE

### DEFINITIONS

With respect to the provisions of this endorsement only, the following definitions are added:

1. "Identity fraud" means the act of knowingly transferring or using, without lawful authority, a means of identification of an "insured" with the intent to commit, or to aid or abet another to commit, any unlawful activity that constitutes a violation of federal law or a felony under any applicable state or local law.

2. "Expenses" means:

    a. Costs for notarizing affidavits or similar documents attesting to fraud required by financial institutions or similar credit grantors or credit agencies.

    b. Costs for certified mail to law enforcement agencies, credit agencies, financial institutions or similar credit grantors.

    c. Lost income resulting from time taken off work to complete fraud affidavits, meet with or talk to law enforcement agencies, credit agencies and/or legal counsel, up to a maximum payment of $200 per day. Total payment for lost income is not to exceed $5,000.

    d. Loan application fees for re-applying for a loan or loans when the original application is rejected solely because the lender received incorrect credit information.

    e. Reasonable attorney fees incurred as a result of "identity fraud" to:

        (1) Defend lawsuits brought against an "insured" by merchants, financial institutions or their collection agencies;

        (2) Remove any criminal or civil judgments wrongly entered against an "insured"; and

        (3) Challenge the accuracy or completeness of any information in a consumer credit report.

    f. Charges incurred for long distance telephone calls to merchants, law enforcement agencies, financial institutions or similar credit grantors, or credit agencies to report or discuss an actual "identity fraud".

The following Additional Coverage is added under Section I:

### IDENTITY FRAUD EXPENSE

We will pay up to $15,000 for "expenses" incurred by an "insured" as the direct result of any one "identity fraud" first discovered or learned of during the policy period.

Any act or series of acts committed by one or more persons, or in which such person or persons are aiding or abetting others against an "insured", is considered to be one "identity fraud", even if a series of acts continues into a subsequent policy period.

This coverage is additional insurance.

### EXCLUSIONS

The following additional exclusions apply to this coverage:

We do not cover:

1. Loss arising out of or in connection with a "business".

2. "Expenses" incurred due to any fraudulent, dishonest or criminal act by an "insured" or any person aiding or abetting an "insured", or by any authorized representative of an "insured", whether acting alone or in collusion with others.

3. Loss other than "expenses".

### SPECIAL DEDUCTIBLE

We will pay only that part of the loss that exceeds $250. No other deductible applies to "identity fraud" expense coverage.

### SECTION I – CONDITION

### B. Duties After Loss

The following is added:

Send to us, within 60 days after our request, receipts, bills or other records that support your claim for "expenses" under "identity fraud" coverage.

All other provisions of this policy apply.

© ISO Properties, Inc., 2002

A
I
G

O
L
0
3
:
S
e
s
s

1
5
/
1
9
/
2
0
1
7

HOMEOWNERS
HO 04 90 10 00

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# PERSONAL PROPERTY REPLACEMENT COST LOSS SETTLEMENT

## A. Eligible Property

1. Covered losses to the following property are settled at replacement cost at the time of the loss:

   a. Coverage **C**; and

   b. If covered in this policy:

      (1) Awnings, outdoor antennas and outdoor equipment; and

      (2) Carpeting and household appliances;

      whether or not attached to buildings.

2. This method of loss settlement will also apply to the following articles or classes of property if they are separately described and specifically insured in this policy and not subject to agreed value loss settlement:

   a. Jewelry;

   b. Furs and garments:

      (1) Trimmed with fur; or

      (2) Consisting principally of fur;

   c. Cameras, projection machines, films and related articles of equipment;

   d. Musical equipment and related articles of equipment;

   e. Silverware, silver-plated ware, goldware, gold-plated ware and pewterware, but excluding:

      (1) Pens or pencils;

      (2) Flasks;

      (2) Smoking implements; or

      (3) Jewelry; and

   f. Golfer's equipment meaning golf clubs, golf clothing and golf equipment.

   Personal Property Replacement Cost loss settlement will not apply to other classes of property separately described and specifically insured.

## B. Ineligible Property

Property listed below is not eligible for replacement cost loss settlement. Any loss will be settled at actual cash value at the time of loss but not more than the amount required to repair or replace.

1. Antiques, fine arts, paintings and similar articles of rarity or antiquity which cannot be replaced.

2. Memorabilia, souvenirs, collectors items and similar articles whose age or history contribute to their value.

3. Articles not maintained in good or workable condition.

4. Articles that are outdated or obsolete and are stored or not being used.

## C. Replacement Cost Loss Settlement Condition

The following loss settlement condition applies to all property described in **A.** above:

1. We will pay no more than the least of the following amounts:

   a. Replacement cost at the time of loss without deduction for depreciation;

   b. The full cost of repair at the time of loss;

   c. The limit of liability that applies to Coverage **C**, if applicable;

   d. Any applicable special limits of liability stated in this policy; or

   e. For loss to any item described in **A.2.a. - f.** above, the limit of liability that applies to the item.

2. If the cost to repair or replace the property described in **A.** above is more than $500, we will pay no more than the actual cash value for the loss until the actual repair or replacement is complete.

3. You may make a claim for loss on an actual cash value basis and then make claim for any additional liability in accordance with this endorsement provided you notify us of your intent to do so within 180 days after the date of loss.

All other provisions of this policy apply.

   Copyright, Insurance Services Office, Inc., 1999

A
I
G

O
L
0
3
:
s
e
s
s
1
5
/
1
9
/
2
0
1
7

**HOMEOWNERS**
**HO 04 96 10 00**

THIS ENDORSEMENT DOES **NOT** CONSTITUTE A REDUCTION OF COVERAGE.

# <u>NO</u> SECTION II – LIABILITY COVERAGES FOR HOME DAY CARE BUSINESS
# <u>LIMITED</u> SECTION I – PROPERTY COVERAGES FOR HOME DAY CARE BUSINESS

**A.** "Business", as defined in the policy, means:

  **1.** A trade, profession or occupation engaged in on a full-time, part-time, or occasional basis; or

  **2.** Any other activity engaged in for money or other compensation, except the following:

    **a.** One or more activities:

      **(1)** Not described in **b.** through **d.** below; and

      **(2)** For which no "insured" receives more than $2000 in total compensation for the 12 months before the beginning of the policy period;

    **b.** Volunteer activities for which no money is received other than payment for expenses incurred to perform the activity;

    **c.** Providing home day care services for which no compensation is received, other than the mutual exchange of such services; or

    **d.** The rendering of home day care services to a relative of an "insured".

**B.** If an "insured" regularly provides home day care services to a person or persons other than "insureds" as their trade, profession or occupation, that service is a "business".

**C.** If home day care service is not a given "insured's" trade, profession or occupation but is an activity:

  **1.** That an "insured" engages in for money or other compensation; and

  **2.** From which an "insured" receives more than $2,000 in total/combined compensation from it and any other activity for the 12 months before the beginning of the policy period;

  the home day care service and other activity will be considered a "business".

**D.** With respect to **C.** above, home day care service is only an example of an activity engaged in for money that may be a "business". Any single activity or combination of activities:

  **1.** Described in **A.2.** above, and

  **2.** Engaged in for money by a single "insured";

  may be considered a "business" if the $2000 threshold is exceeded.

**E.** With respect to **A.** through **D.** above, coverage does not apply to or is limited with respect to home day care service which is a "business". For example, this policy:

  **1.** Does not provide:

    **a.** Section II coverages. This is because a "business" of an "insured" is excluded under **E.2.** of Section II – Exclusions;

    **b.** Coverage, under Section I, for other structures from which any "business" is conducted; and

  **2.** Limits Section I coverage, under Coverage C – Special Limits of Liability, for "business" property:

    **a.** On the "residence premises" for the home day care "business" to $2,500. This is because Category **h.** (**e.** in Form **HO 00 08**) imposes that limit on "business" property on the "residence premises";

    **b.** Away from the "residence premises" for the home day care "business" to $500. This is because Category **i.** (**f.** in Form **HO 00 08**) imposes that limit on "business" property away from the "residence premises". Category **i.** does not apply to property described in Categories **j.** and **k.** (**g.** and **h.** respectively in Form **HO 00 08**).

Copyright, Insurance Services Office, Inc., 1999

A
I
G

O
L
0
3
:
s
e
s

1

5
/
1
9
/
2
0
1
7

POLICY NUMBER: 97082638

HOMEOWNERS
HO 05 80 10 00

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# PROPERTY REMEDIATION FOR ESCAPED LIQUID FUEL AND LIMITED LEAD AND ESCAPED LIQUID FUEL LIABILITY COVERAGES

### ALL FORMS EXCEPT FORMS HO 00 04 AND HO 00 06

### SCHEDULE*

| The coverage provided by this endorsement and the applicable Limits of Liability shown in this Schedule apply. These limits of liability apply to the total of all loss or expense, including loss assessments, payable under this endorsement, regardless of the number of locations insured under this endorsement and listed in this Schedule or the number of assessments charged against the "insured" during the policy period. | |
|---|---|
| 1. | Aggregate Limited Lead And Escaped Liquid Fuel Liability Limit Of Liability | $ 50,000 |
| 2. | Property Remediation For Escaped Liquid Fuel Limit Of Liability<br><br>This Property Remediation For Escaped Liquid Fuel Limit Of Liability applies to the "residence premises" as defined in Paragraphs **a.**, **b.** or **c.** of Definition 11. "Residence premises" in this endorsement and any of the following locations as defined in Paragraph **d.** of Definition 11. "Residence premises": | $ 10,000 |

\* Entries may be left blank if shown elsewhere in this policy for this coverage.

## A. Definitions

The definitions applying to the policy form, other than Definition 11. "Residence premises", apply to this endorsement. Definition 11. "Residence premises" is deleted and replaced by the following. Definitions 12. through 14. are added only with respect to the coverage provided by this endorsement.

11. "Residence premises" means:

    a. The one family dwelling where you reside;

    b. The two, three or four family dwelling where you reside in at least one of the family units or;

    c. That part of any other building where you reside;

and which is shown as the "residence premises" in the Declarations; and

d. Any location shown in the Schedule of this endorsement.

"Residence premises" also includes other structures and grounds at the locations described in **a.** through **d.** above.

12. "Covered real property". The following applies only to the Section I – Property Coverages – Property Remediation For Escaped Liquid Fuel:

    a. "Covered real property" means:

      (1) Property owned by an "insured" and covered under Coverage A of this policy;

A
I
G

O
L
0
3
:
S
e
s
s

1

5
/
1
9
/
2
0
1
7

(2) Any other one, two, three or four family dwelling building owned by an "insured" and shown in the Schedule under Paragraph 2.;

(3) Materials and supplies located on or next to the "residence premises", used to construct, alter or repair the dwelling or other structures on the "residence premises";

(4) Property owned by an "insured" and covered under Coverage B of this policy, provided such property is located on the "residence premises"; and

(5) Land, other than farm land:

(a) Which is within the "residence premises";

(b) Which is owned by an "insured"; and

(c) On which a building or structures described in 12.a.(1) through (4) is located.

b. "Covered real property" does not include:

(1) Water;

(2) Other structures that are part of the "fuel system"; or

(3) Trees, shrubs, plants or lawns, except to the extent provided in B.3.c. of this endorsement.

13. "Covered personal property". The following applies only to the Section I – Property Coverages – Property Remediation For Escaped Liquid Fuel:

a. "Covered personal property" means personal property:

(1) Owned or used by an "insured" and covered under Coverage C of this policy; and

(2) Located on the "residence premises".

b. Loss to such property shall be subject to those Coverage C Special Limits of Liability that apply.

14. "Fuel System" means:

a. One or more containers, tanks or vessels which have a total combined storage capacity of 100 or more U.S. gallons of liquid fuel; and:

(1) Are, or were, used to hold liquid fuel that is intended to be used solely for one or more of the following:

(a) To heat or cool a building;

(b) To heat water;

(c) To cook food; or

(d) To power "motor vehicles" or watercraft owned by an "insured" and not used primarily for "business"; and

(2) Are, or were, located on:

(a) "Covered real property"; or

(b) An "insured location";

b. Any pumping apparatus, which includes the motor, gauge, nozzle, hose or pipes that are, or were, connected to one or more containers, tanks or vessels described in 14.a.;

c. Filler pipes and flues connected to one or more containers, tanks or vessels described in 14.a.;

d. A boiler, furnace or a water heater, the liquid fuel for which is stored in a container, tank or vessel described in 14.a., and which is located on:

(1) "Covered real property"; or

(2) An "insured location";

e. Fittings and pipes connecting the boiler, furnace or water heater to one or more containers, tanks or vessels described in 14.a.; or

f. A structure that is specifically designed and built to hold the liquid fuel that escapes from one or more containers, tanks or vessels described in 14.a.

A "fuel system" does not include any fuel tanks that are permanently affixed to a "motor vehicle" or watercraft listed in a.(1)(d) above.

B. Section I – Property Coverages

The following coverage is added:

PROPERTY REMEDIATION FOR ESCAPED LIQUID FUEL

1. With respect to the total of all escapes of liquid fuel from a "fuel system" which an "insured" first discovers or learns of during the policy period, we will pay up to the limit of liability shown in the Schedule for loss or expense described in 3. below.

2. The limit shown in the Schedule for this coverage is the most we will pay for the total of all loss or expense payable under 3. below regardless of the:

a. Number of locations insured under this endorsement;

b. Number of escapes of liquid fuel from a "fuel system" an "insured" first discovers or learns of during the policy period; or

c. Number of claims made.

     Copyright, Insurance Services Office, Inc., 1999     HO 05 80 10 00

AIG OL03:Sess 15/19/2017

**3. Loss Or Expense Covered**

This coverage pays for:

**a.** Loss to:

(1) "Covered real property"; or

(2) "Covered personal property";

caused directly or indirectly by the escape of such fuel from a "fuel system";

**b.** The expense you incur to:

(1) Take temporary measures to stop the further escape of liquid fuel from any part of the "fuel system";

(2) Retard or stop the spread of escaped liquid fuel;

(3) Clean up, remove or treat loss to:

  (a) "Covered real property"; or

  (b) "Covered personal property"; or

(4) Test, monitor or assess the effects of the escape of liquid fuel in, on or away from "covered real property":

  (a) As required by law; or

  (b) In response to a request, demand or order by a governmental authority or court of law.

  We will pay for such expense only if it results from the same escape that is payable under **a.** or **b.(1)**, **(2)** and **(3)** above;

**c.** Loss to trees, shrubs, plants or lawns, located on the "residence premises", but only if there is loss or expense caused by the same escape that is payable under **a.** or **b.** above. However, we will not pay more than an amount equal to 5% of the limit of liability shown in the Schedule for the total of all loss to trees, shrubs, plants or lawns. No more than $500 of this amount will be payable for any lawn or any one tree, shrub, or plant. We do not cover property grown for "business".

Under Form **HO 00 08**, no more than $250 of the amount of insurance available under this coverage will be payable for lawns or any one tree, shrub or plant; and

**d. Additional Living Expense**

(1) Additional Living Expense means any necessary increase in living expenses you incur, so that your household can maintain its normal standard of living, if the escape of liquid fuel:

  (a) Results in loss or expense payable under **a.** or **b.** above; and

  (b) Makes that part of the "residence premises" where you reside not fit to live in.

(2) Payment for Additional Living Expense will be for the shortest time required:

  (a) To make that part of the "residence premises" where you reside fit to live in; or

  (b) For your household to settle elsewhere, if you permanently relocate.

  This period of time applies even if it extends past the expiration date of this policy.

  We do not cover loss or expense due to cancellation of a lease or agreement.

(3) This coverage does not increase the limit of liability shown in the Schedule.

(4) Section I – Property Coverages, **D.** Coverage **D** – Loss Of Use in the policy form does not apply to this endorsement.

**4. Deductible**

The deductible amount, equal to that which applies to the peril of Fire, applies to loss or expense covered under this additional coverage. We will pay only that part of the total of all loss or expense payable under **3.** above that exceeds that deductible amount.

**5. Loss Or Expense Not Covered**

We will not pay:

**a.** For any diminution or reduction in the market value of any:

(1) "Covered real property"; or

(2) "Covered personal property";

whether or not such property is damaged;

**b.** For any damage resulting from the loss of or reduction in value of a pending sale of:

(1) "Covered real property"; or

(2) "Covered personal property";

**c.** To replace any fuel;

**d.** For any expense to:

(1) Demolish or remove; or

(2) Repair, replace, rebuild or restore;

any part of a "fuel system", other than those expenses provided for in **3.a.** or **b.** above; or

A
I
G

O
L
0
3
:
S
e
s
s

1
5
/
1
9
/
2
0
1
7

e. For any damage that results from an escape from:

   (1) One or more containers, tanks or vessels, that are, or were, used to hold liquid fuel and are a part of a "motor vehicle" or watercraft; or

   (2) Related lines or parts, that are, or were, connected to a "motor vehicle" or watercraft.

6. For Form **HO 00 03**, under Section I – Perils Insured Against, Paragraph **A.2.c.(6)(e)** does not apply to this Property Remediation For Escaped Liquid Fuel Coverage.

7. For Form **HO 00 05,** under Section I – Perils Insured Against, Paragraph **A.2.(e)(5)** does not apply to this Property Remediation For Escaped Liquid Fuel Coverage.

8. When the Special Computer Coverage Endorsement is attached, Paragraph **2.b.(9)(e)** in that endorsement, under Perils Insured Against, does not apply to this Property Remediation For Escaped Liquid Fuel Coverage.

9. The Additional Coverages under Section I – Property Coverages and the Section I – Exclusions apply to this Property Remediation For Escaped Liquid Fuel Coverage.

10. The Section I – Conditions apply to this Property Remediation For Escaped Liquid Fuel Coverage except as provided in **C. Section I –** Conditions below.

11. This Property Remediation For Escaped Liquid Fuel Coverage does not apply to any "residence premises" at which the containers, tanks or vessels, described in **A.14.a.** above, have a total combined storage capacity of less than 100 U.S. gallons of liquid fuel.

    Coverage if any, for escape of liquid fuel from such containers, tanks or vessels is subject to those:

    a. Exclusions;

    b. Conditions;

    c. Other provisions; and

    d. Limits of Liability;

    that apply to real and personal property under the policy to which this endorsement is attached.

**C. Section I – Conditions – Property Remediation For Escaped Fuel**

With respect to loss or expense described in **B. Section I – Property Coverages** above, **Section I Condition F. Other Insurance And Service Agreement** in the policy form, is deleted and replaced by the following:

**F. Other Insurance, Service Agreements And Government Funds**

If loss or expense covered in **B. Section I –** Property Coverages above is also covered by:

1. Other insurance, we will pay only the proportion of the loss or expense that the limit of liability that applies under this endorsement bears to the total amount of insurance covering the loss or expense;

2. A service agreement, then this Property Remediation for Escaped Liquid Fuel Coverage is excess over any amounts payable under any such agreement. Service Agreement means a "fuel system" service plan, property restoration protection plan, or similar service or warranty agreement, even if it is characterized as insurance; or

3. A government fund, we will pay only the proportion of the loss or expense that the limit of liability that applies under this endorsement bears to the total amount payable for the loss or expense to the extent permitted by law.

**D. Section II – Liability Coverages**

**LIMITED LEAD AND ESCAPED LIQUID FUEL LIABILITY COVERAGE**

1. With respect to "bodily injury" or "property damage" described in **D.2.** below, the coverages provided by Section II – Liability Coverages, Coverage **E** – Personal Liability and Coverage **F** – Medical Payments To Others in the policy form, and the limits of liability stated on the Declarations page do not apply.

2. This coverage applies if a claim is made or a suit is brought against an "insured" for damages because of:

   a. "Bodily injury" or "property damage" caused by an "occurrence" involving the escape of fuel from a "fuel system". However, this limited coverage does not apply to an "occurrence" of fire or explosion that results from such escaped fuel. Damages resulting from such an "occurrence" of fire or explosion are subject to the Coverage E limit of liability of the policy to which this endorsement is attached;

Copyright, Insurance Services Office, Inc., 1999          HO 05 80 10 00

A
I
G

O
L
0
3
:
S
e
s
s

1
5
/
1
9
/
2
0
1
7

b. "Bodily injury" caused by an "occurrence" involving the absorption, ingestion or inhalation of lead which is in or on an "insured location"; or

c. "Property damage" caused by an "occurrence" of lead contamination, but only if, immediately prior to the "occurrence", the lead was located at an "insured location".

NO OTHER LEAD OR ESCAPED LIQUID FUEL LIABILITY COVERAGE APPLIES UNDER THIS POLICY EXCEPT AS PROVIDED IN **D.2.** ABOVE AND **E.** BELOW.

3. If coverage applies as stated in D.2. above, we will:

a. Pay up to the Aggregate Limit of Liability stated in the Schedule for damages for which an "insured" is legally liable. Damages include prejudgment interest awarded against an "insured"; and

b. Provide a defense at our expense by counsel of our choice even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when the Aggregate Limit of Liability stated in the Schedule for damages resulting from "bodily injury" or "property damage" described in D.2. above has been exhausted by payment of a judgment or settlement.

4. With respect only to applying the provisions of this coverage as described in D.2. above, "bodily injury" or "property damage" caused in whole or in part by an "occurrence" described in D.2. above shall be deemed to have been caused solely by such an "occurrence" regardless of any other covered cause or event contributing to the "bodily injury" or "property damage".

5. The Section II – Additional Coverages in the policy form apply with respect to this coverage as described in D. above except as provided in E. Section II – Additional Coverages below.

6. The Section II – Conditions in the policy form apply with respect to this coverage as described in D. above except as provided in F. Section II – Liability Conditions below.

7. This coverage does not apply to an "insured location" at which the containers, tanks or vessels described in A.14.a. above have a total combined storage capacity of less than 100 U.S. gallons of liquid fuel.

Coverage, if any, for an "occurrence" involving the escape of liquid fuel from such containers, tanks or vessels is subject to those:

a. Exclusions;

b. Conditions;

c. Other provisions; and

d. Limits of Liability;

that apply to Coverages **E** and **F** in the policy to which this endorsement is attached.

E. **Section II – Additional Coverages**

With respect to coverage described in **D. Section II – Liability Coverages** above, Additional Coverage D. Loss Assessment in the policy form is deleted and replaced by the following:

D. **Loss Assessment**

1. We will pay up to the Aggregate Limit of Liability as stated in the Schedule for your share of loss assessment charged against you, as owner or tenant of the "residence premises", during the policy period by a corporation or association of property owners, when the assessment is made as a result of:

a. An "occurrence" involving the escape of fuel from a "fuel system";

b. "Bodily injury" caused by an "occurrence", on property owned by all members collectively, involving the absorption, ingestion or inhalation of lead which occurs on an "insured location" containing the "residence premises";

c. "Property damage" caused by an "occurrence", on property owned by all members collectively, of lead contamination, but only if the lead originates at an "insured location" containing the "residence premises"; or

d. Liability for an act of a director, officer or trustee in the capacity as a director, officer or trustee, provided such person:

(1) Is elected by the members of a corporation or association of property owners; and

(2) Serves without deriving any income from the exercise of duties which are solely on behalf of a corporation or association of property owners.

2. We do not cover assessments charged against you or a corporation or association of property owners:

a. As required by law; or

**b.** In response to a request, demand or order by a governmental authority or court of law.

**3.** Regardless of the number of assessments, the Aggregate Limit of Liability stated in the Schedule is the most we will pay for loss arising out of:

**a.** All accidents, including continuous or repeated exposure to the same general harmful conditions; or

**b.** All covered acts of one or more directors, officers or trustees. An act involving more than one director, officer or trustee is considered to be a single act.

THE LIMIT APPLICABLE TO THIS LOSS ASSESSMENT COVERAGE DOES NOT INCREASE THE AGGREGATE LIMIT OF LIABILITY STATED IN THE SCHEDULE.

**4.** Section II Condition I. Policy Period in this endorsement and in the policy form to which this endorsement is attached does not apply to this coverage.

**F. Section II – Liability Conditions**

With respect to coverage described above in **D. Section II – Liability Coverages:**

**1.** Conditions **D. Duties Of An Injured Person – Coverage F – Medical Payments To Others** and **E. Payment Of Claim – Coverage F – Medical Payments To Others** in the policy form are deleted; and

**2.** Conditions **A. Limit Of Liability, B. Severability Of Insurance** and **I. Policy Period** in the policy form are deleted and replaced by the following:

**A. Aggregate Limit Of Liability**

Our total liability in any one policy period for all damages resulting from the total of all "bodily injury" or "property damage" during the policy period will not be more than the Limited Lead and Escaped Liquid Fuel Liability Coverage Aggregate Limit of Liability stated in the Schedule. This is the most we will pay regardless of the:

**1.** Number of locations insured under the policy to which this endorsement is attached;

**2.** Number of persons injured;

**3.** Number of persons whose property is damaged;

**4.** Number of "insureds"; or

**5.** Number of claims made.

The "occurrence" limit of liability does not apply to this coverage.

**B. Severability Of Insurance**

This insurance applies separately to each "insured" except with respect to the Aggregate Limit of Liability described in **A.** Aggregate Limit of Liability above. This condition will not increase the Limit for this coverage.

**I. Policy Period**

This endorsement applies to "bodily injury" or "property damage" described in **D.2.** above which occurs during the policy period.

All other provisions of the policy not specifically modified by this endorsement apply.

     Copyright, Insurance Services Office, Inc., 1999     HO 05 80 10 00

A
I
G

O
L
0
3
:
s
e
s
s

1
5
/
1
9
/
2
0
1
7

HOMEOWNERS
HO 24 92 04 99

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## WORKERS' COMPENSATION – RESIDENCE EMPLOYEES
## NEW JERSEY

We agree, with respect to "residence employees":

**UNDER COVERAGE I**

To pay when due all benefits required of an "insured" by the New Jersey Workers' Compensation Law; and

**UNDER COVERAGE II**

To pay on behalf of an "insured" all damages for which the "insured" is legally liable because of "bodily injury" sustained by a "residence employee". The "bodily injury" must be caused by accident or disease and arise out of and in the course of employment by the "insured" while:

a. In the United States of America, its territories or possessions, or Canada, or

b. Temporarily elsewhere if the "residence employee" is a citizen or resident of the United States or Canada.

Coverage II does not apply to any suit brought in or judgment rendered by any court outside the United States of America, its territories and possessions, or Canada or to any action in such judgment.

**APPLICATION OF COVERAGE**

This insurance applies only to:

a. "Bodily injury" occurring during the policy period, or

b. Occupational disease or cumulative injury of a "residence employee" who during the term of this policy actually worked for the "insured" during the last day of employment, which exposed the employee to the hazard of the occupational disease or cumulative injury.

**POLICY PROVISIONS**

This insurance is subject to all the provisions of this endorsement and the following provisions of this policy:

a. Under Sections I and II – Conditions:

4. Waiver or Change of Policy Provisions.

5. Cancellation.

7. Assignment.

8. Subrogation.

b. Under Section II – Conditions:

3. Duties After Loss.

6. Suit Against Us.

c. Our agreement to defend the "insured" as provided under Coverage E – Personal Liability.

d. Under Section II – Additional Coverages:

1. Claim Expenses.

2. First Aid Expenses.

e. The definition of "bodily injury", "business", "insured" and "residence employee".

**LIMIT OF LIABILITY – COVERAGE II**

Our total limit of liability shall not exceed $100,000 for all damages because of "bodily injury":

a. Sustained by one or more "residence employees" in any one accident; or

b. Caused by disease and sustained by a "residence employee".

Our total limit of liability shall not exceed $500,000 for all damages arising out of "bodily injury" by disease regardless of the number of "residence employees" who sustain "bodily injury" by disease.

**OTHER INSURANCE**

If a loss covered by this policy is also covered by other insurance, we will pay only the proportion of the loss that the limit of liability that applies under this policy bears to the total amount of insurance covering the loss.

**CONFORMITY TO STATUTE**

Terms of this insurance which are in conflict with the New Jersey Workers' Compensation Law are amended to conform to that law.

**EXCLUSIONS**

This insurance does not apply:

a. To liability for "bodily injury" arising out of "business" pursuits of the "insured";

b. Under Coverage II:

(1) To liability assumed by the "insured" under any contract or agreement;

(2) To "bodily injury" by disease unless a written claim is made or suit brought against the "insured" within 36 months after the end of the policy period.

HO 24 92 04 99          Copyright, Insurance Services Office, Inc., 1999          Page 1 of 2

A
I
G

O
L
0
3
:
s
e
s
s

1

5
/
1
9
/
2
0
1
7

(3) To any obligation under a workers' compensa-tion, unemployment or disability benefits law or any similar law.

(4) To punitive or exemplary damage because of "bodily injury" to any employee employed in violation of law or to any employee employed in violation of law with the knowledge or con-sent of the "insured".

**SCHEDULE – COMPLETE ONLY FOR FULL TIME SERVANTS.**

| Code No. | Classification of Employees | No. of Employees | Rate Per Employee | Premium |
|---|---|---|---|---|
| 0913 | Private Residence or Estate – Full Time Inservants | | | $ |
| 0912 | Private Residence – Full Time Outservants incl. drivers | | | $ |
| 0915 | Private Estate – Full Time Outservants incl. drivers | | | $ |

Copyright, Insurance Services Office, Inc., 1999          HO 24 92 04 99

LEX 00 31 11 04

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# TRAMPOLINE EXCLUSION

It is hereby understood and agreed, this insurance does not apply to "bodily injury", "property damage", or any other loss, cost or expense, caused directly or indirectly, in whole or in part by a trampoline owned by or in the care, custody or control of an "insured".

This endorsement applies to all coverages, and coverage parts, that form part of this policy.

All other terms, conditions and exclusions of the policy remain the same.

A
I
G

O
L
0
3
:
S
e
s
s

1
5
/
1
9
/
2
0
1
7

LEX 00 32 08 04

**This endorsement, effective 12:01 A.M.,** 06/18/2016
**Forms a part of Policy No.:** 97082638
**Issued to:** Estate Of Conchetta Conti
**By:** Lexington Insurance Company

# LEAKAGE OF POLLUTANTS FROM UNDERGROUND STORAGE TANKS EXCLUSION

This endorsement modifies insurance provided by the policy:

The following exclusion is added to Paragraph **1.** of **SECTION II – EXCLUSIONS** as follows:

**Coverage E – Personal Liability** and **Coverage F – Medical Payments to Others** do not apply to "bodily injury" or "property damage":

Caused by, arising out of, or resulting from the leakage of "pollutants" from underground storage tanks at the "insured location" including all loss, costs, and expenses resulting therefrom. Such "bodily injury" or "property damage" is excluded regardless of any other cause or event contributing concurrently or in any sequence to the "bodily injury" or "property damage".

As used in this endorsement, "pollutants" means any solid, liquid, gaseous, or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste. Waste includes materials to be recycled, reconditioned, or reclaimed.

All other terms and conditions the policy remain the same.

A
I
G

O
L
0
3
:
s
e
s
s

1
5
/
1
9
/
2
0
1
7

Policy Number 97082638                    Homeowners LEX 00 63 04 05

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## MECHANICAL BREAKDOWN COVERAGE

## DEFINITIONS

The following definitions are added:

1.  "Accident" means a fortuitous event that causes direct physical damage to "covered equipment." The event must be a mechanical breakdown, including rupture or bursting caused by centrifugal force.
2.  "Computer equipment" means covered property that is electronic computer or other data processing equipment, including "media" and peripherals used in conjunction with such equipment.
3.  "Covered equipment"
    a.  "Covered equipment" means covered property:
        (1)   that generates, transmits or utilizes energy, including electronic communications and data processing equipment; or
        (2)   which, during normal usage, operates under vacuum or pressure, other than the weight of its contents.
    b.  None of the following is "covered equipment":
        (1)   structure, foundation, cabinet, compartment or air supported structure or building;
        (2)   insulating or refractory material;
            (3)   sewer piping, underground vessels or piping, or piping forming a part of a sprinkler system;
            (4)   water piping other than boiler feedwater piping, boiler condensate return piping or water piping forming a part of a refrigerating or air conditioning system;
                (5)   "vehicle"or any equipment mounted on a "vehicle";
        (6)   satellite, spacecraft or any equipment mounted on a satellite or spacecraft; or
        (7)   dragline, excavation or construction equipment.
4.  "Data" means information or instructions stored in digital code capable of being processed by machinery.
5.  "Hazardous substance" means any substance that is hazardous to health or has been declared to be hazardous to health by a governmental agency.
6.  "Media" means material on which "data" is recorded, such as magnetic tapes, hard disks, optical disks or floppy disks.
7.  "One accident" means: If an initial "accident" causes other "accidents," all will be considered "one accident." All "accidents" that are the result of the same event will be considered "one accident."
8.  "Vehicle" means, as respects this endorsement only, any machine or apparatus that is used for transportation or moves under its own power. "Vehicle" includes, but is not limited to, car, truck, bus, trailer, train, aircraft, watercraft, forklift, bulldozer, tractor or harvester.
    However, any property that is stationary, permanently installed at a covered location and that receives electrical power from an external power source will not be considered a "vehicle."

## SECTION 1 - PERILS INSURED AGAINST

1.  We will pay for direct physical damage to covered property, described in Coverages A, B and C, that is the direct result of an "accident."

A
I
G

O
L
0
3
:
S
e
s
s

1

5
/
1
9
/
2
0
1
7

Policy Number 97082638                    Homeowners LEX 00 63 04 05

2.      The following coverages also apply to the direct result of an "accident." These coverages do not provide additional amounts of insurance.
        a.      Expediting Expenses
                With respect to your damaged covered property, we will pay, up to $25,000, the reasonable extra cost to:
                (1)    make temporary repairs; and
                (2)    expedite permanent repairs or permanent replacement.
        b.      Hazardous Substances
                We will pay for the additional cost to repair or replace covered property because of contamination by a "hazardous substance." This includes the additional expenses to clean up or dispose of such property.
                As used in this coverage, additional costs mean those beyond what would have been payable under this Mechanical Breakdown Coverage had no "hazardous substance" been involved.
                The most we will pay for loss, damage or expense under this coverage is $25,000.
        c.      Computers In The Dwelling
                We will pay for loss, damage or expense caused by or resulting from an "accident" to "computer equipment" located in the dwelling.
                The most we will pay for loss, damage or expense under this coverage $25,000.
        d.      Data Restoration
                We will pay for your reasonable and necessary cost to research, replace and restore lost "data."
                The most we will pay for loss, damage or expense under this coverage is $25,000.

3.      The most we will pay for loss, damage or expense under this endorsement arising from any "one accident" is the applicable Limit of Liability in the Declarations. Coverage provided under this endorsement does not provide an additional amount of insurance.

## SECTION 1 - EXCLUSIONS

All exclusions in Section 1 of the policy to which this endorsement is attached apply except as modified below and to the extent that coverage is specifically provided by this additional coverage Mechanical Breakdown.
1.      We will not pay under this endorsement for loss, damage or expense caused by or resulting from:
        a.      any defect, programming error, programming limitation, computer virus, malicious code, loss of "data," loss of access, loss of use, loss of functionality or other condition within or involving "data" or "media" of any kind. But if an "accident" results, we will pay for the resulting loss, damage or expense;
        b.      any of the following tests:
                a hydrostatic, pneumatic or gas pressure test of any boiler or pressure vessel, or an electrical insulation breakdown test of any type of electrical equipment;
        c.      change in temperature or humidity, whether or not resulting from an "accident";
        d.      contamination by a refrigerant resulting from an "accident";
        e.      depletion, deterioration, corrosion, erosion, wear and tear, or other gradually developing conditions. But if an "accident" results, we will pay for the resulting loss, damage or expense.
2.      We will not pay under this endorsement for any loss of income or any loss described under Coverage D.

A
I
G

O
L
0
3
:
S
e
e
s
g

1
5
/
1
9
/
2
0
1
7

Policy Number  97082638                    Homeowners LEX 00 63 04 05

3.    With respect to this coverage, we will also not pay for an "accident" caused by or resulting from: fire; lightning; windstorm or hail; explosion (including steam explosion); artificially generated electrical current that disturbs electrical devices appliances or wires; smoke; aircraft or vehicles; riot or civil commotion; vandalism; sprinkler leakage; falling objects; weight of snow, ice or sleet; freezing; collapse; flood or earth movement.

4.    We will not pay for loss, damage or expense caused directly or indirectly by the following, whether or not caused by or resulting from an "accident": Any mold, fungus, mildew or yeast, including any

5.    spores or toxins produced by or emanating from such mold, fungus, mildew or yeast. This includes, but is not limited to, costs arising from clean up, removal, or abatement of such mold, fungus, mildew or yeast, spores or toxins.

## SECTION 1 - CONDITIONS

The following condition is added:
    Environmental, Safety and Efficiency Improvements
    If "covered equipment" requires replacement due to an "accident," we will pay your additional cost to replace with equipment that is better for the environment, safer or more efficient than the equipment being replaced.
    However, we will not pay more than 125% of what the cost would have been to repair or replace with like kind and quality. This condition does not increase any of the applicable limits. This condition does not apply to any property to which actual cash value applies.

A
I
G

O
L
0
3
:
s
e
s

1
5
/
1
9
/
2
0
1
7

LEX 00 82 04 06

This endorsement, effective 12:01 A.M., 06/18/2016
Forms a part of Policy No.: 9708263B
Issued to: Estate Of Conchetta Conti
By: Lexington Insurance Company

## MAXIMUM PAYABLE AMOUNT IF OTHER INSURANCE PROVIDES COVERAGE FOR A PERIL NOT COVERED BY THIS POLICY

This endorsement modifies insurance provided by the policy:

Paragraph S. is added to **SECTION I -- CONDITIONS** as follows:

S. **Maximum Payable Amount If Other Insurance Provides Coverage for a Peril Not Covered by this Policy**

1. If a dwelling is a "total loss" and the loss or damage to the dwelling is attributable to two perils, one of which is covered under this policy and another of which is covered by another policy or policies of insurance, then:

   a. the most we will pay under Coverage A – Dwelling is the limit of liability for Coverage A shown in the Declarations minus the amount paid or payable under such other insurance policy or policies for the dwelling, and

   b. the most we will pay under Coverage C – Personal Property is the limit of liability for Coverage C shown in the Declarations minus the amount paid or payable under such other insurance policy or policies for the personal property (or if a special limit of liability applies to your personal property, then the most we will pay under Coverage C – Personal Property for such personal property is the special limit shown in the policy minus the amount paid or payable under such other insurance policy or policies for such personal property).

   However, we might pay less than the aforementioned maximum amount(s) under subparagraphs a. or b. above if the loss or damage to the dwelling or personal property, as applicable, attributable to the covered peril is less than the applicable maximum amount(s).

2. If an other structure covered under this policy is a "total loss" and the loss or damage to such other structure is attributable to two perils, one of which is covered under this policy and another of which is covered by another policy or policies of insurance, then the most we will pay under Coverage B – Other Structures is the limit of liability for Coverage B shown in the Declarations minus the amount paid or payable under such other insurance policy or policies for the other structure.  However, we might pay less than the aforementioned maximum amount if the loss or damage to the other structure attributable to the covered peril is less than the applicable maximum amount.

As used in herein, "total loss" means that:

1. the dwelling or other structure, as applicable, is completely destroyed regardless of whether any damage is done to the foundation or slab, or

2. the dwelling or other structure, as applicable, is in such condition after the loss that the standard method of rebuilding or repairing the dwelling or other structure, as applicable, is to raze the structure except for the foundation or slab or including all or part of the foundation or slab and rebuild the entire structure, whether the structure is actually rebuilt or not.

All other terms and conditions of the policy remain the same.

LEX 00 82 04 06

A
I
G

O
L
0
3
:
S
e
s
s

1

5
/
1
9
/
2
0
1
7

This endorsement, effective 12:01 A.M., 06/18/2016
Forms a part of Policy No.: 97082638
Issued to:  Estate Of Conchetta Conti
By:  Lexington Insurance Company

## FARM OPERATIONS EXCLUSION

This endorsement modifies insurance provided by the policy:

1. Definitions

   **"Farm Operations"** - As used herein, the term "farm operations" means any farming activities including, but not limited to, the following: the cultivation and tillage of soil, dairying, the production, cultivation, growing and harvesting of any agricultural, aquacultural, floricultural or horticultural commodities including the legal or illegal growth of marijuana, the growing and harvesting of forest products upon forest land, the keeping and raising of livestock including horses, the keeping and raising of poultry, swine, cattle and other domesticated animals used for food purposes, bees, fur-bearing animals, and any forestry or lumbering operations.  Such activities, mentioned herein or otherwise, are considered "farm operations" whether they are intended for sale or for home use.

2. No Section I – Property Coverages

   We will not provide any **Coverage A – Dwelling, Coverage B – Other Structures, Coverage C – Personal Property, and/or Coverage D – Loss of Use** for any loss, cost, damage, or expense caused by, arising out of, or resulting directly or indirectly, in whole or in part, from any "farm operations" conducted at the "insured location" and/or any equipment, machinery, furnishings, fixtures, tools, utensils, materials, supplies or any other items whatsoever stored or used in connection to such "farm operations" at the "insured location."

3. No Section II – Liability Coverages

   We will not provide any **Coverage E – Personal Liability** and/or **Coverage F – Medical Payments To Others** for any "bodily injury," "property damage" or any loss, cost, damage, expense, injury, claim or "suit" caused by, arising out of, or resulting directly or indirectly, in whole or in part, from any "farm operations" conducted at the "insured location" and/or any equipment, machinery, furnishings, fixtures, tools, utensils, materials, supplies or any other items whatsoever stored or used in connection to such "farm operations" at the "insured location."

If any provision contained herein shall, for any reason, be held to be invalid, illegal or unenforceable in any respect, such provision shall be ineffective only to the extent of such invalidity, illegality or unenforceability, without invalidating the remainder of such provision.

All other terms and conditions of the policy remain the same.

A
I
G

O
L
O
3
:
S
e
s
s

1
5
/
1
9
/
2
0
1
7

LEX 00 156 06 11

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# SPECIFIED ADDITIONAL AMOUNT OF INSURANCE FOR COVERAGE A – DWELLING ENDORSEMENT
### (FOR HO 03 ONLY)

**(APPLIES ONLY WHEN LOSS TO BUILDING INSURED UNDER COVERAGE A EXCEEDS THE COVERAGE A LIMIT OF LIABILITY SHOWN IN THE DECLARATIONS)**

---

Additional Amount of Insurance: _____ 25 _____ % *

The Additional Amount of Insurance is determined by multiplying the Coverage A limit of liability shown in the Declarations by the percentage amount shown above.  However, this Additional Amount of Insurance shall only apply to loss or damage to the dwelling under Coverage A and thus, shall not apply to any other coverage including, but not limited to, coverage for other structures, personal property, loss of use or any additional coverages.

---

*Entry may be left blank if shown elsewhere in this policy for this coverage.

---

To the extent that coverage is provided, we agree to provide an additional amount of insurance in accordance with the following provisions:

A.  If you have:

1.  Allowed us to adjust the Coverage A limit of liability and the premium in accordance with:

    a.  The property evaluations we make; and

    b.  Any increases in inflation; and

2.  Notified us, within 30 days after completion, of any improvements, alterations or additions to the building insured under Coverage A which increase the replacement cost of the building by 5% or more;

then we will provide an additional amount of insurance, up to the amount described in the Schedule of this endorsement.

The provisions of this endorsement will apply after a loss, provided you elect to repair or replace the damaged building.

B.  Subparagraph 2. of Paragraph C. Loss Settlement (SECTION I – CONDITIONS) is deleted in its entirety and replaced with the following:

2.  Buildings covered under Coverage A at replacement cost without deduction for depreciation, subject to the following:

    a.  If, at the time of loss, the amount of insurance in this policy on the damaged building is 80% or more of the full replacement cost of the building

immediately before the loss, we will pay the cost to repair or replace, after application of any deductible and without deduction for depreciation, but not more than the least of the following amounts:

(1)  Up to the sum of the limit of liability under this policy that applies to the building and the additional amount of insurance as shown in the Schedule of this endorsement;

(2)  The replacement cost of that part of the building damaged with material of like kind and quality and for like use; or

(3)  The necessary amount actually spent to repair or replace the damaged building.

If the building is rebuilt at a new premises, the cost described in (2) above is limited to the cost which would have been incurred if the building had been built at the original premises.

b.  If, at the time of loss, the amount of insurance in this policy on the damaged building is less than 80% of the full replacement cost of the building immediately before the loss, we will pay the greater of the following amounts, but not more than the limit of liability under this policy that applies to the building:

(1)  The actual cash value of that part of the building damaged; or

A
I
G

O
L
0
3
:
s
e
s

1
5
/
1
9
/
2
0
1
7

(2) That proportion of the cost to repair or replace, after application of any deductible and without deduction for depreciation, that part of the building damaged, which the total amount of insurance in this policy on the damaged building bears to 80% of the replacement cost of the building.

c. To determine the amount of insurance required to equal 80% of the full replacement cost of the building immediately before the loss, do not include:

(1) The additional amount of insurance shown in the Schedule of this endorsement;

(2) The value of excavations, footings, foundations, piers, or any other structures or devices that support all or part of the building, which are below the undersurface of the lowest basement floor;

(3) The value of those supports described in (2) above which are below the surface of the ground inside the foundation walls, if there is no basement; and

(4) The value of underground flues, pipes, wiring and drains.

d. We will pay no more than the actual cash value of the damage until actual repair or replacement is complete. Once actual repair or replacement is complete, we will settle the loss as noted in 2.a. and b. above.

However, if the cost to repair or replace the damage is both:

(1) Less than 5% of the amount of insurance in this policy on the building; and

(2) Less than $2,500;

we will settle the loss as noted in 2.a. and b. above whether or not actual repair or replacement is complete.

e. You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss to buildings on an actual cash value basis. You may then make claim for any additional liability according to the provisions of this Condition C. Loss Settlement, provided you notify us of

your intent to do so within 180 days after the date of loss.

3. Buildings covered under Coverage B at replacement cost without deduction for depreciation, subject to the following:

a. If, at the time of loss, the amount of insurance in this policy on the damaged building is 80% or more of the full replacement cost of the building immediately before the loss, we will pay the cost to repair or replace, after application of any deductible and without deduction for depreciation, but not more than the least of the following amounts:

(1) The limit of liability under this policy that applies to the building;

(2) The replacement cost of that part of the building damaged with material of like kind and quality and for like use; or

(3) The necessary amount actually spent to repair or replace the damaged building.

If the building is rebuilt at a new premises, the cost described in (2) above is limited to the cost which would have been incurred if the building had been built at the original premises.

b. If, at the time of loss, the amount of insurance in this policy on the damaged building is less than 80% of the full replacement cost of the building immediately before the loss, we will pay the greater of the following amounts, but not more than the limit of liability under this policy that applies to the building:

(1) The actual cash value of that part of the building damaged; or

(2) That proportion of the cost to repair or replace, after application of any deductible and without deduction for depreciation, that part of the building damaged, which the total amount of insurance in this policy on the damaged building bears to 80% of the replacement cost of the building.

c. To determine the amount of insurance required to equal 80% of the full replacement cost of the building imme-

A
I
G

O
L
0
3
:
s
e
s
s

1

5
/
1
9
/
2
0
1
7

LEX 00 156 06 11

diately before the loss, do not include the value of:

(1) Excavations, footings, foundations, piers, or any other structures or devices that support all or part of the building, which are below the undersurface of the lowest basement floor;

(2) Those supports described in (1) above which are below the surface of the ground inside the foundation walls, if there is no basement; and

(3) Underground flues, pipes, wiring and drains.

d. We will pay no more than the actual cash value of the damage until actual repair or replacement is complete. Once actual repair or replacement is complete, we will settle the loss as noted in 3.a. and b. above.

However, if the cost to repair or replace the damage is both:

(1) Less than 5% of the amount of insurance in this policy on the building; and

(2) Less than $2,500;

we will settle the loss as noted in 3.a. and b. above whether or not actual repair or replacement is complete.

e. You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss to buildings on an actual cash value basis. You may then make claim for any additional liability according to the provisions of this Condition C. Loss Settlement, provided you notify us of your intent to do so within 180 days after the date of loss.

C. EXCLUSION

If you have purchased coverage for earthquake, then notwithstanding this endorsement, the Additional Amount of Insurance provided by this endorsement does not apply if the loss or damage under Coverage A is caused directly or indirectly by "earth movement". As used herein, "earth movement" means:

1. Earthquake, including land shock waves or tremors before, during or after a volcanic eruption;

2. Landslide, mudslide or mudflow;

3. Subsidence or sinkhole; or

4. Any other earth movement including earth sinking, rising or shifting;

caused by or resulting from human or animal forces or any act of nature.

Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. This exclusion applies whether or not the loss event results in widespread damage or affects a substantial area.

If this exclusion applies, then Subparagraph 2.a.(1) of Paragraph C. Loss Settlement (SECTION I – CONDITIONS) as amended by this endorsement is deleted and replaced with the following:

(1) The limit of liability under this policy that applies to the building without regard to the Additional Amount of Insurance;

All other terms and conditions of the policy remain the same.

A
I
G

O
L
0
3
:
s
e
s

1
5
/
1
9
/
2
0
1
7

LEX 00 159 03 09

This endorsement, effective 12:01 A.M., 06/18/2016
Forms a part of Policy No.: 97082638
Issued to:  Estate Of Conchetta Conti
By: Lexington Insurance Company

### (1) OUTDOOR SWIMMING POOL OR OTHER SIMILAR BASIN – COVERAGE PROVIDED UNDER COVERAGE B ONLY AND
### (2) EXCLUSION FOR FAILURE TO MAINTAIN PROPER WATER LEVEL IN A SWIMMING POOL ENDORSEMENT

This endorsement modifies insurance provided by the policy:

Notwithstanding any other provision of this policy to the contrary, an "outdoor swimming pool, spa, hot tub, or any other similar basin" shall only be covered under Coverage B – Other Structures.

As used herein, "outdoor swimming pool, spa, hot tub, or any other similar basin" means a swimming pool, spa, hot tub, or any other similar basin which is not entirely contained within the outer, solid, weight-bearing frame of your dwelling, including the basement.

Paragraph 10. is added to SECTION I – EXCLUSIONS as follows:

10.   Failure to Maintain Proper Water Level in a Swimming Pool

The insured's failure or any other person's failure while acting on the insured's behalf, to maintain the proper water level in your swimming pool in accordance with maintenance guidelines governing the care of such swimming pool.

All other terms and conditions of the policy remain the same.

LEX 00 159 03 09

This endorsement, effective 12:01 A.M., 06/18/2016
Forms a part of Policy No.: 97082638
Issued to: Estate Of Conchetta Conti
By: Lexington Insurance Company

## SPECIFIC BUILDING MATERIALS EXCLUSION

This endorsement modifies insurance provided by the policy:

I.   With respect to **Coverage A – Dwelling, Coverage B – Other Structures, Coverage C – Personal Property,** and **Coverage D – Loss of Use,** we do not cover direct or indirect loss or damage, loss of use, or any ensuing loss or resulting damage arising out of or caused by: (i) any material in or the composition of the "specific building material(s)", (ii) the deterioration of "specific building material(s)" or (iii) the presence, existence, discharge, dispersal, seepage, migration, release, or escape of any solid, liquid, or gaseous material from "specific building material(s)" which results in loss or damage to such "specific building material(s)" or any dwelling, other structures, personal property, or property of others.

II.  **Coverage E – Personal Liability** and **Coverage F – Medical Payments to Others** do not apply to "bodily injury", "property damage" or any other loss, cost, damage, expense, injury, claim or "suit", caused by, arising out of, or resulting directly or indirectly, in whole or in part from: (i) any material in or the composition of the "specific building material(s)", (ii) the deterioration of "specific building material(s)" or (iii) the presence, existence, discharge, dispersal, seepage, migration, release, or escape of any solid, liquid, or gaseous material from "specific building material(s)".

In addition, we will not pay any loss, cost or expense arising out of any request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of the presence, existence, discharge, dispersal, seepage, migration, release, or escape of any solid, liquid, or gaseous material from "specific building material(s)".

As used herein, "specific building material(s)" means drywall, plasterboard, wallboard, gypsum board, sheetrock, blue board, or greenboard and includes the outer paper or other covering which forms a part of such aforementioned building materials.

If any provision contained herein shall, for any reason, be held to be invalid, illegal or unenforceable in any respect, such provision shall be ineffective only to the extent of such invalidity, illegality or unenforceability, without invalidating the remainder of such provision.

All other terms and conditions of the policy remain the same.

This endorsement, effective 12:01 A.M., 06/18/2016
Forms a part of Policy No.: 97082638
Issued to: Estate Of Conchetta Conti
By: Lexington Insurance Company

## INFLATION GUARD FOR COVERAGE A ONLY NOTICE

NOTICE:  The Coverage A limit of liability as shown on the Declarations applies to the entire policy period.  If you renew this policy, such Coverage A limit of liability will be automatically increased by    2 % unless a higher Coverage A limit of liability is requested.

LEX 00 169 09 09

A
I
G

O
L
0
3
:
S
e
s
s

1

5
/
1
9
/
2
0
1
7

This endorsement, effective 12:01 A.M., 06/18/2016
Forms a part of Policy No.: 97082638
Issued to: Estate Of Conchetta Conti
By: Lexington Insurance Company

## INCIDENTAL BUSINESS COVERAGE ENDORSEMENT

This endorsement modifies insurance provided by the policy:

Notwithstanding any other provisions of this policy to the contrary, we _only_ cover your "business(es)" described in the Schedule below, conducted at or from the "residence premises", subject to the provisions of this endorsement.

### SCHEDULE

Description of Business(es):

1.

2.

_____

**SECTION I – PROPERTY COVERAGES**

1. **Coverage B – Other Structures** (for HO 00 03 only): If any "business" described in the Schedule of the "Incidental Business Endorsement" is located within an Other Structure, then Subparagraph **B.2.c.** does not apply to such Other Structure.

2. **Coverage C – Personal Property, Special Limit of Liability** (for HO 00 03, HO 00 04, and HO 00 06), Subparagraphs **C.3.h.** and **C.3.i.** are deleted in their entirety and replaced with the following:

   Regardless of the number of "businesses" shown in the Schedule of the "Incidental Business Endorsement" or number of losses, the most we will pay for:

   a. All property used primarily for "business" purposes on the "residence premises" is $2500; and

   b. All property used primarily for "business" purposes away from the "residence premises" is $500.

**SECTION II – EXCLUSIONS**

Subparagraph **(2)** of Paragraph **E.2.b.** (for HO 00 03, HO 00 04, and HO 00 06) is deleted and replaced with the following:

[**b.** This Exclusion E.2. does not apply to:]

   (2) The necessary or incidental use of the "residence premises" to conduct the "business(es)" described in the Schedule of the "Incidental Business Endorsement", provided that, both of the following conditions are met:

   (a) Such "business" does not employ any "employees" or contract with any independent contractors; and

   (b) No customers or clients enter the "residence premises" for any "business" purpose, including the purchase or sale of any products or the provision of any services.

   Solely for the purposes of liability assumed under this exception, all attorneys' fees and litigation expenses shall be deemed to be damages because of "bodily injury" or "property damage" and shall be included within and reduce the Limit of Liability for Coverage E shown on the Declarations.

Notwithstanding the foregoing, Exclusion **E.3.** which excludes coverage for professional services still applies and as such, Coverages **E.** and **F.** do not apply to "bodily injury" or "property damage" arising out of the rendering or failure to render professional services.

If coverage for "personal injury" is provided by endorsement to the **HO 00 03**, **HO 00 04** or **HO 00 06** policy, then, notwithstanding the foregoing, Coverages **E.** and **F.** do not apply to "personal injury" arising out of the "business(es)" described in the Schedule of the "Incidental Business Endorsement".

All other terms and conditions of the policy remain the same.

LEX 00 177 03 11                     Page 2 of 2



## IMPORTANT FLOOD INSURANCE NOTICE

Your homeowners or dwelling policy **does NOT** cover property damage caused by flood.

Flood means a general and temporary condition of partial or complete inundation of normally dry land area from:

   (i)   The overflow of inland or tidal waters;

   (ii)  The unusual and rapid accumulation or runoff of surface waters from any source;

  (iii) Mudslides (that is, mudflows) that are proximately caused by flooding and are akin to a river of liquid and flowing mud on the surfaces of normally dry land areas, including your premises, as when earth is carried by a current of water and deposited along the path of current.

Flood also includes the collapse or subsidence of land along the shore of a lake or other body of water as a result of erosion or undermining caused by waves or currents of water exceeding cyclical levels, which results in the partial or complete inundation of normally dry land area.

A separate policy of flood insurance may be available to cover flood damage at an additional premium. You should consult us to obtain further information about how to secure flood insurance, including the availability, terms, and coverage.

Standard homeowner's insurance policies do not cover damage to property, contents and structure resulting from floods; however, flood insurance may be available through the National Flood Insurance Program which exists in participating communities. The National Flood Insurance Program coverage contains separate content and structure coverage. A policy holder should consult with the National Flood Insurance Program or his insurer or insurance producer as to whether the coverage selected is appropriate to the policy holder's needs.

LEX 00 185 11 12

This endorsement, effective 12:01 A.M., 06/18/2016
Forms a part of Policy No.: 97082638
Issued to:  Estate Of Conchetta Conti
By:  LEXINGTON INSURANCE COMPANY

## <u>COVERAGE FOR MANDATORY EVACUATION DUE TO IMMINENT THREAT TO RESIDENCE PREMISES</u>

For an included additional premium, the following coverage is added to your policy:

<u>Definitions</u>:

- **Wildfire** – For the purpose of this endorsement, "wildfire" means a large, destructive fire that spreads quickly over woodland or brush

- **Named Storm** – For the purpose of this endorsement, a "named storm" means wind, wind gusts, tornados, or cyclones part of or arising out of a storm system that has been declared to be a tropical storm or a hurricane by the National Hurricane Center of the National Weather Service.

- **Mandatory Evacuation** - For the purpose of this endorsement, "mandatory evacuation" shall mean an evacuation resulting from an imminent threat of damage to the "residence premises" due to a "wildfire" or "named storm" event ordered by any civil authority of all or part of the population from an area under its jurisdiction.

<u>Coverage</u>:

If a civil authority prohibits you from use of the "residence premises" as a result of an order for "mandatory evacuation", we will cover any reasonable increase in living expenses incurred by you.

Coverage provided by this endorsement is available when the ordered "mandatory evacuation" has been in effect for a period longer than twenty-four (24) consecutive hours, not to exceed seven (7) days. No coverage will be provided under this endorsement for any additional living expenses incurred during the first twenty-four (24) consecutive hours after the "mandatory evacuation".

Coverage provided by this endorsement is applicable at any time a "mandatory evacuation" has been ordered during the term of this policy.

Any amounts payable to you for additional living expenses pursuant to this endorsement shall reduce any amounts payable to you under **Coverage D – Loss of Use** in this policy by the total amount payable to you under this endorsement. Additionally, the total aggregate amount payable

**LEX 00 190 09 13**

to you for additional living expenses under this endorsement shall not exceed the limit of liability for **Coverage D – Loss of Use** in this policy.

The Deductible Clause in this policy is not applicable to mandatory evacuation coverage.

All other terms and conditions of the policy remain the same.

LEX 00 190 09 13

AIG OL03:Ses 15/19/2017

A
I
G

O
L
0
3
:
S
e
s
s

1
5
/
1
9
/
2
0
1
7

This endorsement, effective 12:01 A.M., 06/18/2016
Forms a part of Policy No.: 97082638
Issued to: Estate Of Conchetta Conti
By: LEXINGTON INSURANCE COMPANY

## SECTION I AND SECTION II TOTAL BUSINESS EXCLUSION

This endorsement modifies insurance provided by the policy:

1. No Section I – Property Coverages

   We will not provide any **Coverage A – Dwelling, Coverage B – Other Structures, Coverage C – Personal Property, and/or Coverage D – Loss of Use** for any loss, cost, damage, or expense caused by, arising out of, or resulting directly or indirectly, in whole or in part, from any "business" at the "insured location" and/or any services, goods, products, inventory, stock, tools, materials, supplies, equipment, or any other items whatsoever provided, stored, and/or used in connection with any "business" at the "insured location."

2. No Section II – Liability Coverages

   We will not provide any **Coverage E – Personal Liability** and/or **Coverage F – Medical Payments To Others** for the following:

   A. "Bodily injury," "property damage," or any other loss cost, damage, expense, injury, claim, or suit caused by, arising out of, or resulting directly or indirectly, in whole or in part, from any "business" at the "insured location" including, but not limited to:

      a. Being on, approaching, or leaving the "insured location" for any "business" purpose or activity,

      b. Renting or purchasing services, goods, or products, whether or not such services, goods, or products are actually rented or purchased in connection with any "business" at the "insured location,"

      c. Browsing or viewing services, goods, or products in connection with any "business" at the "insured location," or

      d. Delivering, transporting or picking up any services, goods, products, inventory, stock, tools, materials, supplies, equipment, or any other items whatsoever provided, stored, and/or used in connection with any "business" at the "insured location."

   B. "Bodily injury," "property damage," or any other loss cost, damage, expense, injury, claim, or suit caused by, arising out of, or resulting directly or indirectly, in whole or in

LEX 00 195 04 14

AIG
OL03:Sess15/19/2017

part, from any services, goods, products, inventory, stock, tools, materials, supplies, equipment, or any other items whatsoever provided, stored, and/or used in connection with any "business" at the "insured location."

If any provision contained herein shall, for any reason, be held to be invalid, illegal or unenforceable in any respect, such provision shall be ineffective only to the extent of such invalidity, illegality or unenforceability, without invalidating the remainder of such provision.

All other terms and conditions of the policy remain the same.

_____

Signature of Insured

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CYBER SAFETY COVERAGE

**DEFINITIONS**

The following definitions are added:

"Affected persons" means those "insureds" who suffer or may reasonably be expected to imminently suffer significant adverse news media coverage from a "cyber bullying event".

"Coverage territory" means the United States of America, including its territories and possessions, Puerto Rico and Canada.

"Crisis event" means an emergency situation arising out of a "cyber bullying event" that results in covered loss to an "insured".  Such emergency situation shall have been associated with or may reasonably be associated with significant adverse local, regional or national news media coverage.

"Crisis management firm" means a public relations firm or crisis management firm of our choice, assigned or approved by us in writing, that is hired by you to perform services of the type covered under "crisis management loss" in connection with a "crisis event".

"Crisis management loss" means reasonable and necessary fees and expenses charged by a "crisis management firm" in providing public relations and media management services for the purpose of managing your reputational risk and maintaining and restoring public confidence in you.

"Crisis response costs" means reasonable and necessary psychological expenses, travel expenses, temporary living expenses and related expenses incurred by you to provide relief and/or support to "affected persons". "Crisis response costs" shall not include defense fees and/or costs or "crisis management loss".

"Cyber bullying" means the willful and repeated use of cell phones, computers, tablets or other electronic technologies by a minor under the age of 18 years to deliberately embarrass, harass, humiliate, intimidate, threaten, torment or otherwise target another minor under the age of 18 years. "Cyber bullying" methods include, but are not limited to, the use of texting, instant messaging, chat rooms, emails, and messages and/or photos posted on social networking websites.

"Cyber bully" means the minor under the age of 18 years who is alleged to have willfully and repeatedly used cell phones, computers, tablets or other electronic technologies to deliberately embarrass, harass, humiliate, intimidate, threaten, torment or otherwise target another minor under the age of 18 years.

"Cyber bullying event" means any actual or alleged "cyber bullying" and/or any actual or alleged negligent care, custody, control, entrustment, investigation, monitoring or supervision of a "cyber bully" for whom an "insured" 18 years of age or over is or ever was legally responsible.

"Victim" means the minor under the age of 18 years who is alleged to have been embarrassed, harassed, humiliated, intimidated, threatened, tormented or otherwise targeted by a "cyber bully".

**SECTION II – LIABILITY COVERAGES**

**A. Coverage E – Personal Liability**

The following is added to **Coverage E – Personal Liability:**

**Cyber Safety Coverage**

If a claim is made or suit is brought against an "insured" for damages arising out of a "cyber bullying event", to which this coverage applies, we will:

1. Pay up to the limit of liability set forth in the table below for the damages for which an "insured" is legally liable. Damages may include prejudgment interest awarded against an "insured"; and

2. Provide a defense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when the limit of liability set forth in the table below has been exhausted by payment of defense fees and/or costs, a judgment or settlement.

| CYBER SAFETY COVERAGE | LIMIT OF LIABILITY |
|---|---|
| Each "cyber bullying event" limit | $250,000 |
| All "cyber bullying events" aggregate limit | $250,000 |

LEX 00 196 06 14

The limit of liability set forth in the table above shall be the only limit of liability available for "cyber bullying event(s)" coverage provided under this endorsement notwithstanding any other limits of liability contained in the policy. The most we shall pay under this endorsement for each "cyber bullying event" shall be limited to the limit of liability set forth in the table above. The most we shall pay under this endorsement for all "cyber bullying events" shall be limited to the aggregate limit of liability set forth in the table above.

All claims or suits arising out of continuous, related or repeated "cyber bulling events" shall be treated as arising out of one "cyber bullying event". Such continuous, related or repeated "cyber bullying events" shall be considered to have taken place when the earliest "cyber bullying event" takes place. The limit of liability in effect when the earliest "cyber bullying event" takes place shall apply.

The limit of liability of this endorsement applies separately to each consecutive annual period starting with the beginning of the policy period set forth in the Declarations (e.g., the effective date of the policy).

## SECTION II – EXCLUSIONS

With respect to the coverage provided by this endorsement, **SECTION II – EXCLUSIONS** is deleted and replaced by the following:

This insurance does not apply to any "cyber bullying event":

1. Caused by an "insured" with the intent or knowledge that the "cyber bullying" would result in the infliction of "bodily injury" upon the "victim" of the "cyber bullying".

   However, this Exclusion **1.** does not apply to a claim or suit against an "insured" 18 years of age or over who unintentionally or unknowingly failed to prevent a "cyber bully" from "cyber bullying" and/or an "insured" 18 years of age or over who unintentionally or unknowingly neglected to notify the proper authorities of "cyber bullying" by a "cyber bully";

2. Arising out of a criminal act committed by or at the direction of an "insured".

   However, this Exclusion **2.** does not apply to a claim or suit against an "insured" 18 years of age or over who unintentionally or unknowingly failed to prevent a "cyber bully" from "cyber bullying" and/or an "insured" 18 years of age or over who unintentionally or unknowingly neglected to notify the proper authorities of "cyber bullying" by a "cyber bully";

3. If an "insured" 18 years of age or over intentionally or knowingly failed to prevent a "cyber bully" from "cyber bullying";

4. If an "insured" 18 years of age or over intentionally or knowingly neglected to notify the proper authorities of "cyber bullying" by a "cyber bully";

5. That took place or commences to take place before the beginning of the policy period;

6. Arising out of or in connection with a "business" conducted from an "insured location" or engaged in by an "insured", whether or not the "business" is owned or operated by an "insured" or employs an "insured". This exclusion applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed or implied to be provided because of the nature of the "business";

7. Arising out of civic or public activities performed for pay by an "insured";

8. In which you or an "insured" as defined under **DEFINITIONS B.5.a.** or **b.** is the "victim";

   This exclusion also applies to any claim made or suit brought against you or an "insured":

   a. To repay; or

   b. Share damages with

   another person who may be obligated to pay damages because of a "cyber bullying event" to an "insured".

## SECTION II – ADDITIONAL COVERAGES

With respect to the coverage provided by this endorsement, **SECTION II – ADDITIONAL COVERAGES** is deleted and replaced by the following:

**Crisis Response Coverage**

Notwithstanding any provisions to the contrary in the policy to which this endorsement is attached, subject to the limits of insurance set forth in the table below and in accordance with the terms and conditions set forth in this endorsement, the policy is extended to provide "crisis response costs" and "crisis management loss" resulting from a "crisis event" as follows:

1. We will reimburse you or pay on your behalf reasonable and necessary "crisis response costs" and/or "crisis management loss" arising out of any "crisis event" for which coverage is provided under this endorsement. The amount we will reimburse you or pay on your behalf for such "crisis response costs" and/or "crisis management loss" is limited as described herein.

2. We will reimburse you or pay on your behalf "crisis response costs" and/or "crisis management loss" arising out of a "crisis event" only if:

   a. The "crisis event" takes place in the "coverage territory"; and

   b. The "crisis event" commences during the policy period; and

c. Such "crisis response costs" and/or "crisis management loss" did not arise out of any "cyber bullying event" that you, prior to the inception date of this policy, knew, or reasonably should have known, could lead to, cause or result in such "crisis response costs" and/or "crisis management loss"; and

d. Such "crisis response costs" and/or "crisis management loss" are incurred within thirty (30) days after the commencement date of the "crisis event".

| CRISIS RESPONSE COVERAGE | LIMIT OF INSURANCE |
|---|---|
| Crisis response aggregate limit | $25,000 |
| Each "crisis response costs" limit | $25,000 |
| Each "crisis management loss" limit | $5,000 |

The limits of insurance set forth in the table above establish the most we will reimburse you or pay on your behalf for "crisis response costs" and "crisis management loss" regardless of the number of "insureds", "crisis events" or "affected persons".

The crisis response aggregate limit set forth in the table above is the most we will reimburse you or pay on your behalf for the sum of all "crisis response costs" and "crisis management loss" under this endorsement.

Subject to the crisis response aggregate limit, each "crisis response costs" limit is the most we will reimburse you or pay on your behalf for all "crisis response costs" arising out of any one "crisis event".

Subject to the crisis response aggregate limit, each "crisis management loss" limit is the most we will reimburse you or pay on your behalf for all "crisis management loss" arising out of any one "crisis event".

All "crisis events" arising out of continuous, related or repeated "cyber bulling events" shall be treated as arising out of one "cyber bullying event".

**SECTION II – CONDITIONS**

With respect to the coverage provided by this endorsement, Paragraphs D. Duties Of An Injured Person – Coverage F – Medical Payments To Others, E. Payment Of Claim – Coverage F – Medical Payments To Others, and I. Policy Period under SECTION II – CONDITIONS do not apply, Paragraphs A. Limit Of Liability, B. Severability Of Insurance, and C. Duties After "Occurrence" are deleted and replaced by the following, and Paragraph K. Crisis Response Coverage Conditions is added as follows:

**A. Limit Of Liability**

Our total liability under this Cyber Safety Coverage for all damages resulting from any "cyber bullying event" will not be more than the limit of liability set forth in the table included herein under SECTION II – LIABILITY COVERAGES. This limit is the same regardless of the number of "insureds", claims made or suits brought, or persons making claims or bringing suits.

**B. Severability Of Insurance**

This insurance applies separately to each "insured". This condition will not increase our limit of liability for any one "cyber bullying event" nor will it increase the aggregate limit of liability for all "cyber bullying events".

**C. Duties After "Cyber Bullying Event"**

In the event of a "cyber bullying event", you or another "insured" shall perform the following duties that apply. We have no duty to provide Cyber Safety Coverage under this policy if your failure to comply with the following duties is prejudicial to us. You shall help us by seeing that the following duties are performed:

1. Give written notice to us or our agent as soon as is practical, which sets forth:

   a. The identity of the policy and "named insured";

   b. Reasonably available information on the time, place and circumstances of the "cyber bullying event"; and

   c. The names, addresses and contact information of any claimants and witnesses;

2. Cooperate with us in the investigation, settlement or defense of any claim or suit;

3. Promptly forward to us every notice, demand, summons or other process relating to the "cyber bullying event";

4. At our request, help us:

   a. To make settlement;

   b. To enforce any right of contribution or indemnity against any person or entity who may be liable to an "insured";

   c. With the conduct of suits and attend hearings and trials; and

   d. To secure and give evidence and obtain the attendance of witnesses;

5. No "insured" shall, except at such "insured's" own cost, voluntarily make payment, assume obligation or incur expense other than for first aid to others at the time of the "cyber bullying event".

K. Crisis Response Coverage Conditions

In the event of a "crisis event", the following conditions shall apply. We have no duty to provide Crisis Response Coverage under this policy if your failure to comply with the following duties is prejudicial to us. You shall help us by seeing that these duties are performed:

1. You must see to it that we are notified by telephone within twenty-four (24) hours of a "crisis event" which may result in "crisis response costs" or "crisis management loss". **The call must be made to the following crisis response notification number: 877-743-7669.** If necessary, we will provide you with an approved "crisis management firm" of our choice unless we agree, at our sole discretion, to accept a "crisis management firm" that you have selected.

2. Thereafter, you must provide written notice as soon as practicable. To the extent reasonably possible, this written note must include:

   a. How, when and where the "crisis event" took place;

   b. The names, addresses and contact information of any "affected persons"; and

   c. The nature and extent of any loss arising out of the "crisis event".

3. If reimbursement is sought directly by you, you must submit a claim for reimbursement of "crisis response costs" and "crisis management loss" within ninety (90) days after incurring such "crisis response costs" or "crisis management loss". Such claim(s) must include invoices and/or receipts supporting such "crisis response costs" and "crisis management loss" for each and every expense in excess of fifty (50) dollars.

4. Written notice and claim submission shall be delivered to the following email address: **LexORGFNOL@aig.com.** If you do not have access to email, you shall provide notice and submit your claim by calling **800-931-9546.**

If any provision contained herein shall, for any reason, be held to be invalid, illegal or unenforceable in any respect, such provision shall be ineffective only to the extent of such invalidity, illegality or unenforceability, without invalidating the remainder of such provision.

**All other terms and conditions of the policy remain the same.**

AIG
OL03:Sess15/19/2017

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PERSONAL INJURY

## DEFINITIONS

The following definitions are added:

"Personal injury" means injury arising out of one or more of the following offenses, but only if the offense was committed during the policy period:

1. False arrest, detention or imprisonment;

2. Malicious prosecution;

3. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

4. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

5. Oral or written publication of material that violates a person's right of privacy.

"Fungi" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

However, this does not include any fungi that are, are on, or are contained in, a good or product intended for consumption.

## SECTION II – LIABILITY COVERAGES

### A. Coverage E – Personal Liability

The following is added to Coverage E – Personal Liability:

**Personal Injury Coverage**

If a claim is made or suit is brought against an "insured" for damages resulting from an offense, defined under "personal injury", to which this coverage applies, we will:

1. Pay up to our limit of liability for the damages for which an "insured" is legally liable. Damages include prejudgment interest awarded against an "insured"; and

2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when our limit of liability for the offense has been exhausted by payment of a judgment or settlement.

## SECTION II – EXCLUSIONS

With respect to the coverage provided by this endorsement, **Section II – Exclusions** is deleted and replaced by the following:

This insurance does not apply to:

1. "Personal Injury":

   a. Caused by or at the direction of an "insured" with the knowledge that the act would violate the rights of another and would inflict "personal injury";

   b. Arising out of oral or written publication of material, if done by or at the direction of an "insured" with knowledge of its falsity;

   c. Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

   d. Arising out of a criminal act committed by or at the direction of an "insured";

   e. Arising out of liability assumed by an "insured" under any contract or agreement except any indemnity obligation assumed by an "insured" under a written contract directly relating to the ownership maintenance or use of the premises;

   f. Sustained by any person as a result of an offense directly or indirectly related to the employment of this person by an "insured";

   g. Arising out of or in connection with a "business" conducted from an "insured location" or engaged in by an "insured", whether or not the "business" is owned or operated by an "insured" or employs an "insured". This exclusion applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the "business".

   This exclusion does not apply to:

   (1) The rental or holding for rental of an "insured location";

      (a) On an occasional basis if used only as a residence;

      (b) In part for use only as a residence, unless a single family unit is intended for use by the occupying family to lodge more than two roomers or boarders; or

LEX 00 197 06 14

(c) In part, as an office, school, studio or private garage; and

(2) An "insured" under the age of 21 years involved in a part-time or occasional, self-employed "business" with no employees;

h. Arising out of civic or public activities performed for pay by an "insured";

i. To you or an "insured" as defined under Definition 5.a. or b.;

This exclusion also applies to any claim made or suit brought against you or an "insured":

(1) To repay; or

(2) Share damages with; or

Another person who may be obligated to pay damages because of "personal injury" to an "insured"; or

j. Arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

k. Arising directly or indirectly, in whole or in part, out of the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi", wet or dry rot, or bacteria.

2. Any loss, cost or expense arising out of any:

a. Request, demand or order that an "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants, "fungi", wet or dry rot, or bacteria; or

b. Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, clean up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants, "fungi", wet or dry rot, or bacteria.

3. Any loss, cost or expense arising out of any:

a. Actual or alleged cyber bulling, which means the willful and repeated use of cell phones, computers, tablets or other electronic technologies by a minor under the age of 18 years to deliberately embarrass, harass, humiliate, intimidate, threaten, torment or otherwise target another minor under the age of 18 years. Cyber bullying methods include, but are not limited to, the use of texting, instant messaging, chat rooms, emails, and messages and/or photos posted on social networking websites; or

b. Actual or alleged negligent care, custody, control, entrustment, investigation, monitoring or supervision of a cyber bully for whom an "insured" 18 years of age or over is or ever was legally responsible.  A cyber bully is the minor under the age of 18 years who is alleged to have willfully and repeatedly used cell phones, computers, tablets or other electronic technologies to deliberately embarrass, harass, humiliate, intimidate, threaten, torment or otherwise target another minor under the age of 18 years.

## SECTION II – ADDITIONAL COVERAGES

With respect to the coverage provided by this endorsement, Paragraph D. Loss Assessment is deleted and replaced by the following:

### D. Loss Assessment

We will pay up to $1000 for your share of loss assessment charged against you, as an owner or tenant of the "residence premises", during the policy period by a corporation or association of property owners, when the assessment is made as a result of "personal injury" not excluded under this endorsement.

We do not cover assessments charged against you or a corporation or association of property owners by any governmental body.

Regardless of the number of assessments, the limit of $1000 is the most we will pay for loss arising out of "personal injury".

## SECTION II – CONDITIONS

With respect to the coverage provided by this endorsement, Section II – Condition I. Policy Period does not apply and Conditions A. Limit Of Liability, B. Severability Of Insurance and C. Duties After "Occurrence" are deleted and replaced by the following:

### A. Limit Of Liability

Our total liability under "Personal Injury" Coverage for all damages resulting from any one offense will not be more than the limit of liability shown in the Declarations for Coverage E. This limit is the same regardless of the number of "insureds", claims made or suits brought.

### B. Severability Of Insurance

This insurance applies separately to each "insured". This condition will not increase our limit of liability for any one offense.

### C. Duties After Offense

In the event of a covered offense, you or another "insured" will perform the following duties that apply. We have no duty to provide coverage under this policy if your failure to comply with the following duties is prejudicial to us. You will help us by seeing that these duties are performed:

AIG O L03:Sess 1 5/19/2017

1. Give written notice to us or our agent as soon as is practical, which sets forth:

   a. The identity of the policy and "named insured";

   b. Reasonably available information on the time, place and circumstances of the offense; and

   c. Names and addresses of any claimants and witnesses;

2. Cooperate with us in the investigation, settlement or defense of any claim or suit;

3. Promptly forward to us every notice, demand, summons or other process relating to the offense;

4. At our request, help us:

   a. To make settlement;

   b. To enforce any right of contribution or indemnity against any person or organization who may be liable to an "insured";

   c. With the conduct of suits and attend hearings and trials; and

   d. To secure and give evidence and obtain the attendance of witnesses;

5. No "insured" shall, except at such "insured's" own cost, voluntarily make payment, assume obligation or incur expense other than for first aid to others at the time of the "personal injury".

If any provision contained herein shall, for any reason, be held to be invalid, illegal or unenforceable in any respect, such provision shall be ineffective only to the extent of such invalidity, illegality or unenforceability, without invalidating the remainder of such provision.

**All other terms and conditions of the policy remain the same.**

This endorsement, effective 12:01 A.M., 06/18/2016
Forms a part of Policy No.: 97082638
Issued to: Estate Of Conchetta Conti
By: Lexington Insurance Company

### ANIMAL EXCLUSION APPLICABLE TO TENANTS

This endorsement modifies insurance provided by the policy:

I.   We do not provide any **SECTION I – PROPERTY COVERAGES** for any loss, cost, damage, or expense arising out of, resulting from, or caused, directly or indirectly, in whole or in part, by any animal owned by or in the care, custody, or control of any tenant of an "insured".

II.  We do not provide any **SECTION II – LIABILITY COVERAGES** for any "bodily injury," "property damage" or any loss, cost, damage, expense, injury, claim or "suit" arising out of, resulting from, or caused, directly or indirectly, in whole or in part, by any animal owned by or in the care, custody, or control of any tenant of an "insured".

If any provision contained herein shall, for any reason, be held to be invalid, illegal or unenforceable in any respect, such provision shall be ineffective only to the extent of such invalidity, illegality or unenforceability, without invalidating the remainder of such provision.

All other terms and conditions of the policy remain the same.

LEX 00 198 08 14

A
I
G

O
L
0
3
:
s
e
s
s
1
5
/
1
9
/
2
0
1
7

HOMEOWNERS
LEX 01 29 02 15

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# SPECIAL PROVISIONS – NEW JERSEY

The following provisions supersede any contrary provisions of the Homeowners 3 - Special form, Homeowners 4 - Contents Broad Forms and Homeowners 6 - Unit Owners Form.

**DEDUCTIBLE CLAUSE** – is deleted and replaced with the following:

**DEDUCTIBLE**

Unless otherwise noted in this policy, the following deductible provision applies:

Subject to the policy limits that apply, we will pay only that part of the total of all loss payable under **SECTION I – PROPERTY COVERAGES** that exceed the applicable deductible amount or percentage shown in the Declarations. Under no circumstance shall the applicable deductible be less than the All Other Peril (AOP) deductible shown in the Declarations.

**SECTION I – PROPERTY COVERAGES**

**B.   Coverage   B   –   Other   Structures.** Subparagraph 3. of Paragraph **B.** in Form HO 00 03 is deleted and replaced by the following:

3.   The limit of liability for this coverage shall not exceed the amount shown in the Declarations.

**SECTION I – PERILS INSURED AGAINST**

**A.   Coverage A – Dwelling And Coverage B – Other Structures** Subparagraph 2.c.(1) of Paragraph **A.** in Form HO 00 03 is deleted and replaced by the following:

(1)   Freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing.    This provision does not apply if you have used reasonable care to:

(a)   Maintain heat in the building; or

(b)   Shut off the water supply and drain all systems and appliances of water;

However, if the building is protected by an automatic fire protective sprinkler system, you must use reasonable care to continue the water supply and maintain heat in the building for coverage to apply.

**SECTION I – EXCLUSIONS**

Subparagraph **10. Act of Terrorism** is added to Paragraph **A.** in Form HO 00 03 (Paragraph **10. Act of Terrorism** is added to **SECTION I – EXCLUSIONS** in Forms HO 00 04 & HO 00 06) as follows:

**10. Act of Terrorism**

**Act   of   Terrorism** means   an   act, including but not limited to the use of force or violence and/or the threat thereof, of any person or group(s) of persons, whether acting alone or on behalf of or in connection with any organization(s)   or   government(s), committed   for   political,   religious, ideological or similar purposes including the   intention   to   influence   any government and/or to put the public, or any section of the public, in fear.

It is hereby understood and agreed, that notwithstanding any provision to the contrary, it is agreed that this policy excludes, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with biological, chemical, nuclear or radioactive pollution or contamination arising out of any act of terrorism regardless of any other cause or event contributing concurrently or in any other sequence to the loss.

The policy also excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any action taken   in   controlling,   preventing, suppressing or in any way relating to any biological,   chemical,   nuclear   or

LEX 01 29 02 15

radioactive pollution or contamination arising out of an act of terrorism.

Nothing in this exclusion shall be construed to exclude loss, damage or cost or expense of whatsoever nature arising out of fire following any nuclear incident.

## SECTION I - CONDITIONS

Subparagraph **2.f.** is added to Paragraph C. **Loss Settlement** in Form **HO 00 03** (Subparagraph **1.** in Form **HO 00 04**; Subparagraph 2.c. in HO 00 06) as follows:

f.  If, at the time of loss, the building(s) under Coverage A or B are being repaired, renovated, rebuilt or under construction, the maximum amount of insurance on the damaged building will be the proportion of the value of the building that the actual cash value of the building, on that date, bears to the value when completed. You and we agree that, for insurance purposes only, the value of the building is the amount shown on the Declarations.

Paragraph **Q. Concealment Or Fraud** in Form HO 00 03 & HO 00 06 (Paragraph **P.** in Form HO 00 04) is deleted and replaced with the following:

Q.  **Concealment Or Fraud**

We provide coverage to no "insureds" under this policy if, whether before or after a loss, an "insured" has:

1.  Intentionally concealed or misrepresented any material fact or circumstance;

2.  Engaged in fraudulent conduct; or

3.  Made false statements;

relating to this insurance. In addition to not providing coverage, we at our option may choose to void the entire policy.

## SECTION II - EXCLUSIONS

E.  Coverage E – **Personal Liability** and Coverage F – **Medical Payments To Others** Subparagraph **1.** of Paragraph **E.** is deleted and replaced with following:

Coverages E and F do not apply to the following:

1.  **Expected or Intended Injury**

"Bodily injury" or "property damage" which is reasonably expected or

intended from the standpoint of the "insured" even if the resulting "bodily injury" or "property damage":

a.  Is of a different kind, quality or degree than initially expected or intended; or

b.  Is sustained by a different person, entity, real or personal property, than initially expected or intended.

The reasonable person standard applies even if the "insured" lacked the mental capacity to formulate an intent or expectation.

This Exclusion **E.1.** applies to all "insureds", notwithstanding the provision in Section II – Conditions Paragraph **B. Severability Of Insurance.**

E.  Coverage E – **Personal Liability** and Coverage F – **Medical Payments To Others** Subparagraph **9.** is added to Paragraph **E.** as follows:

Coverages E and F do not apply to the following:

9.  **Punitive or Exemplary Damages**

Punitive or exemplary damages alleged in any claim or suit nor do we have any obligation to pay any costs, interests, or damages attributable to such punitive or exemplary damages.

## SECTION II – CONDITIONS

Paragraph **J. Concealment Or Fraud** is deleted and replaced with the following:

J.  **Concealment Or Fraud**

We provide coverage to no "insureds" under this policy if, whether before or after a loss, an "insured" has:

1.  Intentionally concealed or misrepresented any material fact or circumstance;

2.  Engaged in fraudulent conduct; or

3.  Made false statements;

relating to this insurance. In addition to not providing coverage, we at our option may choose to void the entire policy.

**SECTION I AND II – CONDITIONS**

C.  Cancellation  Subparagraphs 2. and 3. of
Paragraph **C.** are deleted and replaced with
the following:

    2.  We may cancel this policy only for the
reasons stated below by letting you
know in writing of the date cancellation
takes effect.   This cancellation notice
may be delivered to you, or mailed to
you at your mailing address shown in the
Declarations. Proof of mailing will be
sufficient proof of notice.

        a.  When you have not paid the
premium, we may cancel at any time
by letting you know at least 10 days
before the date cancellation takes
effect.

        b.  We may cancel for any other reason
(other than non-payment of
premium) by letting you know at
least 30 days before the date
cancellation takes effect.

    3.  If this policy is cancelled, we will send
you any premium refund due. If you or
we cancel, any refund due will be
calculated on a pro rata basis.
However, if you cancel, we will retain no
less than the Minimum Earned Premium
shown in the Declarations.

C.  Cancellation  Subparagraph **5** is added to
Paragraph **C.** as follows:

    5.  The cancellation will be effective even if
we have not made or offered a refund.

A
I
G

O
L
0
3
:
S
e
s
s

1

5
/
1
9
/
2
0
1
7



THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## WINDSTORM OR HAIL PERCENTAGE DEDUCTIBLE
### ALL FORMS EXCEPT HO 00 04 and HO 00 06

We will pay only that part of the total of the loss for all Section I Property
Coverages that exceeds the windstorm or hail percentage deductible stated in
this endorsement.  This deductible applies in the event of direct physical loss to
property covered under this policy caused directly or indirectly by windstorm or
hail.  Such Deductible applies regardless of any other cause or event
contributing concurrently or in any sequence to the loss.  No other deductible
provision in the policy applies to direct physical loss caused by windstorm or
hail.

In determining the amount, if any, that we will pay for loss or damage, we will
deduct an amount equal to    2 %* or  $*8,038    of the limit of liability that applies
to Coverage A - Dwelling in the policy to which this endorsement is attached,
subject to a minimum $3,000 windstorm or hail deductible.

*Entries may be left blank if shown elsewhere in this policy for this coverage.

All other terms and conditions of the policy remain the same.

LEX 03 14 07 07

A
I
G

O
L
0
3
:
s
e
s
s
1
5
/
1
9
/
2
0
1
7

POLICY NUMBER: 97082638

HOMEOWNERS
LEX 04 33 11 04

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LIMITED FUNGUS(I), MOLD(S), SPORE(S), WET OR DRY ROT, BACTERIA, MILDEW OR YEAST COVERAGE

### SCHEDULE*

| These limits of liability apply to the total of all loss or costs payable under this endorsement, regardless of the number of "occurrences", the number of claims made, or the number of locations insured under this endorsement and listed in this Schedule. | |
|---|---|
| 1. | Section I – Property Coverage Limit Of Liability for the Additional Coverage "Mold Related Items" | $ 5,000 |
| 2. | Section II – Coverage E Aggregate Sublimit Of Liability for "Mold Related Items" | $ 5,000 |
| *Entries may be left blank if shown elsewhere in this policy for this coverage. | |

## DEFINITIONS

The following definitions are added:

1. "Mold Related Items" include the following definitions for "Fungus(i)", "Mold(s)", "Spore(s)", but also includes, Wet or Dry Rot, Bacteria, Mildew or Yeast.

   a. "Fungus(i)" includes, but is not limited to, any of the plants or organisms belonging to the major group Fungi, lacking chlorophyll, and including molds, rusts, mildews, smuts, mushrooms, and any mycotoxins, spores, scents or byproducts produced or released by fungi.

   b. "Mold(s)" includes, but is not limited to, any superficial growth produced on damp or decaying organic matter or on living organisms, and fungi that produce molds.

   c. "Spore(s)" means any dormant or reproductive body produced by or arising or emanating out of any "fungus(i)", "mold(s)", mildew, plants, organisms or microorganisms.

## SECTION I – PROPERTY COVERAGES

The following Additional Coverage is added:

13. **"Mold Related Items"** (or Subparagraph 12. if this endorsement is attached to HO 00 06)

    a. The amount shown in the Schedule above is the most we will pay for:

    (1) The total of all loss payable under Section I – Property Coverages caused by "mold related items";

    (2) The cost to remove "mold related items" from property covered under Section I – Property Coverages;

    (3) The cost to tear out and replace any part of the building or other covered property as needed to gain access to the "mold related items"; and

    (4) The cost of testing of air or property to confirm the absence, presence or level of "mold related items" whether performed prior to, during or after removal, repair, restoration or replacement. The cost of such testing will be provided only to the extent that there is a reason to believe that there is the presence of "mold related items".

    b. The coverage described in 13.a. (or Subparagraph 12.a. if this endorsement is attached to HO 00 06) only applies when such loss or costs are a result of a Peril Insured Against that occurs during the policy period and only if all reasonable means were used to save and preserve the property from further damage at and after the time the Peril Insured Against occurred.

    c. The amount shown in the Schedule for this coverage is the most we will pay for the total of all loss or costs payable under this Additional Coverage regardless of the:

LEX 04 33 11 04

(1) Number of locations insured under this endorsement; or

(2) Number of claims made.

d. If there is covered loss or damage to covered property, not caused, in whole or in part, by "mold related items", loss payment will not be limited by the terms of this Additional Coverage, except to the extent that "mold related items" causes an increase in the loss. Any such increase in the loss will be subject to the terms of this Endorsement.

This coverage does not increase the limit of liability applying to the damaged covered property.

## SECTION I – PERILS INSURED AGAINST

If this endorsement is attached to HO 00 03 without LEX 15 31 or HO 00 03, HO 00 04 and HO 00 06 with LEX 15 31:

Paragraph **A.2.c.(6)(c)** or **1.b.(5)(c)** (if **LEX 15 31** is attached) is deleted and replaced by the following:

(c) or (c) Smog, rust or other corrosion;

Paragraph **A.2.c.(6)(i)** or **1.b.(5)(i)** (if **LEX 15 31** is attached) is added:

(i) or (i) Constant or repeated seepage or leakage of water or the presence or condensation of humidity, moisture or vapor, over a period of weeks, months or years unless such seepage or leakage of water or the presence or condensation of humidity, moisture or vapor and the resulting damage is unknown to all "insureds" and is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure.

In Form HO 00 06 with HO 17 32:

For Coverage A:

Paragraph **2.c.(5)** is deleted and replaced with the following:

(5) Constant or repeated seepage or leakage of water or the presence or condensation of humidity, moisture or vapor, over a period of weeks, months or years unless such seepage or leakage of water or the presence or condensation of humidity, moisture or vapor and the resulting damage is unknown to all "insureds" and is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure.

Paragraph **2.c.(6)(c)** is deleted and replaced by the following:

(c) Smog, rust or other corrosion;

## SECTION I – EXCLUSIONS

Exclusion **A.10.** (or Exclusion **10.** if this endorsement is attached to either a HO 00 04 or HO 00 06) is added.

10. **"Mold Related Items"**

"Mold Related Items" means the presence, growth, proliferation, spread or any activity of "mold related items".

This Exclusion does not apply:

a. When "Mold Related Items" results from fire or lightning; or

b. To the extent coverage is provided for in the "Mold Related Items" Additional Coverage under Section I – Property Coverages with respect to loss caused by a Peril Insured Against other than fire or lightning.

Direct loss by a Peril Insured Against resulting from "Mold Related Items" is covered.

## SECTION I – CONDITIONS

Condition **P.** Policy Period (or Condition **O.** if this endorsement is attached to HO 00 04) is deleted and replaced by the following:

**P. Policy Period**

This policy applies only to loss or costs which occur during the policy period.

## SECTION II – CONDITIONS

Condition **A.** Limit Of Liability is deleted and replaced by the following:

**A. Limit Of Liability**

Our total liability under Coverage E for all damages resulting from any one "occurrence" will not be more than the Coverage **E** limit of liability shown in the Declarations. This limit is the same regardless of the number of "insureds", claims made or persons injured. All "bodily injury" and "property damage" resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions will be considered to be the result of one "occurrence".

Our total liability under Coverage F for all medical expense payable for "bodily injury" to one person as the result of one accident will not be more than the Coverage **F** limit of liability shown in the Declarations.

A
I
G

O
L
0
3
:
s
e
s

1
5
/
1
9
/
2
0
1
7

However, our total liability under Coverage E for the total of all damages arising directly or indirectly, in whole or in part, out of the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "Mold Related Items" will not be more than the Section II – Coverage E Aggregate Sublimit Of Liability for "Mold Related Items". That sublimit is the amount shown in the Schedule. This is the most we will pay regardless of the:

a. Number of locations insured under the policy to which this endorsement is attached;

b. Number of persons injured;

c. Number of persons whose property is damaged;

d. Number of "insureds"; or

e. Number of "occurrences" or claims made.

This sublimit is within, but does not increase, the Coverage E limit of liability. It applies separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations.

With respect to damages arising out of "Mold Related Items" described in A. Limit Of Liability of this endorsement, Condition B. Severability Of Insurance is deleted and replaced by the following:

**B. Severability Of Insurance**

This insurance applies separately to each "insured" except with respect to the Aggregate Sublimit of Liability described in this endorsement under Section II – Conditions 1., Limit Of Liability. This condition will not increase the limit of liability for this coverage.

All other terms and conditions of the policy remain the same.

POLICY NUMBER: 97082638

**HOMEOWNERS
LEX 04 95 11 04**

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### WATER BACK UP AND SUMP OVERFLOW

1. For an additional premium, we insure, up to $5000 for direct physical loss, not caused by the negligence of any "insured," to property covered under Section I caused by:

   a. Water which backs up through sewers or drains; or

   b. Water which overflows from a sump pump even if such overflow results from the mechanical breakdown of the sump pump. This coverage does not apply to direct physical loss of the sump pump, or related equipment, which is caused by mechanical breakdown.

   This endorsement does not increase the limits of liability for Coverages A, B, C or D stated in the policy Declarations.

2. **Special Deductible**

   The following deductible provision replaces any other deductible provision in the policy with respect to loss covered under this endorsement.

   We will pay only that part of the loss which exceeds $250. No other deductible applies to this coverage. This deductible does not apply with respect to Coverage D – Loss of Use.

3. **Section I – Perils Insured Against**

   With respect to coverage described in **1.** above only, Paragraph:

   **A.2.c.(6)(b)** in Form **HO 00 03** without **LEX 15 31;**

   **1.b.(5)(b)** in Form **HO 00 03, HO 00 04,** or **HO 00 06** with **LEX 15 31;**

   **2.c.(6)(b)** in Form **HO 00 06** with **HO 17 32;**

   is deleted and replaced with the following:

   Latent defect, inherent vice, or any quality in property that causes it to damage or destroy itself;

4. **SECTION I – EXCLUSIONS**

   The **Water Damage** exclusion is deleted and replaced by the following:

   Water Damage, meaning:

   a. Flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind;

   b. Water, or water-borne material, which:

      (1) Backs up through sewers or drains; or

      (2) Overflows or is discharged from a sump, sump pump or related equipment

      as a direct or indirect result of flood; or

   c. Water, or water-borne material, below the surface of the ground, including water which:

      (1) Exerts pressure on; or

      (2) Seeps or leaks through;

      a building, sidewalk, driveway, foundation, swimming pool or other structure;

   caused by or resulting from human or animal forces or any act of nature.

   Direct loss by fire or explosion resulting from water damage is covered.

   All other terms and conditions of the policy remain the same.

LEX 04 95 11 04

Page 1 of 1

A I G O L 0 3 : s e s 1 5 / 1 9 / 2 0 1 7

A
I
G

O
L
0
3
:
S
e
s
s
1

5
/
1
9
/
2
0
1
7

LEX 05 80 11 04

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# PROPERTY REMEDIATION FOR ESCAPED LIQUID FUEL
## &
# LIMITED LEAD AND ESCAPED LIQUID FUEL LIABILITY COVERAGES

## ADVISORY NOTICE TO POLICYHOLDERS

*THIS NOTICE DOES NOT PROVIDE COVERAGE NOR DOES THIS NOTICE REPLACE ANY PROVISIONS OF YOUR POLICY.  YOU SHOULD READ YOUR POLICY AND REVIEW YOUR DECLARATIONS PAGE FOR COMPLETE INFORMATION ON THE COVERAGES YOU ARE PROVIDED WITH.  IF THERE IS ANY CONFLICT BETWEEN THE POLICY AND THIS NOTICE, THE PROVISIONS OF THE POLICY SHALL PREVAIL.*

THE POLICY YOU HAVE JUST APPLIED FOR OR RECEIVED HAS:

- Added coverage for damage to your property caused by the escape of certain petroleum products that may be found in or on your home, your residential unit in an apartment, condominium or cooperative building, your household or personal property, other real property you own that is covered in this policy and land on which your home or unit or covered personal property is located; and

- Reduced liability coverage for injury to another person, or damage to the property of others, that is caused by the escape of certain petroleum products or by lead on or emanating from an insured location such as your house, any other premises where you are living but which you do not own, or vacant land that you own.

## ESCAPED FUEL REMEDIATION

If liquid fuel escapes from a fuel storage system on your property, loss or damage caused by the escaped fuel to your home, personal property, any other one, two, three or four family dwelling building you own and insure for remediation coverage will be covered.  Additionally, your land on which the house, other structures or other dwelling building you own are situated will be covered for loss or damage.  Coverage will apply when the fuel storage tanks, vessels and/or containers on your property have a total combined storage capacity of 100 or more U.S. gallons of liquid fuel.  Coverage will also be provided for:

LEX 05 80 11 04                                                    Page 1 of 3

LEX 05 80 11 04

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

1.    The cost of making temporary repairs to stop the further escape of liquid fuel, or to retard or stop the spread of escaped liquid fuel.

2.    Reasonable expenses to test, monitor or assess the effects of escaped liquid fuel required by law, or when a governmental agency or a court of law requests, orders or demands that you do so.

3.    Loss or damage to your trees, shrubs and plants that are not grown for business;  and

4.    Additional living expenses you incur to maintain your normal standard of living.


However, there will be no coverage:


1.    For a reduction in the market value of your house and any other dwelling building you own, including the land on which they are situated, or your personal property, whether or not such property has been damaged;

2.    For damages resulting from the loss of a pending sale of your house and, if covered under this policy, other dwelling buildings, other structures and your personal property;

3.    To replace any of the escaped fuel;

4.    For any expense you incur to demolish, repair or replace any part of your fuel system; and

5.    For any damages resulting from an escape of liquid fuel from one or more containers, tanks or vessels or related lines or parts that are connected to or a part of a motor vehicle, motorized land conveyance or watercraft.


Our Limit of Liability

We will provide up to $10,000 of coverage.  The limit is the most we will pay for the total of all loss, damage or expense caused by the escape of liquid fuel from your fuel system during the policy period regardless of the number of locations insured under your policy, the number of escapes of liquid fuel you discover or learn of during the policy period or the number of claims made.


Your Deductible


LEX 05 80 11 04                                             Page 2 of 3

LEX 05 80 11 04

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

We will apply the AOP (all other perils) deductible shown on the declaration page to any loss.

## LEAD AND ESCAPED FUEL LIABILITY COVERAGE

1.    We have limited your coverage when a claim is made or a suit is brought against you by another person alleging damages because of:

   a.   bodily injury arising out of the absorption, ingestion or inhalation of lead that is in or on your home or your residential unit, any other structures you may own, your personal property, and soil on any insured location;

   b.   property damage arising out of lead contamination, but only if the lead originates at an insured location; or

   c.   bodily injury or property damage arising out of the escape of liquid fuel from your fuel storage system when the fuel storage tanks, vessels and/or containers have a total combined storage capacity of 100 or more U.S. gallons of liquid fuel and the fuel is used to heat or cool your dwelling, heat water, cook food, or power your motor vehicle, recreational vehicle or boat not used in any business.

2.    The limit of liability is provided on an aggregate basis.  This means that the limit for liability coverage is the most we will pay for all damages resulting from the total of all bodily injury or property damage, occurring during the entire policy period, that is caused by the escape of liquid fuel from your fuel system or the exposure to lead.  This aggregate limit is the most we will pay regardless of the number of locations insured under the policy, number of insureds, number of persons injured by the lead or escaped fuel, number of persons whose property is damaged by the lead or escaped fuel or the number of claims made against you.

   We will provide up to $50,000 of coverage.

All other terms, conditions and exclusions of this policy remain the same.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**ENDORSEMENT # 89644 (6/13)**

This endorsement, effective 12:01 A.M., 06/18/2016
Forms a part of Policy No.: 97082638
Issued to:  Estate Of Conchetta Conti
By:  LEXINGTON INSURANCE COMPANY

**ECONOMIC SANCTIONS ENDORSEMENT**

*This endorsement modifies insurance provided under the following:*

The Insurer shall not be deemed to provide cover and the Insurer shall not be liable to pay any claim or provide any benefit hereunder to the extent that the provision of such cover, payment of such claim or provision of such benefit would expose the Insurer, its parent company or its ultimate controlling entity to any sanction, prohibition or restriction under United Nations resolutions or the trade or economic sanctions, laws or regulations of the European Union or the United States of America.

_____
AUTHORIZED REPRESENTATIVE

89644 6-13

ENDORSEMENT

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement, effective 12:01 A.M., 06/18/2016
Forms a part of Policy No.: 97082638

## SERVICE OF SUIT CONDITION

This endorsement modifies insurance provided under the policy:

The following condition is added to this policy and, if applicable, supersedes any Service of Suit Condition currently provided therein:

> In the event of our failure to pay any amount claimed to be due hereunder, we, at your request, will submit to the jurisdiction of a court of competent jurisdiction within the United States. Nothing in this condition constitutes or should be understood to constitute a waiver of our rights to commence an action in any court of competent jurisdiction in the United States to remove an action to a United States District Court or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States. It is further agreed that service of process in such suit may be made upon Counsel, Legal Department, Lexington Insurance Company, 99 High Street, Boston, Massachusetts 02110 or his or her representative, and that in any suit instituted against us upon this Policy, we will abide by the final decision of such court or of any appellate court in the event of any appeal.

> Further, pursuant to any statute of any state, territory, or district of the United States which makes provision therefor, we hereby designate the Superintendent, Commissioner or Director of Insurance, or other officer specified for that purpose in the statute, or his or her successors in office, as our true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding instituted by you or on your behalf or any beneficiary hereunder arising out of this Policy of insurance, and hereby designates the above named Counsel as the person to whom the said officer is authorized to mail such process or a true copy thereof.

All other terms and conditions of the policy remain the same.

_____
Authorized Representative

PRG 2023 (5/14)

### WHAT TO DO IF YOU SUFFER A LOSS TO YOUR HOME AND PROPERTY

**Below are steps you should follow whenever you are confronted with a loss to your home and/or personal property.**

#### Non-Catastrophic Event

- **Promptly report your loss to your insurance agent.**
  Your agent has the most updated knowledge of your insurance coverage and can help you throughout the claim process.

- **Protect your property from further damage or loss by hiring a qualified professional to assist in making temporary repairs.**

- **Keep an accurate record of repair costs.**
  Be ready to provide the claim professional with copies of paid invoice, check numbers or cash receipts.

- **In cases of theft or vandalism immediately notify your local police.**

- **Complete a room by room inventory of both the damage to your dwelling and contents.**
  When contents are involved be sure your inventory includes detailed description of the item, ages, places of purchases as well as today's cost to replace. You will be requested by the claims professional to provide all supporting documentation you have regarding these items to include credit card or purchase receipts as well as copies of cancelled checks.

#### Catastrophic Event

- **Promptly report your loss to your insurance agent.**
  Often in times of catastrophes utilities in your area are affected and you will not be able to contact you local agent or broker who is being affected by the same conditions.   **In these cases you may call toll free claim reporting hotline *Lex Call One* to report Catastrophic claim at 1-800-931-9546, Fax #866-480-5396. To report Catastrophic claim by email send email to lexingtonhomeownerproperty@AIG.com.**

- **To the best of your ability protect your property from further damage or loss by making temporary repairs.**
  In times of widespread damage, such as in the case of hurricanes, it may not be possible for you to retain a contractor to assist with these repairs for several days after the event.  Do what you can until you can contact and retain a professional.

- **Keep copies of all invoices and expense incurred.  Make sure they are detailed.**

- **Complete a room by room inventory of all damage.**
  When contents are involved make sure your inventory includes a detailed description of items, ages of each item, place of purchase and cost to replace.

*For information on safety tips, contact the Institute for Business & Home Safety at www.disastersafety.org.  For up to date tracking of approaching hurricanes access the National Oceanographic & Atmospheric Administration at www.noaa.gov*

Claims Notice to Policyholders

AIG
OL03::Sess 1 5/19/2017

CAPE MAY COUNTY DN - 203
SUPERIOR COURT
9 NORTH MAIN STREET
CAPE MAY CRT HSE NJ 08210-3096

COURT TELEPHONE NO. (609) 463-6514
COURT HOURS 8:30 AM - 4:30 PM

                                        TRACK ASSIGNMENT NOTICE

                        DATE:    MAY 11, 2017
                        RE:      ESTATE OF CONCHETTA CONTI VS LEXINGTON INSURANCE
                        DOCKET:  CPM L -000192 17

THE ABOVE CASE HAS BEEN ASSIGNED TO:  TRACK 1.

DISCOVERY IS    150 DAYS AND RUNS FROM THE FIRST ANSWER OR 90 DAYS
FROM SERVICE ON THE FIRST DEFENDANT, WHICHEVER COMES FIRST.

THE PRETRIAL JUDGE ASSIGNED IS:  HON USC J CHRISTOPHER GIBSON

AT:     IF YOU HAVE ANY QUESTIONS, CONTACT TEAM    001
        (609) 463-6514.

        IF YOU BELIEVE THAT THE TRACK IS INAPPROPRIATE YOU MUST FILE A
CERTIFICATION OF GOOD CAUSE WITHIN 30 DAYS OF THE FILING OF YOUR PLEADING.
        PLAINTIFF MUST SERVE COPIES OF THIS FORM ON ALL OTHER PARTIES IN ACCORDANCE
WITH R.4:5A-2.

                        ATTENTION:
                                     ATT: NICOLE F. LEVINE
                                     MERLIN LAW GROUP
                                     777 S HARBOUR ISLAND BLVD
                                     SUITE 950
                                     TAMPA          FL 33602

JUCKS2

Appendix XII-B1

<table>
<tr><td colspan="2">

## CIVIL CASE INFORMATION STATEMENT
### (CIS)

Use for initial Law Division
Civil Part pleadings (not motions) under *Rule* 4:5-1
**Pleading will be rejected for filing, under *Rule* 1:5-6(c),
if information above the black bar is not completed
or attorney's signature is not affixed**

</td><td>

**FOR USE BY CLERK'S OFFICE ONLY**

PAYMENT TYPE: ☐CK ☐CG ☐CA

CHG/CK NO.

AMOUNT:

OVERPAYMENT:

BATCH NUMBER:

</td></tr>
</table>

| ATTORNEY / PRO SE NAME | TELEPHONE NUMBER | COUNTY OF VENUE |
|---|---|---|
| Nicole F. Levine, Esq. | (732) 704-4647 | Cape May |

| FIRM NAME (if applicable) | DOCKET NUMBER (when available) |
|---|---|
| Merlin Law Group, P.A. | *CPM - L - 192 - 17* |

| OFFICE ADDRESS | DOCUMENT TYPE |
|---|---|
| 125 Half Mile Road, Suite 201<br>Red Bank, NJ 07701 | Complaint |
| | JURY DEMAND    ☒ YES    ☐ No |

| NAME OF PARTY (e.g., John Doe, Plaintiff) | CAPTION |
|---|---|
| Estate of Conchetta Conti | Estate of Conchetta Conti v. Lexington Insurance Company |

| CASE TYPE NUMBER<br>(See reverse side for listing)<br>505 | HURRICANE SANDY<br>RELATED?<br>☐ YES    ☒ NO | IS THIS A PROFESSIONAL MALPRACTICE CASE?    ☐ YES    ☒ NO<br>IF YOU HAVE CHECKED "YES," SEE *N.J.S.A.* 2A:53 A -27 AND APPLICABLE CASE LAW<br>REGARDING YOUR OBLIGATION TO FILE AN AFFIDAVIT OF MERIT. |
|---|---|---|
| RELATED CASES PENDING?<br>☐ Yes    ☒ No | | IF YES, LIST DOCKET NUMBERS |
| DO YOU ANTICIPATE ADDING ANY PARTIES<br>(arising out of same transaction or occurrence)?<br>☐ Yes    ☒ No | | NAME OF DEFENDANT'S PRIMARY INSURANCE COMPANY (if known)<br>☐ NONE<br>☒ UNKNOWN |

**THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE**

CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

| DO PARTIES HAVE A CURRENT, PAST OR<br>RECURRENT RELATIONSHIP?<br>☐ Yes    ☒ No | IF YES, IS THAT RELATIONSHIP:<br>☐ EMPLOYER/EMPLOYEE        ☐ FRIEND/NEIGHBOR        ☐ OTHER (explain)<br>☐ FAMILIAL        ☒ BUSINESS |
|---|---|

| DOES THE STATUTE GOVERNING THIS CASE PROVIDE FOR PAYMENT OF FEES BY THE LOSING PARTY?    ☐ YES    ☐ No |
|---|

USE THIS SPACE TO ALERT THE COURT TO ANY SPECIAL CASE CHARACTERISTICS THAT MAY WARRANT INDIVIDUAL MANAGEMENT OR
ACCELERATED DISPOSITION

| DO YOU OR YOUR CLIENT NEED ANY DISABILITY ACCOMMODATIONS?<br>☐ Yes    ☒ No | IF YES, PLEASE IDENTIFY THE REQUESTED ACCOMMODATION |
|---|---|
| WILL AN INTERPRETER BE NEEDED?<br>☐ Yes    ☒ No | IF YES, FOR WHAT LANGUAGE? |

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be
redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b).

ATTORNEY SIGNATURE:    *Nicole F. Le*